IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| YOMBA SHOSHONE TRIBE, ET AL. | ) | |
| Plaintiffs, | ) | |
| v. | ) | Case No. 06-cv-00896L |
| | ) | Judge Edward J. Damich |
| THE UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS TRIBAL CLAIMS**

RONALD J. TENPAS
Assistant Attorney General

Daniel G. Steele
Attorney of Record for Defendant
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington D.C., 20044-0663
Tel: (202) 305-0484
Facsimile: (202) 305-0267

Of Counsel:
Michael Bianco, Esquire
United States Department of the Interior
Office of the Solicitor
1849 C Street
Washington, D.C. 20240

# TABLE OF CONTENTS


Introduction . . . . . . . . . . 1

Factual and Legal Background . . . . . . . . . . 2

The Western Shoshone, Yomba Shoshone Tribe and Indian Claims Commission Proceedings . . . . . . . . . . 2

Reasons for the 25-Year Delay in Achieving a Distribution Plan for the Judgment Funds . . . . . . . . . . 5

The Western Shoshone Claims Distribution Act . . . . . . . . . . 6

Standard of Review . . . . . . . . . . 7

Failure to State a Claim . . . . . . . . . . 7

Failure to Join a Party . . . . . . . . . . 8

Argument . . . . . . . . . . 8

I. THE TRIBAL PLAINTIFF FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AND THUS, SUCH CLAIMS SHOULD BE DISMISSED . . . . . . . . . . 8

II. ASSUMING ARGUENDO THAT THE YOMBA TRIBE COULD STATE A CLAIM, OTHER SHOSHONE TRIBES ARE INDISPENSABLE PARTIES . 11

A. Applicability of Rule 19 in This Proceeding . . . . . . . . . . 11

B. Sovereign Immunity of Other "Necessary" Western Shoshone Tribes Precludes Their Joinder in This Proceeding . . . . . . . . . . 13

C. Other Western Shoshone Tribes Are Indispensable to This Proceeding . 15

Conclusion . . . . . . . . . . 18

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Am. Greyhound Racing, Inc. v. Hull*,
305 F.3d 1015 (9th Cir. 2002) . . . . . . . . . . 14

*Bell Atlantic Corp. v. Twombly*,
127 S. Ct. 1955 (2007) . . . . . . . . . . 7, 8

*Burlison v. United States*,
75 Fed. Cl. 736 (2007) . . . . . . . . . . 7

*Car Carriers, Inc. v. Ford Motor Co.*,
745 F.2d 1101 (7th Cir. 1984) . . . . . . . . . . 8

*Cherokee Nation v. Georgia*,
30 U.S. (5 Pet.) 1 (1831) . . . . . . . . . . 13, 14

*Citizen Potawatomi Nation v. Norton*,
248 F.3d 993 (10th Cir. 2001) . . . . . . . . . . 12

*Cloverleaf Standardbred Owners Ass'n, Inc. v. National Bank*,
669 F.2d 1274 (D.C. Cir. 1983) . . . . . . . . . . 16

*Crandon v. United States*,
494 U.S. 152 (1990) . . . . . . . . . . 9

*Davis v. United States*,
192 F.3d 951 (10th Cir. 1999) . . . . . . . . . . 13, 18

*Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*,
276 F.3d 1150 (9th Cir. 2002) . . . . . . . . . . 12, 15

*Del. Tribal Bus. Comm. v. Weeks*
430 U.S. 73 (1977) . . . . . . . . . . 9, 10

*Flowers v. United States*,
80 Fed. Cl. 201 (2008) . . . . . . . . . . 7

*Gritts v. Fisher*,
224 U.S. 640 (1912) . . . . . . . . . . 10

*Hishon v. King & Spalding*,
467 U.S. 69 (1984) . . . . . . . . . . 7

*Johnson & Graham's Lessee v. M'Intosh*,
21 U.S. (8 Wheat.) 543 (1823) . . . . . . . . . . 13

*Keweenew Bay Indian Cmty. v. Michigan*,
11 F.3d 1341 (6th Cir. 1993) . . . . . . . . . . 12-14

*Kiowa Tribe v. Mfg. Techs. Inc.*,
523 U.S. 751 (1998) . . . . . . . . . . 14

*Laker Airways, Inc. v. British Airways*,
182 F.3d 843 (11th Cir. 1999) . . . . . . . . . . 12

*Lebeau v. United States*,
474 F.3d 1334 (Fed. Cir. 2007) . . . . . . . . . . 10, 11

*Makah Indian Tribe v. Verity*,
910 F.2d 555 (9th Cir. 1990) . . . . . . . . . . 13, 14

*Manybeads v. United States*,
209 F.3d 1164 (9th Cir. 2000) . . . . . . . . . . 17

*Manygoats v. Kleppe*,
558 F.2d 556 (10th Cir. 1977) . . . . . . . . . . 17

*McClendon v. United States*,
885 F.2d 627 (9th Cir. 1989) . . . . . . . . . . 15

*McNutt v. Gen. Motors Acceptance Corp. of Ind.*,
298 U.S. 178 (1936) . . . . . . . . . . 7

*N. Cheyenne Tribe v. Hollowbreast*,
425 U.S. 649 (1976) . . . . . . . . . . 10

*Neitzke v. Williams*,
490 U.S. 319 (1989) . . . . . . . . . . 7

*Pac. Nat'l Cellular v. United States*,
41 Fed. Cl. 20 (1998) . . . . . . . . . . 12

*Peoria Tribe v. United States*,
169 Ct. Cl. 1009 (Ct. Cl. 1965) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Pit River Home & Agric. Coop. Ass'n v. United States*,
30 F.3d 1088 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Provident Tradesmen Bank & Trust Co. v. Patterson*,
390 U.S. 102 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 17

*Rishell v. Jane Phillips Episcopal Mem'l Med. Ctr.*,
94 F.3d 1407 (10th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Russell v. Clark's Executors*,
11 U.S. (7 Cranch) 69 (1812) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Santa Clara Pueblo v. Martinez*,
436 U.S. 49 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Shetter v. Amerada Hess Corp.*,
14 F.3d 934 (3d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Shoshone Tribe of Indians of Wind River Reservation v. United States*
11 Ind. Cl. Comm. 387 (1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Sisseton-Wahpeton Sioux Tribe of Lake Traverse Reservation v. United States*,
686 F. Supp. 831 (D. Mont. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*South Dakota v. Bourland*,
949 F.2d 984 (8th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Temoak Band of W. Shoshone Indians v. United States*,
219 Ct. Cl. 346 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Temoak Band of W. Shoshone Indians v. United States*,
23 Ind. Cl. Comm. 70, 86 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Te-Moak Bands of the W. Shoshone Indians v. United States*,
18 Cl. Ct. 82 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Third Ave. Trust v. Suntrust Bank*,
163 F. Supp. 2d 215 (S.D.N.Y. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Turtle Mountain Band of Chippewa Indians v. United States*,
490 F.2d 935 (Ct. Cl. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United Keetoowah Band of Cherokee Indians v. United States*,
480 F.3d 1318 (Fed. Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United Pac. Ins. Co. v. United States*,
464 F.3d 1325 (Fed. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Bowen*,
172 F.3d 682 (9th Cir 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Jim*,
409 U.S. 80 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*United States v. Red Lake Band of Chippewa Indians*,
827 F.2d 380 (8th Cir 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Viacom Int'l Inc. v. Kearney*,
212 F.3d 721 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*W. Shoshone Identifiable Group v. United States*,
29 Ind. Cl. Comm. 5 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-4

*W. Shoshone Identifiable Group v. United States*,
40 Ind. Cl. Comm. 305 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 16

*Wichita & Affiliated Tribes v. Hodel*,
788 F.2d 765 (D.C. Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*Williams v. Bankhead*,
86 U.S. (19 Wall.) 563 (1874) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Worcester v. Georgia*,
31 U.S. (6 Pet) 515 (1832) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Xechem Int'l. v. Univ. Of Tex. M.D. Anderson Cancer Ctr.*,
382 F.3d 1324 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Yankee Atomic Elec. Co. v. United States*,
112 F.3d 1569 (Fed. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**FEDERAL STATUTES**


18 Stat. 689 . . . . . . . . . . 3

25 U.S.C §§ 1401-08 . . . . . . . . . . 5

118 Stat. 805 . . . . . . . . . . 5, 6

118 Stat. 806 . . . . . . . . . . 9

H.R. Rep. No. 108-299 . . . . . . . . . . 2, 8

Pub. L. No. 108-270 . . . . . . . . . . 5

S. Rep. No. 107-297 . . . . . . . . . . 5

S. Rep. No. 108-151 . . . . . . . . . . 2, 3, 5, 6, 11, 16


**FEDERAL RULES**


Fed.R.Civ.P. 19 . . . . . . . . . . 8

RCFC 12(b)(6) . . . . . . . . . . 8, 18

RCFC 12(b)(7) . . . . . . . . . . 8, 11, 18

RCFC 19 . . . . . . . . . . 8, 12

RCFC 19(b) . . . . . . . . . . 15, 16, 17


**FEDERAL REGULATIONS**


25 C.F.R § 87.1(l) . . . . . . . . . . 6

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| YOMBA SHOSHONE TRIBE, ET AL. | ) | |
| Plaintiffs, | ) | |
| v. | ) | Case No. 06-cv-00896L<br>Judge Edward J. Damich |
| THE UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS TRIBAL CLAIMS**

**Introduction**

The Yomba Shoshone Tribe of Indians ("Plaintiff" or "Tribe") seeks damages as a result of the alleged mismanagement of "trust funds and other trust assets in Defendant's custody and control." Pl.'s Am. Compl. ¶ A.1. While the First Amended Complaint does not identify the "trust funds and other trust assets" which are the subject matter of the Complaint, the United States Department of the Interior's ("Interior") Office of Historical Trust Accounting ("OHTA") has identified the following Western Shoshone judgment fund accounts that Interior holds in trust:

| ACCOUNT NO. & TYPE | SOURCE OF FUND |
|---|---|
| JA9334697 WESTERN SHOSHONE JUDGMENT FUNDS | INITIAL AWARD OF $26,145,189.89 ON 12/19/1979, ICC DOCKET 326-K |
| JA9087691 WESTERN SHOSHONE JOINT JUDGMENT FUNDS | INITIAL AWARD OF $823,752.64 ON 3/23/1992, ICC DOCKET 326-A-1 |
| JA9087691 WESTERN SHOSHONE JOINT JUDGMENT FUNDS | INTEREST CLAIM OF $29,369.60 ON 9/15/1995, ICC DOCKET 326-A-3 |

With the accrual of earnings since creation of the judgment funds, the money Interior manages that may be sourced to Docket No. 326-K which are now valued in excess of $142,472,644 and

that sourced to Docket Nos. 326-A-1 and 326-A-3 which are now collectively valued in excess of $1,386,718.

In the suit, Plaintiff Tribe and other individuals seek, *inter alia*, monetary damages resulting from the alleged financial mismanagement of these accounts from their inception. *See, e.g.*, Pl.'s Compl. Part D, ¶ 81 and Part E, Request for Relief.

The Plaintiff Tribe filed its Complaint on December 26, 2006. On March 13, 2008, Plaintiffs filed a First Amended Complaint which, *inter alia*, adds three individual Plaintiffs (Am. Compl. ¶ B. 4-6) who are "members of the class of beneficiaries eligible for inclusion on the Western Shoshone Judgment Roll for per capita distribution of theWestern Shoshone Judgment Fund . . . ." (Am. Compl. ¶ D. 16). The instant motion accompanying this Memorandum seeks to dismiss the claims presented in the First Amended Complaint of the Yomba Shoshone Tribe for the reasons discussed herein.

## Factual and Legal Background

### The Western Shoshone, Yomba Shoshone Tribe and Indian Claims Commission Proceedings

The Plaintiff Tribe is a federally-recognized tribe located in Nevada and is part of the group known as the Western Shoshone Identifiable Group, whose members reside mainly in what are now the states of Nevada, California, and Idaho.[1/] *See* H.R. REP. NO. 108-299, at 4 (2003). *See also, W. Shoshone Identifiable Group v. United States*, 29 Ind. Cl. Comm. 5, 6 (1972). In 1863, the Western Bands of the Shoshone Nation signed a peace treaty with the

---

[1/] The Western Shoshone group of tribes include the Western Shoshone Te-Moak Tribe, the Duckwater Shoshone Tribe, the Yomba Shoshone Tribe, the Ely Shoshone Tribe, the Western Shoshone Committee of the Duck Valley Reservation, and the Fallon Band of Western Shoshone. *See* S. REP. NO. 108-151, at 3-4 (2003).

United States at Ruby Valley (now central Nevada).[2] *See* S. REP. NO. 108-151, at 2 (2003) (citing Treaty with the Western Shoshone (also know as the Treaty of Ruby Valley), 18 Stat. 689 (Oct. 1, 1863; ratified June 26, 1866), *reprinted* in II Kappler, Indian Affairs: Laws and Treaties 851-53 (1904)). This treaty granted the United States certain rights of travel and communication within the area claimed by these bands, extending from the Snake River Valley of Idaho through Nevada and Utah to southern California. *Id.*

In 1951, all of the Shoshone Indian Tribes filed claims with the ICC for the loss of aboriginal title to lands located in California, Colorado, Idaho, Nevada, Utah, and Wyoming under the Ruby Valley Treaty. *See Te-Moak Bands of the W. Shoshone Indians v. United States*, 18 Cl. Ct. 82, 83 (1989). On October 16, 1962, the ICC found that the Shoshone lands, in effect, had been taken by the United States when settlers and other nonnative Americans gradually encroached upon the aboriginal title lands held by the Shoshones. *Id.* citing *Shoshone Tribe of Indians*, 11 Ind. Cl. Comm. 387). No taking date for the Nevada lands had been established by the Commission in its decision, but both parties later stipulated this date to be July 1, 1872. *W. Shoshone Identifiable Group*, 29 Ind. Cl. Comm. 5 at 7 (1972).

The Commission also found that the Te-Moak Bands were representative of the Western Shoshones. *Shoshone Tribe of Indians*, 11 Ind. Cl. Comm. at 446. The Commission therefore required the Te-Moak Bands to file a separate amended petition on behalf of the Western Shoshones and severed this claim from the other Shoshone claims. *Id.* This amended petition became Docket No. 326-K.

---

[2] The Indian Claims Commission ("ICC") designated the Western Bands of the Shoshone (the name of the entity signing the Treaty of Ruby Valley ) as the Western Shoshone Identifiable Group. *See Shoshone Tribe of Indians of Wind River Reservation v. United States*, 11 Ind. Cl. Comm. 387, 397, 408-09 (1962).

Eleven years later, the Indian Claims Commission entered an interlocutory order holding that the aboriginal title of the Western Shoshone had been extinguished on July 1, 1872, by virtue of stipulations filed by the parties on February 11, 1966. *W. Shoshone Identifiable Group*, 29 Ind. Cl. Com. at 7. This also became the "valuation date" for the Shoshone Nevada lands in later proceedings. *Id.* Subsequently, the ICC awarded $26,145,189.89 for Docket No. 326-K claims[3] and $118,745.91 to the Te-Moak Bands of Western Shoshone Indians of Nevada for certain accounting claims in Docket No. 326-A. *See Temoak Bands of W. Shoshone Indians v. United States*, 23 Ind. Cl. Comm. 70, 86 (1970). The Plaintiff Yomba Tribe was not a named party in any of the foregoing proceedings. Nor was it designated as a unitary recipient of any of the resulting awards.

On December 6, 1979, the Clerk of the Court of Claims transmitted the final judgment to the Comptroller General, who subsequently certified the payment of the award. The award was paid from the Judgment Fund, and was deposited into the global tribal trust fund account in the Treasury of the United States. In the more than 25 years since that deposit, none of those funds (or the interest they have earned) has been distributed, for the reasons set forth below.

**Reasons for the 25-year Delay in Achieving a Distribution Plan for the Judgment Funds**

Although these funds were appropriated in 1979, the legislation to permit distribution of these judgment funds was not enacted until 2004, notwithstanding numerous attempts by Congress to reach agreement on the distribution of these funds with the intended beneficiaries.

---

[3] Findings as to the extent of the land taken – 22,211,753 acres in Nevada and 2,184,650 acres in California, had already been made. A trial on damages occurred in September 1967. The ICC awarded plaintiffs $21,350,000 for the Nevada lands, $200,000 for California lands, and $4,604,600 for removal of minerals from the Nevada land prior to date of extinguishment. The award, after deductions, totaled $26,145,189.89. *See W. Shoshone Identifiable Group v. United States*, 40 Ind. Cl. Com. 318, 320, 387 (1977), aff'd, *Temoak Band of W. Shoshone Indians v. United States*, 219 Ct. Cl. 346 (1979).

*See* S. REP. NO. 108-151; S. REP. NO. 107-297 (2002).[4] When the Bureau of Indian Affairs ("BIA") held its first Hearing of Record on the formulation of distribution of the Judgment Funds in 1980, a large segment of the Western Shoshone people indicated that they were in favor of the judgment fund distribution plan then proposed. S. REP. NO. 108-151, at 6. The Tribal Councils of the four successor Western Shoshone Tribes (Te-Moak, Ely, Duckwater, and Yomba), however, uniformly opposed any kind of distribution of the judgment funds, believing that the distribution of the Judgment Funds would preclude them from seeking a return of the aboriginal lands. *Id.*

Although the tribal governments were unanimous in their opposition in the early 1980s, since 1997, three of the four tribal councils have modified their position to support the distribution of the judgment funds. *Id.* At the time of the enactment of the Distribution Act in 2004, only the Yomba Tribal Council opposed the distribution plan, continuing to believe that acceptance would preclude its efforts to have the lands returned. *Id.* Congress resolved the issue on July 7, 2004, by enactment of the Western Shoshone Claims Distribution Act, Pub. L. No. 108-270, 118 Stat. 805 ("Distribution Act" or "Act").

**The Western Shoshone Claims Distribution Act**

Section 3 of the Distribution Act authorizes the Secretary to make a per capita[5]

---

[4] The process of crafting a use and distribution plan requires that the Department of Interior consult with the interested groups to reach a plan consensus. If a consensus cannot be reached, the Department must then submit its recommendation to Congress, as was done here. *See* 25 U.S.C §§ 1401-08.

[5] 25 C.F.R § 87.1(l) defines "per capita payment" as "that aspect of a plan which pertains to the individualization of the judgment funds in the form of shares to tribal members or to individual descendants." "Per capita shares unpaid after 6 years, and the interest thereon, together with any other residual principal and interest funds remaining in Docket No. 326-K after completion of its distribution shall be added to the principal of the Western Shoshone Educational Trust Fund established pursuant to Section 3, except that the 6-year period shall not begin as to the per capita share of a minor until the

distribution of 100 percent of the Western Shoshone judgment funds in equal shares to each person listed on the judgment roll, which is to consist of all individuals who (A) have at least ¼ degree of Western Shoshone blood; (B) are citizens of the United States; and (C) were living on the date of enactment of the Act. If any individual Shoshone participated in any other ICC land claim award, such individuals are not to be listed on the Shoshone roll.

Section 4 of the Act requires the Secretary to establish the Western Shoshone Educational Trust Fund ("Educational Trust Fund") for the benefit of Western Shoshone members. The corpus of the Educational Trust Fund consists of judgment funds appropriated under Docket Nos. 326-A-1 and A-3.[6] Section 4 of the Act creates the Western Shoshone Education Committee which is to be made up of a representative from each of the seven Western Shoshone Tribes or Bands, and a member of the general public appointed by the Secretary of the Interior. The Committee is charged with distribution of interest income from these Joint Funds to qualified individual Western Shoshone members, for educational purposes. *See* §4, 118 Stat. at 808.

## Standard of Review

### Failure to State a Claim

Rules of the United States Court of Federal Claims ("RCFC"), Rule 12(b)(6) "authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Neitzke v. Williams*, 490 U.S. 319, 326 (1989) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)). In assessing a motion to dismiss under Rule 12(b)(6), the Court need not accept as true unreasonable

---

minor reaches the age of majority." S. REP. NO. 108-151, at 3.

[6] The Judgment Funds making up Docket Nos. 326 A-1 and A-3 are referred to in the Act as "Western Shoshone Joint Judgment Funds." *See* § 2(2), 118 Stat. at 805.

inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations. *See, e.g., Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) ("a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . .[f]actual allegations must be enough to raise a right to relief above the speculative level") (citations omitted). *See also, Flowers v. United States*, 80 Fed. Cl. 201, 211 (2008).

Further, the court must take the well-pled allegations of the complaint as true and draw all reasonable factual inferences in the plaintiffs' favor. *United Pac. Ins. Co. v. United States*, 464 F.3d 1325, 1327-28 (Fed. Cir. 2006); *Xechem Int'l. v. Univ. Of Tex. M.D. Anderson Cancer Ctr.*, 382 F.3d 1324, 1326 (Fed. Cir. 2004), *cert. denied*, 543 U.S. 1149 (2005). "If a defendant or the court challenges jurisdiction or plaintiff's claim for relief, however, the plaintiffs cannot rely merely on allegations in the complaint, but must instead bring forth relevant, competent proof to establish jurisdiction." *Burlison v. United States*, 75 Fed. Cl. 736, 740 (2007) (citing *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936)) (additional citations omitted).

**Failure to Join a Party**

RCFC 12(b)(7) also forms a basis for dismissal of the Plaintiff Tribe's claims. As demonstrated below, Plaintiffs have failed under the RCFC 19 to join parties – other Tribes of Western Shoshones comprising the "Western Shoshone Identifiable Group" who, by virtue of the Distribution Act, have interests to protect under the Act.[7/] Defendant submits that litigation of

---

[7/] The term "Western Shoshone Identifiable Group," for purposes of the Act, means those individual Western Shoshones identified as claimants by the ICC in Docket Nos. 326-K, 326-A-1, and 326-A-3. H.R. REP. NO. 108-299, at 4.

any Tribal claims cannot proceed without the joinder of these other groups of Indians.

## **Argument**

### I. THE TRIBAL PLAINTIFF FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AND THUS, SUCH CLAIMS SHOULD BE DISMISSED

RCFC 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law when, as here, the Complaint does not contain "'either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory.'" *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. at 1969, quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984) (additional citations omitted). In this case, the Plaintiff Tribe cannot meet its burden of showing that the Tribe *qua* Tribe is entitled to a monetary recovery even if it was to prevail on the merits.

As discussed above, Congress in its wisdom has decided to distribute all the ICC judgment funds awarded to the Western Shoshone Tribes *per capita* to individuals who satisfy the three-pronged requirement of § 3 of the distribution Act. Specifically, Section 3(c)(1) of the Act states as follows: "(1) In General.– On establishment of the judgment roll, the Secretary shall make a *per capita* distribution of 100 percent of the Western Shoshone judgment funds, in shares as equal as practicable, to each person listed on the judgment roll." 118 Stat. 806.

Thus, beyond doubt, the Distribution Act created a process to distribute these judgment funds solely on a per capita basis following bloodline, without any distribution to be made – whether direct, reversionary, or otherwise – to any Tribes and/or Bands, including, but not limited to the Plaintiff Tribe. As shown most specifically in Section 3, there can be no question that in passing the Act, Congress individualized the judgment fund proceeds and mandated *per capita* distributions. Consistent with that mandate, Section 4 of the Act further provided for the

use of unpaid *per capita* funds for the specific purpose of education-related assistance to individual Shoshone members.

Courts interpreting statutes should look not only to the particular statutory language but to the design of the statute as a whole and to its object and policy. *See Crandon v. United States*, 494 U.S. 152, 158 (1990); *Yankee Atomic Elec. Co. v. United States*, 112 F.3d 1569, 1576 (Fed. Cir. 1997). Even when Congress has not expressly stated the terms of distribution – as it has here – courts have deferred such decisions to authorized agency officials. *Turtle Mountain Band of Chippewa Indians v. United States*, 490 F.2d 935, 952-53 (Ct. Cl. 1974).

The courts have long recognized Congress' broad authority to apportion the proceeds of Indian Claims Commission judgments and to revise its allocations prior to distribution of the funds. *See Del. Tribal Bus. Comm. v. Weeks*, 430 U.S. 73, 85 (1977); *United States v. Jim*, 409 U.S. 80, 82-83 (1972). "As tribal property, the appropriated funds were subject to the exercise by Congress of its traditional broad authority over the management and distribution of lands and property held by recognized tribes, an authority 'drawn both explicitly and implicitly from the Constitution itself.' " *Del. Tribal Bus. Comm. v. Weeks*, 430 U.S. at 85. In crafting this Western Shoshone Distribution Act, Congress used its well-established power to legislate 100 percent per capita distributions and, in doing so, Congress has exercised its "right to control the disposition and distribution of claims awarded." *Sisseton-Wahpeton Sioux Tribe of Lake Traverse Reservation v. United States*, 686 F. Supp. 831, 833 n.1 (D. Mont. 1988) ("This power derives from the power vested in Congress to determine the members of the tribe entitled to receive proportionate shares of tribal lands or funds"); *Peoria Tribe v. United States*, 169 Ct. Cl. 1009, 1010-11 (Ct. Cl. 1965) ("How the award is to be paid and precisely who can participate in an

award . . . are questions for Congressional and administrative determination.”).

Moreover, until the distribution is effected, Congress has the authority to alter distributions.” *See Lebeau v. United States*, 474 F.3d 1334, 1342 (Fed. Cir. 2007) (citing *Del. Tribal Bus. Comm. v. Weeks*, 430 U.S. at 90 (“The distribution ... has not yet occurred, and Congress has the power to revise its original allocation.”); *N. Cheyenne Tribe v. Hollowbreast*, 425 U.S. 649, 653-56 (1976) (“The Court has consistently recognized the wide ranging congressional power to alter allotment plans until those plans are executed.”); *United States v. Jim*, 409 U.S. at 82-83 (“[I]t was well within the power of Congress to alter that distributional scheme.”); *Gritts v. Fisher*, 224 U.S. 640, 648 (1912) (allotment and distribution of tribal lands and funds was “an extension of the administrative control of the government over the tribal property of tribal Indians, and was subject to change by Congress at any time before it was carried into effect and while the tribal relations continued.”). By extension, it follows that the Plaintiff Tribe has no vested right to any part of the distribution *or interest earned during the time the funds are invested* before they are distributed.

The Tribe cannot state a claim for relief that would entitle it to a money damages remedy for inadequate interest earnings *to the tribe*. The Tribe has no right to any part of the distribution or interest that was earned during the time the funds reside in Government accounts. The Federal Circuit’s ruling in *Lebeau*, 474 F.3d at 1343, plainly precludes any such claim. No right to damages based on a presumed breach of trust can be premised on a recovery not intended by Congress. *Id.* In this case, Congress expressly contemplated and directed that the entire fund be distributed *per capita*.

In summary, the relief the Plaintiff Tribe seeks runs afoul of Congress’ expressly-stated

directive that the Shoshone judgment funds be distributed on a *per capita* basis. The Yomba Shoshone Tribe cannot, by any interpretation, demonstrate that the Tribe *qua* Tribe is entitled to a monetary recovery based on the Act. Thus, the Plaintiff Tribe has not met its burden of showing that it is entitled to the requested relief, nor has it stated a claim upon which relief can be granted. The Plaintiff Tribe's claims should be dismissed on that basis alone.

## II. ASSUMING ARGUENDO THAT THE YOMBA TRIBE COULD STATE A CLAIM, OTHER SHOSHONE TRIBES ARE INDISPENSABLE PARTIES

### A. Applicability of Rule 19 in This Proceeding

RCFC 12(b)(7), through application of Rule 19, also requires dismissal of the Plaintiff Tribe's claims. The Distribution Act mandated a process to distribute judgment funds based primarily on Western Shoshone blood quantum. Members of the Yomba Shoshone Tribe may participate in the distribution, as may members of five other Shoshone Tribes: the Te-Moak Tribe, Duckwater Shoshone Tribe, Ely Shoshone Tribe, Western Shoshone Committee of the Duck Valley Reservation, and the Fallon Band of Western Shoshone. *See* S. REP. NO. 108-151 at 3-4.

Under Rule 19(a), the Court must first determine whether an absent party's presence in the suit is "necessary." *Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*, 276 F.3d 1150, 1155 (9th Cir. 2002); *See, e.g., Citizen Potawatomi Nation v. Norton*, 248 F.3d 993, 997 (10th Cir. 2001); *Viacom Int'l Inc. v. Kearney*, 212 F.3d 721, 724 (2d Cir. 2000); *Laker Airways, Inc. v. British Airways*, 182 F.3d 843, 847 (11th Cir. 1999); *Shetter v. Amerada Hess Corp.*, 14 F.3d 934, 938 (3d Cir. 1994).[8] If the Court determines a party's presence is necessary

---

[8] "In general, the rules of [Court of Federal Claims] are patterned on Federal Rules of Civil Procedure. Therefore, precedent under Federal Rules of Civil Procedure is relevant to interpret rules of

for the suit to proceed, the Court must then determine whether joinder of the absent party is "feasible." *Dawavendewa*, 276 F.3d at 1159; *Citizen Potawatomi Nation*, 248 F.3d at 997; *Kearney*, 212 F.3d at 724; *Laker Airways*, 182 F.3d at 848; *Shetter*, 14 F.3d at 938; *Keweenew Bay Indian Cmty. v. Michigan*, 11 F.3d 1341, 1345 (6th Cir. 1993). If so, absent immunity, the Court may order the party's joinder.

If the Court determines that joinder is necessary, but not feasible, the Court must then determine whether the absent party is "indispensable" under Rule 19(b). *See, e.g., United States v. Bowen*, 172 F.3d 682, 688 (9th Cir 1999); *Dawavendewa*, 276 F.3d at 1155; *Citizen Potawatomi Nation*, 248 F.3d at 997; *Kearney*, 212 F.3d at 725; *Laker Airways*, 182 F.3d at 847; *Shetter*, 14 F.3d at 938; *Keweenaw Bay*, 11 F.3d at 1345. If the absent party is determined to be indispensable, and is not joined, the Court must dismiss the suit. See, *e.g., Provident Tradesmen Bank & Trust Co. v. Patterson*, 390 U.S. 102, 118-19 (1968); *Kearney*, 212 F.3d at 725; *Davis v. United States*, 192 F.3d 951, 959 (10th Cir. 1999). The party moving for joinder or dismissal for failure to join bears the burden of demonstrating that joinder is necessary and feasible and that the absent party is indispensable. *Davis*, 192 F.3d at 958; *Rishell v. Jane Phillips Episcopal Mem'l Med. Ctr.*, 94 F.3d 1407, 1411 (10th Cir. 1996); *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990); *Third Ave. Trust v. Suntrust Bank*, 163 F. Supp. 2d 215, 218 (S.D.N.Y. 2001).

---

[Court of Federal Claims]." *Pac. Nat'l Cellular v. United States*, 41 Fed. Cl. 20, 25, n.3 (1998). Specifically with regard to Rule 19, the Federal Circuit has recently noted that "RCFC is virtually identical to Fed.R.Civ.P. 19" [and] "[b]ecause our case law on RCFC 19 is limited, we rely on cases interpreting Fed.R.Civ.P. 19 in our analysis of what is a "necessary" party under RCFC 19." *United Keetoowah Band of Cherokee Indians v. United States*, 480 F.3d 1318, 1324, n.2 (Fed. Cir. 2007).

### B. Sovereign Immunity of Other "Necessary" Western Shoshone Tribes Precludes Their Joinder in This Proceeding

The doctrine of tribal sovereign immunity is a prominent and dispositive aspect here in view of the Rule 19 compulsory joinder criteria. Indian tribes have historically been "distinct, independent political communities, retaining their original natural rights" in matters of local self-government. *Worcester v. Georgia*, 31 U.S. (6 Pet) 515, 519 (1832). Although no longer possessed of the full attributes of sovereignty, they remain a separate people, with the power of regulating their internal and social relations. They have the power to make their own substantive law in internal matters, and to enforce that law in their own forums. *See Worcester*, 31 U.S. (6 Pet.) 515; *Cherokee Nation v. Georgia*, 30 U.S. (5 Pet.) 1 (1831); *Johnson & Graham's Lessee v. M'Intosh*, 21 U.S. (8 Wheat.) 543 (1823).

Tribal sovereign immunity remains firmly entrenched in the federal common law. "In each of its decisions regarding tribal immunity, the Supreme Court has consistently upheld the principle that "an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity." *See, e.g., Kiowa Tribe v. Mfg. Techs. Inc.*, 523 U.S. 751, 754 (1998). Today, the doctrine protects tribes from suit in federal, state, and tribal courts. *Id.* at 752. Tribes cannot assert their sovereign immunity against the United States because, as "domestic dependent nations," *Cherokee Nation v. Georgia,* 30 U.S. (5 Pet.) at 17, the tribes' sovereign powers are subordinate to those of the U.S. government. *See United States v. Red Lake Band of Chippewa Indians*, 827 F.2d 380, 382 (8th Cir 1987). Nonetheless, unless Congress exercises its authority to limit or reform tribal sovereign immunity, tribes remain largely immune from suit. *See Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 56 (1978).

Thus, "Indian tribes have long been recognized as possessing the common-law immunity

from suit traditionally enjoyed by sovereign powers." *Id.* at 58. Unless tribes waive their immunity or Congress abrogates it, they cannot be haled into court. *Id.* Thus, courts cannot join tribes to a lawsuit, even if they are deemed "necessary" under Rule 19(a).

Courts have applied Rule 19 in numerous cases involving absent Indian tribes. *See, e.g.*, *Am. Greyhound Racing, Inc. v. Hull*, 305 F.3d 1015 (9th Cir. 2002); *see also*, *Pit River Home & Agric. Coop. Ass'n v. United States*, 30 F.3d 1088 (9th Cir. 1994) (group of Indian families sued Secretary of the Interior challenging Secretary's decision granting beneficial ownership of real property to absent tribe); *Keweenaw Bay*, 11 F. 3d at 1341 (Indian band sued the State of Michigan, disputing fishing rights granted to band and absent bands of the tribe); *South Dakota v. Bourland*, 949 F.2d 984 (8th Cir. 1991) (state brought suit against officials of absent tribe seeking to enjoin them from regulating hunting and fishing activities of non-Indians on land within reservation taken for construction of dam and reservoir); *Makah Indian Tribe*, 910 F.2d at 555 (tribe brought suit challenging federal regulations allocating fishing rights among tribe and other absent tribes); *McClendon v. United States*, 885 F.2d 627 (9th Cir. 1989). Once courts deem the absent tribe a necessary party under Rule 19(a), they must dismiss the suit on the basis that joinder is infeasible and the absent tribe is indispensable to the action.

This same reasoning is directly applicable here, and mandates dismissal of the Tribe's suit. The remaining Western Shoshone Tribes cannot simply be haled into this court without their explicit permission. These absent tribes are necessary parties under Rule 19. This is because, as the courts have found: (1) complete relief cannot be accorded to the present parties in the absence of other tribes; *Dawayendewa*, 276 F. 3d at 1155-56; (2) proceedings in their absence would impair or impede their ability to protect this interest; *id.* at 1156-57; and/or (3)

disposition of the absent tribes will subject the present parties to a substantial risk of incurring multiple or inconsistent obligations because of the claimed interest; *id.* at 1157-58.

Assuming *arguendo* the Court determines that the Plaintiff Tribe may proceed with its claims, (notwithstanding the Tribe's lack of any cognizable legal interest in these judgment funds), the Tribe's alleged interest in the judgment funds is not exclusive. In fact, whatever hypothetical interest it may conceivably have in the judgment funds must be deemed to be a common interest with the other Western Shoshone groups, and those groups are necessary parties under Rule 19(a) and indispensable parties to this suit under Rule 19(b).

### C. Other Western Shoshone Tribes Are Indispensable to This Proceeding

Rule 19(b) provides that if a person cannot be made a party, the court must determine whether in equity and good conscience the action should proceed among the parties before it or should be dismissed, the absent person thus being indispensable. RCFC 19(b). In making this determination, the factors to be considered by the court are the following:

> [F]irst, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

RCFC 19(b). These four factors are not rigid, technical tests, but rather "guides to the overarching 'equity and good conscience' determination." *Cloverleaf Standardbred Owners Ass'n, Inc. v. National Bank*, 669 F.2d 1274 , 1279 n.11 (D.C. Cir. 1983). Applying these factors here compels the conclusion that the absent Western Shoshone Tribes are indeed indispensable parties to this suit.

"Conflicting claims by beneficiaries to a common trust present a textbook example of a

case where one party may be severely prejudiced by a decision in his absence." *Wichita & Affiliated Tribes v. Hodel*, 788 F.2d 765, 774 (D.C. Cir. 1986) (finding that court could not avoid prejudice to absent parties, when it was impossible to afford one Tribe relief without affecting the rights of two other Tribes) (citing *Williams v. Bankhead*, 86 U.S. (19 Wall.) 563, 570-71 (1874); *Russell v. Clark's Executors*, 11 U.S. (7 Cranch) 69, 98-99, (1812)). As discussed above, the other Shoshone Tribes, not present here, have long had conflicting views as to how the judgment funds are to be distributed.[9] *See* S. REP. NO. 108-151, at 6.

The Plaintiff Tribe's interests in litigating its claims must necessarily be weighed against the predicate of tribal sovereign immunity and the Rule 19(b) factors concerning indispensability. The *Wichita* court found that even where the third factor – "adequacy of judgment" – appeared to weigh against a finding of indispensability, "[t]his factor, however, cannot be given dispositive weight when the efficacy of the judgment would be at the cost of the absent parties' rights to participate in litigation that critically affect their interests." *Wichita & Affiliated Tribes*, 788 F.2d at 777. This Court should apply the *Wichita* court's reasoning to the facts of this case which warrants dismissal of this Plaintiff Tribe's claims here.

Regarding Rule 19(b)'s fourth consideration (whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder), Defendant submits that it cannot adequately represent the Western Shoshone Tribes in their absence. Defendant has a trust relationship with the absent Western Shoshone Tribes and with the individuals who are members of the Western Shoshone Identifiable Group as well as with the Plaintiff Tribe. These trust relationships should

[9] Congress' attempts over a twenty-year period to distribute the funds in Docket Nos. 326-K, 326-A-1 and A-3 met with significant opposition by the Tribes over distribution issues. *See* S. REP. NO. 108-151, at 6; a history of the dissonance between the Western Shoshone Tribes on this issue is detailed in *W. Shoshone Identifiable Group v. United States*, 40 Ind. Cl. Comm. 305, 308 (1977).

weigh on this Court's decision whether or not to proceed with the suit absent all the interested parties. As the *Wichita* court opined:

> "[W]hatever allegiance the government owes to the tribes as trustee, is necessarily split among the three competing tribes involved in the case. This case, therefore, falls squarely under the rule that when 'there is a conflict between the interests of the United States and the interests of Indians, representation of the Indians by the United States is not adequate.'"

*Id.* at 775 (quoting *Manygoats v. Kleppe*, 558 F.2d 556, 558 (10th Cir. 1977)); *Provident Tradesmens Bank & Trust Co. v Patterson*, 390 U.S. 102, 110 (1968) (defendant's interest in avoiding multiple litigation is a proper consideration under Rule 19(b)). By virtue of Defendant's trust relationship with all the Shoshone Tribes and with the individuals comprising the Western Shoshone Identifiable Group, such attempt at representation here would, in effect, improperly cause the government to "stand on both sides of the question." *Manybeads v. United States*, 209 F.3d 1164, 1166 (9th Cir. 2000) *cert. denied* 532 U.S. 966 (2001). Thus, without participating in this litigation, the Western Shoshone Tribes cannot protect their interests. *Davis*, 192 F.3d at 959 ("Unless the Tribe is a party to the lawsuit, it has no ability to protect its claimed interest in determining eligibility requirements.")

In sum, the absent Western Shoshone Tribes are both necessary and indispensable to this suit. Since this Court cannot shape meaningful relief for the Plaintiff Tribe without the presence of the absent Western Shoshone Tribes, who have sovereign immunity, the suit should be dismissed pursuant to Rule 12(b)(7) and Rule 19.

## **Conclusion**

For the foregoing reasons, the Yomba Shoshone Tribe's claims should be dismissed with prejudice pursuant to RCFC Rule 12(b)(6) and 12(b)(7).

Dated this 28th day of March, 2008.

Respectfully submitted,

RONALD J. TENPAS
Assistant Attorney General

*/s/Daniel G. Steele*
Daniel G. Steele
U.S. Department of Justice
Environment and Natural Resources Division
General Litigation Section
P.O. Box 663
Washington, D.C. 20044-0482
Daniel.steele@usdoj.gov
Tel: (202) 305-0484
Fax: (202) 305-0506
Attorney of Record for Defendant

Of Counsel:
MICHAEL BIANCO
United States Department of the Interior
Office of the Solicitor
Washington, D.C. 20240