# In United States Court of Federal Claims

| | | |
|---|---|---|
| THE YOMBA SHOSHONE TRIBE, a federally recognized Indian Tribe, AND INDIVIDUAL WESTERN SHOSHONES MAURICE FRANK-CHURCHILL, JERRY MILLET, AND VIRGINIA SANCHEZ, ON THEIR OWN BEHALF AND ON BEHALF OF THE WESTERN SHOSHONE IDENTIFIABLE GROUP, | ) | |
| Plaintiffs, | ) | No. 1:06-cv-00896L<br>Judge Edward J. Damich |
| v. | ) | |
| THE UNITED STATES; DIRK KEMPTHORNE, Secretary of Interior, U.S. Department of the Interior; ROSS O. SWIMMER, Special Trustee, Office of Special Trustee for American Indians, U.S. Department of the Interior; HENRY M. PAULSON, JR., Secretary of the Treasury, U.S. Department of the Treasury, | ) | |
| Defendants. | ) | |

**THE WESTERN SHOSHONE IDENTIFIABLE GROUP'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS TRIBAL CLAIMS**

THOMAS E. LUEBBEN
Luebben Johnson & Barnhouse LLP
7424 4th Street NW
Los Ranchos de Albuquerque, NM 87107
(505) 842-6123
(505) 842-6124 fax

Attorney for plaintiffs, Yomba Shoshone Tribe, Maurice Frank-Churchill, Jerry Millet, and Virginia Sanchez, as representatives of the Western Shoshone Identifiable Group

# TABLE OF CONTENTS

I. INTRODUCTION ........ 1

II. QUESTIONS PRESENTED ........ 2

III. STATEMENT OF THE CASE ........ 2

A. History of the *Western Shoshone Identifiable Group v. United States* and the resulting Trust Funds ........ 2

B. The Yomba Shoshone Tribe has the Right to Maintain this Action for and on behalf of the Descendants of the Western Shoshone Identifiable Group ........ 4

IV. STANDARD OF REVIEW ........ 7

A. The Yomba Tribe has Stated a Claim for which Relief Can be Granted ........ 7

B. Not Every Member of an Identifiable Group is a Necessary and Indispensible Party to Identifiable Group Claims ........ 8

V. ARGUMENT ........ 9

A. As Representative of the Western Shoshone Identifiable Group, the Yomba Tribe Has Stated a Claim upon Which Relief can be Granted ........ 9

1. The Yomba Tribe is a Federally Recognized Indian Tribe that Possesses an Interest in the Western Shoshone Judgment Funds Held in Trust by the Defendant ........ 9

a. The Western Shoshone Identifiable Group Claim was litigated as a Tribal Claim, not as Individual Claim ........ 11

2. The Western Shoshone Claim Distribution Act did not Divest the Plaintiff of Its Interest in the Western Shoshone Judgment Funds ........ 11

a. Controlling Case Law confirms that the Trust Funds at issue are Tribal Funds ........ 11

b. The Express Language of the Western Shoshone Claim Distribution Act Confirms the Plaintiff's Ownership Interest in the Western Shoshone Judgment Funds ........ 14

c. Congress Retains the Right to Alter the Distribution of Tribal Judgment Funds ........ 15

# TABLE OF CONTENTS


d. Claims based on Defendant's Mismanagement of the Funds between 1979 and 2004 are best brought by a Tribal Government Member of the Identifiable Group ....17

3. The Western Shoshone Claim Distribution Act did not Deprive the Yomba Tribe of the Right to Represent the Identifiable Group in a suit for Mismanagement of the Western Shoshone Judgment Funds....17

B. Other Federally-Recognized Western Shoshone Tribes are not Indispensible Parties ....20

1. Under 28 U.S.C. § 1505, tribal and individual plaintiffs can represent the Western Shoshone Identifiable Group without requiring the joinder of other parties ....20

2. The Absent Western Shoshone Tribes are not Necessary or Indispensible to this Action because the Plaintiffs are only Seeking Money Damages ....22

VI. CONCLUSION....25

EXHIBITS

Exhibit A. Memorandum from the Commissioner on Indian Affairs to the Phoenix Area Director and Sacramento Area Director (Mar. 11, 1980) ....7, 12

Exhibit B. Memorandum from the Acting Deputy Assistant Secretary – Indian Affairs (Operations) to the Phoenix Area Director (Jan. 22, 1982) ....7, 12

Exhibit C. Letter from Joe Kennedy, Chairman, Timbisha Shoshone Tribe to Thomas E. Luebben, Luebben Johnson & Barnhouse LLP (May 15, 2008)....22

Exhibit D. Letter from Jerry Millett, Chairman, Duckwater Shoshone Tribe to Thomas E. Luebben, Luebben Johnson & Barnhouse LLP (May 15, 2008)....22

# TABLE OF AUTHORITIES

## CASES

Absentee Shawnee Tribe v. United States,
165 Ct. Cl. 510 (1964) ........ 6, 21
Angle v. United States,
709 F.2d 570 (9th Cir. 1983) ........ 14
Brown v. United States,
42 Fed. Cl. 538 (1998) ........ 9
Burlison v. United States,
75 Fed. Cl. 7360 (2007) ........ 12
Cherokee Freedmen v. United States,
161 Ct. Cl. 787 (1963) ........ 6, 21
Cheyenne-Arapaho Tribes v. United States,
206 Ct. Cl. 340 (1975) ........ 11
Chippewa Cree Tribe v. United States,
69 Fed. Cl. 639 (2006) ........ 10
Chippewa Cree Tribe v. United States,
73 Fed. Cl. 154 (2006) ........ passim
Consumer Prod. Safety Comm'n v. GTE Sylvania,
447 U.S. 102 (1980) ........ 15
Crandon v. United States,
494 U.S. 152 (1990) ........ 14, 15
Delaware Tribal Bus. Comm. v. Weeks,
430 U.S. 73 (1977) ........ 11, 13, 15
Fields v. United States,
191 Ct. Cl. 191 (1970) ........ 11
Fort Sill Apache Tribe v. United States,
201 Ct. Cl. 630, 477 F. 2d 1360 (1973),
cert. denied, 416 U.S. 993 (1974) ........ 6, 21
Gritts v. Fisher,
224 U.S. 640 (1912) ........ 16
Hebah v. United States,
428 F.2d 1334 (1970) ........ 13
Lebeau v. U.S.,
474 F.3d 1334 (2007) ........ 4, 13, 15, 16
Loudner v. United States,
108 F.3d 896 (8th Cir. 1997) ........ 14
Minn. Chippewa Tribe v. United States,
161 Ct. Cl. 258 (1963) ........ 11
Nooksack Tribe of Indians v. United States,
3 Ind. Cl. Comm’n 475 (1955) ........ 22
Peoria Tribe of Indians of Oklahoma v. United States,
169 Ct. Cl. 1009 (1965) ........ 16, 19, 24

# TABLE OF AUTHORITIES

Peoria Tribe of Indians of Oklahoma v. United States,
390 U.S. 468 (1968)........ 19, 20
Rogers v. United States,
697 F.2d 886 (9th Cir. 1983) ........ 14
Sac and Fox Indians v. Sac and Fox Indians,
220 U.S. 481 (1911)........ 13
Short v. United States,
50 F.3d 994 (Fed. Cir. 1995)........ 19
Shoshone Indian Tribe v. United States,
364 F.3d 1339 (Fed. Cir. 2004)........ 11, 19
Shoshone Tribe v. United States,
11 Ind. Cl. Comm'n 417 (1962)........ 4
Snoqualmie Tribe v. United States,
178 Ct. Cl. 570 (1967) ........ 11, 16, 19, 24
Te-Moak Bands of Western Shoshone Indians v. United States,
18 Cl. Ct. 82 (1989) ........ 2, 21
Turtle Mountain Band of Chippewa Indians v. United States,
203 Ct. Cl. 426 (1974) ........ 6
United States v. Blackfeather,
155 U.S. 180 (1894)........ 19, 20
United States v. Dann,
470 U.S. 39 (1985)........ 3, 4, 18
United States v. Dann,
873 F.2d 1189, cert. denied, 493 U.S. 890 (1989)........ 3
United States v. Mitchell,
463 U.S. 206 (1983)........ 7, 10, 11, 20
United States v. Testan,
424 U.S. 392 (1976)........ 7
Upper Chahalis Tribe v. United States,
140 Ct. Cl. 192, 155 F. Supp. 226 (1957)........ 22
W.R. Cooper Gen. Contractor, Inc. v. United States,
843 F.2d 1362 (Fed. Cir. 1988)........ 8
Western Shoshone Identifiable Group, Represented by the Temoak Bands of Western Shoshone Indians, Nevada,
29 Ind. Cl. Comm'n 5 (1972) ........ 3
Western Shoshone Legal Defense & Education Assoc. v. United States,
209 Ct. Cl. 43 (1976) ........ 7, 21
White Mountain Apache Tribe v.U.S.
537 U.S. 465 (2003)........ 7, 10
Wichita & Affiliated Tribes v. Hodel,
788 F.2d 765 (D.C. Cir. 1986)........ 23, 24
Wolfchild v. United States,
62 Fed. Cl. 521 (2004)........ 20

# TABLE OF AUTHORITIES

## UNITED STATES CODE

25 U.S.C § 161a ........................................ 10, 19
25 U.S.C. § 161 ........................................ 10
25 U.S.C. § 162a ........................................ 10, 19
25 U.S.C. § 70 ........................................ 5
28 U.S.C. § 1505 ........................................ passim
31 U.S.C. § 724a ........................................ 3
31 U.S.C. § 1321 ........................................ 10

## STATUTES

Indian Claims Commission Act of 1946 ........................................ 4, 5, 18
Tucker Act ........................................ 7, 23
Western Shoshone Claims Distribution Act ........................................ passim

## FEDERAL REGISTER

73 Fed. Reg. 18553 (April 4, 2008) ........................................ 6

**THE WESTERN SHOSHONE IDENTIFIABLE GROUP'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS TRIBAL CLAIMS**

The WESTERN SHOSHONE IDENTIFIABLE GROUP, represented by the Yomba Shoshone Tribe, by and through its Counsel of Record, Thomas E. Luebben, Luebben Johnson & Barnhouse LLP, files this response in opposition to Defendant's motion to dismiss tribal claims filed with this Court on March 28, 2008 (Docket No. 27).

The Western Shoshone Identifiable Group respectfully requests that the Court set oral argument on the Defendant's motion to dismiss.

## I. INTRODUCTION

This is a straightforward case challenging the United States' mismanagement of trust funds that under any scenario were held for the benefit of tribes until at least 2004. It does not involve questions of who, at this time, is or may be entitled to distribution of those funds. It also does not implicate issues of aboriginal title or the sufficiency of the rulings that led to creation of the fund. The only question is, once created, did the trustee's management of the funds comply with its trust obligations? Ignoring the complaint, the Defendant United States attempts to have one of the representatives of their plaintiff group dismissed based on allegations that as of today, that representative is not entitled to a distribution from the fund. However, in its motion to dismiss, the Defendant acknowledges that the Western Shoshone Judgment Funds at issue are Indian trust funds.

The Defendant also does not question the existence of the trust duties owed to the Plaintiffs, and it concedes that during at least part of the time period it has managed the funds, they were held in trust for the Yomba and other tribes. Having conceded, as it must, these critical issues, the Defendant nevertheless asks this Court to take this simple cord and weave it into a Gordian Knot by bifurcating the plaintiff group and separating

out for disparate treatment the Tribal and individual members of the Western Shoshone Identifiable Group. The Defendant embraces this tactic in order to avoid judicial consideration of its liability for multiple and ongoing breaches of its duties as trustee and its gross mismanagement of the Western Shoshone Judgment Funds. For the reasons set forth below, Defendant's attempt to avoid answering for its wrongful acts must be rejected, and its motion denied.

## II. QUESTIONS PRESENTED

1. Whether the Yomba Shoshone Tribe has the right to maintain this action for and on behalf of the descendants of the Western Shoshone Identifiable Group?

2. Whether the absent Western Shoshone Tribes are necessary or indispensable parties to an action brought by a representative member of the Western Shoshone Identifiable Group pursuant to 28 U.S.C. § 1505?

## III. STATEMENT OF THE CASE

### A. History of the *Western Shoshone Identifiable Group v. United States* and the resulting Trust Funds.

The complaint in *Shoshone Tribe of Indians v. United States* was filed in the Indian Claims Commission on August 13, 1951 encompassing all of the various Shoshone tribal entities which occupied Shoshone ancestral lands from Southern California through Idaho to Wyoming. All of the Shoshone claims proceeded under the single docket number 326 until 1957. *Te-Moak Bands of Western Shoshone Indians v. United States*, 18 Cl. Ct. 82, 83 (1989). At that time, all of the general accounting claims were severed from the original petition into separate causes of action for each recognized group of Shoshone Indians. The general accounting claim by the Temoak Bands on behalf of the Western Shoshones was filed separately under docket number 326-A. All of the Shoshone tribes

jointly continued with their taking claims, however, under docket number 326, throughout the early 1960s. *Id* at 83.

By Commission order of August 16, 1967, the land claim of the Western Shoshone Identifiable Group was severed from the claims filed by the other Shoshone groups in Docket 326, and was designated Docket 326-K. *Western Shoshone Identifiable Group, Represented by the Temoak Bands of Western Shoshone Indians, Nevada*, 29 Ind. Cl. Comm'n 5, 6 (1972).

On February 21, 1979, the United States Court of Claims affirmed an Indian Claims Commission award of $26,145,189.89 to the Western Shoshone Identifiable Group in Docket 326-K for a "taking" of Western Shoshone Indian title lands. [1]

On December 6, 1979, the Clerk of the Court of Claims certified the Commission's award to the General Accounting Office. Pursuant to 31 U. S. C. § 724a, this certification automatically appropriated the amount of the award and deposited it for the Western Shoshone Identifiable Group in an interest-bearing trust account in the Treasury

[1] Although for the most part immaterial to the mismanagement question at issue in this case, the Yomba Shoshone Tribe, as representative for the Western Shoshone Identifiable Group, does not disagree with the Defendant's statement of the "Factual and Legal Background" for this case, with one exception. The Defendant cites *Western Shoshone Identifiable Group, Represented by the Temoak Bands of Western Shoshone Indians, Nevada v. United States*, 29 Ind. Cl. Comm'n 5, 7, to the effect that the Temoak Bands and the United States stipulated July 1, 1872, as the date that Western Shoshone lands in Nevada were taken by the United States. Defendant's Memorandum in Support of Motion to Dismiss Tribal Claims, Document 27-2 at 3 ("MTD Memo"). On the contrary, the Commission quotes the stipulation as saying, "Counsel for both parties, having reviewed pertinent information relating to the time as of which the Western Shoshone lands in Nevada … **should be valued**, hereby stipulate that the Nevada portion of the Western Shoshone lands … **shall be valued** as of July 1, 1872. 29 Ind Cl. Comm'n 5, 7. [Emphasis supplied.] Further, Finding 27 of that same decision states that "[b]y order of February 11, 1966, the Commission approved a joint stipulation … in Dockets 326 and 367 that the **valuation date** for the Nevada portion of the Western Shoshone lands should be July 1, 1872. 29 Ind Cl. Comm'n 5, 60. [Emphasis supplied.] Subsequent courts have characterized July 1, 1872 as the date that Western Shoshone Indian title "must be deemed extinguished", *United States v. Dann*, 873 F.2d 1189, 1196, cert. denied, 493 U.S. 890 (1989), but in fact, no court has ever adjudicated the status of Western Shoshone Indian title nor an actual date of taking by the United States. *Id.* at 1192. As a result, Western Shoshone Indian title remains unextinguished, although adjudication of that title would appear to be precluded by the decisions of the Supreme Court and the Ninth Circuit Court of Appeals in *United States v. Dann*, 470 U.S. 39 (1985), and *United States v. Dann*, 873 F.2d 1189 (1989). In short, the Western Shoshones hold a land right without a judicial means to enforce that right.

of the United States. *United States v. Dann*, 470 U.S. 39, 42 (1985). Similarly, the Court of Claims awarded $823,752.64 on March 23, 1992, and $29,369.60 on September 15, 1995, for Dockets 326-A-1 and 326-A-3, respectively, and these amounts were paid into tribal trust fund accounts maintained by the Interior Department for the benefit of the Western Shoshone Identifiable Group.

On July 7, 2004, Congress passed and the President signed the Western Shoshone Claim Distribution Act. That Act included a distribution mechanism for these trust funds, a mechanism that has never been implemented. Neither the ultimate distribution of the trust funds held by the Defendant, not the impact of that Act on that distribution, is at issue here.[2] Indeed, even if this Court were to adopt Defendant's mischaracterization of the impact of the Western Shoshone Claim Distribution Act, it does not change the fact that prior to 2004, these funds were held in trust for the tribes, who as a result are the Identifiable Group representatives with standing to bring mismanagement claims, at a minimum, for the period from 1979 to 2004.

**B. The Yomba Shoshone Tribe has the Right to maintain this Action for and on behalf of the Descendants of the Western Shoshone Identifiable Group.**

On October 16, 1962, the Indian Claims Commission issued an opinion finding that "the Temoak Bands of Western Shoshone Indians, Nevada, has the right to maintain this action for and on behalf of the descendants of the Western Shoshone Identifiable Group." *Shoshone Tribe v. United* States, 11 Ind. Cl. Comm'n 417, 446 (1962). This finding was consistent with §10 of the Indian Claims Commission Act of 1946, Pub. L. No. 79-726, 60 Stat. 1049, as amended (codified at 28 U.S.C. § 1505, 25 U.S.C. § 70 et. seq.) (omitted

---

[2] But see *Lebeau v. U.S.*, 474 F.3d 1334, 1342-43 (2007) (trust funds to be distributed to individual tribal members remain tribal property until such time as they are distributed).

from 25 U.S.C. § 70 on termination of Commission on Sept. 30, 1978), which states in pertinent part:

> Any claim within the provisions of this Act may be presented to the Commission by any member of an Indian tribe, band, or other identifiable group of Indians as the representative of all its members; but wherever any tribal organization exists, recognized by the Secretary of the Interior as having authority to represent such tribe, band, or group, such organization shall be accorded the exclusive privilege of representing such Indians, ….

Section 24 of the Indian Claims Commission Act was the precursor to today's 28 U.S.C. § 1505. It read in relevant part:

> The jurisdiction of the Court of Claims is hereby extended to any claims against the United States accruing after the date of the approval of this Act in favor of any Indian tribe, band, or other identifiable group of American Indians … whenever such claim is one arising under the Constitution, Laws, treaties of the United States or Executive orders of the President, or is one which otherwise would be cognizable in the Court of Claims if the claimant were not an Indian tribe, band, or group.

60 Stat. 1049, 1055. This language was added to Title 28 in essentially its present form by the Act of May 24, 1949, ch 139, § 89(a), 63 Stat. 102. The jurisdiction of the United States Court of Federal Claims under 28 U.S.C. § 1505 extends to "any … identifiable group of American Indians…."

This Court has jurisdiction over the claims in this case pursuant to 28 U.S.C. § 1505. The term "Identifiable group of American Indians" in today's 28 U.S.C. § 1505 is the modern equivalent of "…Indian tribe, band, or other identifiable group of Indians …" in §10 of the Indian Claims Commission Act and "…Indian tribe, band, or other identifiable group of American Indians…." in § 24 of the Indian Claims Commission Act.

The Temoak Bands chose to be the plaintiff in *Western Shoshone Identifiable Group, Represented by the Temoak Bands of Western Shoshone Indians, Nevada* before the Indian Claims Commission. However, any of the federally-recognized Western

Shoshone tribal governments could have been the plaintiff or plaintiffs. *Turtle Mountain Band of Chippewa Indians v. United States*, 203 Ct. Cl. 426, 454-457 (1974). There are nine federally-recognized Western Shoshone tribal governments.[3] The Defendant concedes, as it must, that all of these tribes, including the Yomba, Timbisha and Duckwater Shoshone Tribes, were then and are now members of the Western Shoshone Identifiable Group. *See* Memorandum, from the Commissioner on Indian Affairs, Dept. of Interior, Bureau of Indian Affairs, to the Phoenix Area Director and Sacramento Area Director, Bureau of Indian Affairs (Mar. 11, 1980) ("1980 Research Memorandum") (Attached as Exhibit A); Memorandum from the Acting Deputy Assistant Secretary – Indian Affairs (Operations, Dept. of Interior, Bureau of Indian Affairs,) to the Phoenix Area Director, Bureau of Indian Affairs (Jan. 22, 1982) ("1982 Research Memorandum") (Attached as Exhibit B).[4]

A claim under the Claims Commission Act is not an aggregation of individual claims but a group claim on behalf of a tribe, band or other identifiable group. *Fort Sill Apache Tribe v. United States*, 201 Ct. Cl. 630, 634-35, 477 F. 2d 1360, 1362 (1973), cert. denied, 416 U.S. 993 (1974); *Absentee Shawnee Tribe v. United States*, 165 Ct. Cl. 510, 514 (1964); *Cherokee Freedmen v. United States*, 161 Ct. Cl. 787, 788 (1963). The suing claimant represents that group interest. It cannot be seriously disputed that an organized

[3] These are the Battle Mountain Band Council, the Elko Band Council, South Fork Band Council, Wells Band Council, all of which are members of a confederation now called the Temoak Tribe of Western Shoshone Indians of Nevada. The Ely Shoshone Tribe, Duckwater Shoshone Tribe, Yomba Shoshone Tribe and Timbisha Shoshone Tribe are federally-recognized Western Shoshone Tribes that are wholly independent of the Temoak Tribe and of one another.

[4] MTD Memo at 2, n 1. Defendant's footnote 1 is partially in error, however, in that the Western Shoshone Committee of the Duck Valley Reservation and the Fallon Band of Western Shoshone are not federally-recognized Western Shoshone tribes, while the Timbisha Shoshone Tribe is a federally-recognized Western Shoshone Tribe and is a member of the Western Shoshone Identifiable Group. 73 Fed. Reg. 18553 (April 4, 2008), Indian Entities Recognized and Eligible to Receive Services from the United States Bureau of Indian Affairs.

entity "recognized by the Secretary of the Interior as having authority to represent such [claiming] tribe, band, or group" should be the suing party. An Indian claim under the Act is unlike a class suit in that there is no necessity that the position of each individual member of the group be represented; it is only the group claim which need be put forward. *Western Shoshone Legal Defense & Education Assoc. v. United States*, 209 Ct. Cl. 43, 60 (1976). That is precisely what the Yomba Shoshone Tribe is doing in this litigation, and it is not subject to dismissal as a representative for doing so.

## IV. STANDARD OF REVIEW

### A. The Yomba Shoshone Tribe has Stated a Claim for which Relief Can be Granted.

In order to state a claim for which relief can be granted in a case such as this one, the plaintiff need only establish that the court has jurisdiction vis-à-vis a money mandating duty that is created by a treaty, statute, or regulation owed by the defendant to the plaintiff. *United States v. Mitchell*, 463 U.S. 206, 216 (1983) (*Mitchell II*)(the claimant must establish that applicable statutes or regulations state a "substantive right enforceable against the United States for money damages"). The statute or regulation on which the claim is based must only be "[reasonably] amenable to the reading that it mandates a right of recovery in damages," and is not required to be strictly construed. *United States v. Testan*, 424 U.S. 392, 400 (1976) (The claimant must demonstrate that the statute and regulations relied on "can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained.")(internal citation omitted); *see also, White Mountain Apache Tribe v.U.S.*, 537 U.S. 465, 473 (2003)( "While the premise to a Tucker Act, 28 U.S.C. § 1505, claim will not be 'lightly inferred,' a fair inference will do.")(internal citation omitted).

The money mandating duty owed by the Defendant to the Western Shoshone Identifiable Group and its members, including the Yomba Shoshone Tribe, in this breach of trust claim is established by the extent that the applicable statutes or regulations create a fiduciary relationship imposing duties on the Defendant to manage the tribal trust funds at issue. Where, as here, the claim has been sufficiently pled and the facts alleged in the complaint provide "any possible basis on which the non-movant might prevail, the motion [to dismiss] must be denied." *W.R. Cooper Gen. Contractor, Inc. v. United States*, 843 F.2d 1362, 1364 (Fed. Cir. 1988) (denying United States' motion to dismiss for failure to state a claim**)**. As discussed below, the Plaintiff, Yomba Shoshone Tribe, as a representative of the Western Shoshone Identifiable Group, has stated a claim upon which relief may be granted by an award of money damages to the Western Shoshone Identifiable Group.[5]

**B. Not Every member of an Identifiable Group is a Necessary and Indispensible Party to Identifiable Group Claims.**

The RCFC 19 employs a two part analysis that is substantially the same as that applicable to Fed. R. Civ. P. 19. *See United Keetowah Band of Cherokee Indians v. United States*, 480 F.3d 1318, 1324 n.2 (Fed. Cir. 2007). Under this analysis, the threshold issue is whether a party is necessary to a suit, thereby making joinder of that party to the suit mandatory for the action's adjudication. A person is "necessary" under RCFC 19 if: (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave

[5] The Plaintiff also addresses in the argument section of this memorandum the authorities cited by the Defendant in its Standard of Review section on Failure to State a Claim. MTD Memo at 6-7.

any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. *Davis v. United States*, 343 F.2d 1282, 1289 (10th Cir. 2003); *see also, Brown v. United States*, 42 Fed. Cl. 538, 564 (1998) (court employed similar analysis). The Defendant bears the burden of proving that an absent party is necessary and indispensible. *Davis*, 192 F.3d at 958.

## V. ARGUMENT

### A. As representative of the Western Shoshone Identifiable Group, the Yomba Shoshone Tribe Has Stated a Claim upon Which Relief can be Granted.

#### 1. The Yomba Shoshone Tribe is a Federally-Recognized Indian Tribe that Possesses an Interest in the Western Shoshone Judgment Funds Held in Trust by the Defendant.

The Yomba Shoshone Tribe has alleged that it is a federally-recognized Indian tribe (1st Amend. Comp. at ¶ A.2) that is recognized by the Defendant as an owner of the funds appropriated in satisfaction of the Indian Claims Commission awards in Dockets 326-K, 326-A-1 and 326-A-3 (1st Amend. Comp. at ¶ A.3). (See Research Memorandums 1980 and 1982) (Attached as Exhibits A and B) (providing that the Western Shoshone Judgment Funds are owned by the Western Shoshone Identifiable Group that is made up of the federally-recognized Western Shoshone Tribes, including the Yomba Shoshone Tribe ). Indeed, the Defendant concedes that the Yomba Shoshone Tribe is an owner of the funds at issue in this litigation. Defendant's Memorandum in Support of Motion to Dismiss Tribal Claims, Document 27-2, at 7 and 10 ("MTD Memo").

The Yomba Shoshone Tribe sufficiently pled jurisdiction and a right to recovery under various provisions of federal law, including the Constitution of the United States

and common law (1st Amend. Comp. at ¶ C.11) (including, but not limited to, United States Const., Art. 6 and Amend. 5). The Yomba Shoshone Tribe sufficiently pled the statutory and common law trust duties owed by the Defendant to the Western Shoshone Identifiable Group. (1st Amend. Compl. at ¶¶ C.11 and D.31-47) (including, but not limited to, 25 U.S.C. §§161, 161a and 162a, and 31 U.S.C. § 1321). Once a trust relationship is established, private trust law applies and money damages are recoverable because a damages remedy is integral in the scheme of private trust law. *Mitchell II*, 463 U.S. at 226-227.

The judgment funds appropriated to satisfy awards of the ICC that were deposited in the Treasury are trust funds. *Chippewa Cree Tribe v. United States*, 69 Fed. Cl. 639, 646-47, 652-53 (2006) (*Chippewa Cree I*) (gathering cases and finding that such funds are trust funds under the provisions of 31 U.S.C. § 1321(a)(67)). As the Defendant concedes, the Western Shoshone Judgment Funds were appropriated by Congress in satisfaction of the award in Dockets 326-K, 326-A-1, and 326-A-3, and were deposited in the Treasury where they were assigned account numbers JA9334697 (326-K) and JA9087691 (326-A-1 and 326-A-3) and held in trust. (MTD Memo at 1 and 4). Such trust funds are to be invested by Defendant in accordance with 25 U.S.C. §§ 161, 161a and 162a.

Indeed, it is well settled federal law that the owner of such tribal trust funds has the legal right to have the fund made whole in a suit for damages based upon breach of trust and mismanagement by the Defendant. *White Mountain Apache Tribe*, 537 U.S. at 475 ("elementary trust law, after all, confirms the commonsense assumption that a fiduciary actually administering trust property may not allow it to fall into ruin on his watch"). The pervasive statutory and regulatory scheme governing the management of the trust

funds at issue in this case creates a fiduciary relationship that mandates money damages. *Mitchell II*, 463 U.S. at 226-27 (damages awarded for mismanagement of tribal trust funds); *Cheyenne-Arapaho Tribes v. United States*, 206 Ct. Cl. 340 (1975) (same); *Shoshone Indian Tribe v. United States*, 364 F.3d 1339, 1351 (Fed. Cir. 2004) (same).

**a. The Western Shoshone Identifiable Group Claim was litigated as a tribal claim, not as individual claims.**

The Indian Claims Commission had jurisdiction only over Indian tribal, bands, or identifiable group claims, not individual claims. *Delaware Tribal Bus. Comm. v. Weeks*, 430 U.S. 73, 85 (1977); *Fields v. United States*, 191 Ct. Cl. 191 (1970) (the subject matter jurisdiction and waiver of immunity in 28 U.S.C. § 1505 does not apply to suits by individual Indians); *Snoqualmie Tribe v. United States*, 178 Ct. Cl. 570, 579 (1967)(same); *Minn. Chippewa Tribe v. United States*, 161 Ct. Cl. 258, 270-271 (1963)(same). Therefore, the Western Shoshone Judgment Funds awarded by the Indian Claims Commission are owned by the federally-recognized Western Shoshone Tribes. (See Research Memorandums 1980 and 1982). (Attached as Exhibits A and B).

**2. The Western Shoshone Claim Distribution Act did not Divest the Plaintiff of Its Interest in the Western Shoshone Judgment Funds.**

**a. Controlling case law confirms that the trust funds at issue are tribal funds.**

The Defendant does not question that it owes the Plaintiff a trust responsibility to manage the trust accounts. Rather, the Defendant challenges whether it owes the Plaintiff Yomba Shoshone Tribe a money mandating duty. The Defendant bases this challenge on the assertion that Congress' adoption of the Western Shoshone Claim Distribution Act providing for a 100 percent per capita distribution plan divested the Plaintiff of its

"expectancy."[6] (MTD Memo. at 8). Based on this single factor, the Defendant claims that the Plaintiff must produce some other viable theory of recovery and come forward with "relevant, competent proof to establish jurisdiction." (MTD Memo. at 7).

The Defendant relied upon *Burlison v. United States*, 75 Fed. Cl. 736, 740 (2007), for this proposition. However, *Burlison* is completely distinguishable from the instant case. *Burlison* involved a pro se plaintiff who sought $350,000,000.00 in damages from the United States on the basis of a default judgment he claimed to have obtained from a state trial court, where the case was actually transferred to a federal district court and was dismissed with prejudice, and to which the United States was not a party. *Id.* at 741-742. Unlike *Burlison*, the instant case involves the mismanagement of tribal trust funds and the Defendant has not offered a valid challenge to the jurisdiction of this Court to render a money judgment on behalf of the Western Shoshone Identifiable Group.

The Defendant's position in this case is similar to that taken by the Defendant in *Chippewa Cree Tribe v. United States*, 73 Fed. Cl. 154, 172 (2006)(*Chippewa Cree II*)(Defendant argued that distribution act "individualized" the fund to avoid mismanagement liability to the identified group plaintiff). However, nothing in that case, the Western Shoshone Distribution Act, or any of the other cases cited by Defendant, provides that the Western Shoshone Judgment Funds are anything other than tribal trust funds that remain in trust for the benefit of the Western Shoshone Identifiable Group until distributed.[7]

[6] The defendants do not claim that the distribution plan has been implemented or that any funds have been disbursed.

[7] Congress did not change the ownership of the Western Shoshone Judgment Funds in the Act. Congress provided the terms of distribution but nothing in the Act provides that the funds are no longer owned by the Western Shoshone Identifiable Group – recognized to be the federally-recognized Western Shoshone

Indeed, the Western Shoshone Claims Distribution Act expressly recognizes that the Western Shoshone Judgment Funds were awarded to the Western Shoshone Identifiable Group. P.L. 108-270, Preamble, 118 Stat. 805. Moreover, as the courts recognize, and the Defendant apparently concedes, distribution acts do not divest tribes or groups of their interests, and the funds remain tribal or group property until the distribution is complete and the funds are no longer held in a trust fund account. *See Lebeau v. United States*, 474 F.3d 1334, 1342-43 (2007)(unequivocally holding that the funds remain tribal funds subject to the power of Congress to reallocate the share until such time as the funds are actually distributed and gathering cases), *writ of certiorari denied by* 127 S.Ct. 3013 (2007); *see also, Sac and Fox Indians v. Sac and Fox Indians*, 220 U.S. 481, 486 (1911)(Court held that distribution acts do not change the tribal or communal nature of the fund. They "simply direct the Secretary of the Interior how the contracts of the United States are to be performed."); *Chippewa Cree II*, 73 Fed. Cl. at 160-61 ("statutes that direct the government in the manner tribal funds are to be distributed do not [divest the tribe or group of its interests]; where the tribe or group is the conduit through which benefits are distributed, 'the primary recipient is still the tribe or band,'" citing *Hebah v. United States*, 428 F.2d 1334, 1337-39 (1970)).

The Defendant recognizes that the Western Shoshone Judgment Funds remain tribal property by recognizing that Congress' continuing authority over the funds to alter the distribution plan is based on the funds' status as tribal property. (MTD Memo at 9, citing *Delaware Tribal Bus. Comm. v. Weeks*, 430 U.S. at 85 ("As tribal property, the appropriated funds were subject to the exercise by Congress of its traditional broad

Tribes. Defendant's reference in a footnote to a House Report reporting on an earlier version of the bill is unavailing where the definition was not adopted in the final version of the Act. (MTD Memo. at 7 n.7).

authority over the management and distribution of lands and property held by recognized tribes…”)).

**b. The Express Language of the Western Shoshone Claim Distribution Act Confirms the Plaintiff's Ownership Interest in the Western Shoshone Judgment Funds.**

Congress did not change the tribal or group ownership of the Western Shoshone Judgment Funds when it adopted the Western Shoshone Claims Distribution Act. All Congress did was provide the terms of distribution. Nothing in the Act provides that the funds are no longer owned by the Western Shoshone Identifiable Group – recognized to be the Western Shoshone Tribes. *See Loudner v. United States*, 108 F.3d 896, 900 (8th Cir. 1997) (“There is a presumption that absent explicit language to the contrary, all funds held by the United States for Indian tribes are held in trust”); *Angle v. United States*, 709 F.2d 570, 575 (9th Cir. 1983) (“We have been able to find… no evidence of ‘explicit language’ in the statute or its history indicating that the judgment fund monies were not to be held in trust … pending distribution.”); *Rogers v. United States*, 697 F.2d 886, 890 (9th Cir. 1983) (government's unique trust obligation provides “presumption that absent explicit language to the contrary, all funds held by the United States for Indian tribes are held in trust.”).

The Defendant's citation to *Crandon v. United States*, 494 U.S. 152, 158 (1990), for the proposition that the Western Shoshone Claims Distribution Act, when read “as a whole” shows that the Act divests the Yomba and other tribes of their interest in the funds, is unavailing for a number of reasons. *Crandon* was a criminal case involving whether a particular statute included the activity conducted by the defendants. The Supreme Court found that the ambit of the statute's coverage in the statutory language

and the history was ambiguous, thus it turned to the design of the statute as a whole and its object and policy. *Id.* However, when the language of the statute is not ambiguous, then the court need only look to the plain language first to determine its meaning. *Consumer Prod. Safety Comm'n v. GTE Sylvania*, 447 U.S. 102, 108, (1980) ("The starting point for interpreting a statute is the language of the statute itself."). Here, the Western Shoshone Claims Distribution Act clearly provides the terms of the distribution of the Western Shoshone Judgment Funds in Sections 3 and 4. The Act recognizes that the Western Shoshone Judgment Funds were granted to and held in trust on behalf of the Western Shoshone Identifiable Group (recognized by the Department of the Interior to be the Western Shoshone Tribes). The Act then establishes a distribution mechanism for these funds. Thus, in adopting the Act, Congress recognized that the Western Shoshone Identifiable Group is the conduit through which the funds will pass to the individuals and the group retains its interests in the funds until they are 100% distributed.[8] *Lebeau*, 474 F.3d at 1342.

**c. Congress Retains the Right to Alter the Distribution of Tribal Judgment Funds.**

As recognized by the Defendant (MTD Memo at 10), Congress retains the right to alter distribution plans until the distribution is effected. *Lebeau*, 474 F.3d at 1342 (citing *Delaware Tribal Bus. Comm.*, 430 U.S. at 90 ("The distribution has not yet occurred, and Congress has the power to revise its original allocation.")). In *Lebeau*, the court found that Congress had provided in 1972 for per capita distribution to tribal members and non-

[8] The distribution is not at issue in this case. The issue is payment of damages for mismanagement of the trust fund held on behalf of the Western Shoshone Identifiable Group. It is immaterial that courts have deferred to agency officials decisions on terms of distribution. Congress has provided express terms that, regardless of their merits, are not at issue in this case.

member lineal descendants; however, the executive did not timely distribute per capita shares to the lineal descendants. Then in 1998, Congress amended the distribution act and interrupted the distribution to individuals because the funds were needed to supply necessary capital to assist the reservation economies. *Lebeau*, 474 F.3d at 1337-38. The court held that the fund was not "individualized" during the period of 1972 through 1998 and that it remained tribal property. *Id* at 1343.[9]

Congress' recognized authority over distribution allocation does not, contrary to the unsupported statement of the Defendant, deprive the Yomba Shoshone Tribe of any part of the distribution or the interest earned during the time the funds were invested. (MTD Memo at 10). Indeed, Defendant's own cases cited in an effort to support this proposition confirm that just the opposite is true. Congress' recognized authority over the funds is grounded in the fact that the funds are tribal or group funds. *See e.g., Gritts v. Fisher*, 224 U.S. 640, 648 (1912) (distribution of tribal funds is "an extension of the administrative control of the government over the tribal property of tribal Indians"). In addition, whether the fund is distributed in whole or in part to individuals, the Tribal owners of the fund are the conduit through which the funds pass. *Snoqualmie Tribe v. United States*, 178 Ct. Cl. 570, 581 (1967) ("Awards are for all members of the group and not to be shared only by successful descendant-claimants."); *Peoria Tribe of Indians of Oklahoma v. United States*, 169 Ct. Cl. 1009, 1011-1012 (1965) ("How the award is to be

[9] In the instant case, the distribution provided for in Section 3 of the Western Shoshone Claims Distribution Act has not yet been carried into effect. In addition, there is a minimum 6 year wait period after distributions begin before per capita payments that fail to reach living competent adults are credited to the Western Shoshone Joint Judgment Funds pursuant to Section 3(c)(4) of the Act. Thus, there is a foreseeable amount of time during which Congress can change its distribution allocation and include any of the federally-recognized Western Shoshone Tribes as direct recipients of the funds.

paid and precisely who can participate … are questions for Congressional and administrative determination.”).

**d. Claims based on Defendant’s Mismanagement of the funds between 1979 and 2004 are best brought by a Tribal Government member of the Identifiable Group.**

Whatever merit the Court may find in Defendant’s argument regarding the proper party to challenge mismanagement of funds from 2004 until the present, it cannot be disputed that before adoption of the Western Shoshone Claims Distribution Act in 2004, Defendant managed the funds solely for the Tribes themselves that were members of the Western Shoshone Identifiable Group. Prior to passage of the Western Shoshone Claims Distribution Act, no individual could claim entitlement to distribution from the trust. As a result, claims based on mismanagement that resulted in foregone profits on trust fund money from the period between establishment of the fund in 1979 and passage of the Western Shoshone Claims Distribution Act must be brought by the only beneficiary members of the Identifiable Group with an interest in the money during that period: the Tribes themselves. This is not in any way a concession that the Tribes have no interest in the funds today. It merely recognizes that during those times when, without dispute, the funds were held in trust for Tribal beneficiaries, it is those beneficiaries who may represent the Identifiable Group in pursuit of the income lost through Defendant’s mismanagement.

**3. The Western Shoshone Claim Distribution Act did not Deprive the Yomba Shoshone Tribe of the Right to Represent the Identifiable Group in a suit for Mismanagement of the Western Shoshone Judgment Funds.**

The per capita and education trust fund distribution provided for by the Western Shoshone Claims Distribution Act is not at issue in this case. The act of distributing

funds held in trust by the United States does not dispel the trustee's fiduciary responsibility to the Yomba and other Tribes as part of the Western Shoshone Identifiable Group for moneys unpaid or losses sustained while the Identifiable Group's funds are in the Defendant's care. *Chippewa Cree II*, 73 Fed. Cl. at 171 (Congress can provide for per capita distribution, but that does not deprive the tribe of the right to sue for mismanagement).

Thus, the Defendant's assertion that the "tribe qua tribe" cannot recover money damages is unavailing. (MTD Memo at 10). As discussed above, nothing in the Western Shoshone Claims Distribution Act or the cases cited by the Defendant provides that the Western Shoshone Judgment Funds are anything other than tribal or group trust funds. And nothing in the Distribution Act or the cases cited by the Defendant provides that as representative for the Western Shoshone Identifiable Group, the Yomba Shoshone Tribe cannot bring suit to have the Defendant pay money into the Western Shoshone Identifiable Group's trust account held and managed by the Defendant. The Distribution Act merely provides Congress' plan for the distribution of the funds at issue to individuals and the education fund. The payment of damages to the fund is payment of damages to the Yomba Shoshone Tribe as a member of the Western Shoshone Identifiable Group. *Dann v. United States*, 470 U.S. 39, 49-50 (1983) (the Supreme Court held that the deposit in the Treasury of the funds appropriated in satisfaction of the award was a payment of damages to the Western Shoshone sufficient to satisfy the finality requirement of Section 22 of the Indian Claims Commission Act). Under the Western Shoshone Claims Distribution Act, the Western Shoshone Identifiable Group, vis-à-vis the Tribal owners of the fund, serves as the conduit through which the funds

pass per capita to members of the Group. *Snoqualmie Tribe*, 178 Ct. Cl. at 581 ("Awards are for all members of the group and not to be shared only by successful descendant-claimants"); *Peoria Tribe*, 169 Ct. Cl. at 1011-1012 ("How the award is to be paid and precisely who can participate…are questions for Congressional and administrative determination").

Likewise, the Defendant's assertions that the Tribe is not entitled to recover interest earned is unavailing. When the government has a clear statutory fiduciary duty to manage funds and undertakes the duty to earn interest on those funds, the failure of the government to manage such funds in accordance with its obligations will result in award of damages for the failure, as well as an award of interest on the amount mismanaged. *Shoshone Indian Tribe v. United States*, 364 F.3d 1339, 1353-54 (Fed. Cir. 2004); *see also, Short v. United States*, 50 F.3d 994, 999-1000 (Fed. Cir. 1995) (court granted interest pursuant to 25 U.S.C. §§ 161, 161a and 162a "as part of the damages award itself"); *Peoria Tribe of Indians of Oklahoma v. United States*, 390 U.S. 468, 473 (1968) (government had to pay damages and interest based on proceeds not collected in violation of treaty); *United States v. Blackfeather*, 155 U.S. 180, 193 (1894) (government required to pay interest on proceeds that should have been but were not collected). The ultimate distribution of the funds, whenever that occurs, is not the issue. Instead, the issue is the Defendant's failure to manage the trust funds it is holding for the Western Shoshone Identifiable Group, of which the Yomba Shoshone Tribe is admittedly a member and thus a proper representative in this case.

To summarize, the Yomba Shoshone Tribe is an owner of the Western Shoshone Judgment Funds. The Yomba Shoshone Tribe is a representative of the Western

Shoshone Identifiable Group as a beneficiary of the award granted to and received by that Group. The Plaintiff Yomba Shoshone Tribe, as a member of the Group, serves as a conduit for Western Shoshone individuals to share in the distribution. *Chippewa Cree II*, 73 Fed. Cl. at 160-61. Therefore, the Plaintiff Yomba Shoshone Tribe as a beneficial owner of the trust fund possesses a money mandating cause of action to have the Western Shoshone Judgment Funds made whole by the payment of money damages, including interest, into the trust on behalf of itself and the Group. The Supreme Court has long recognized that the act of distributing funds held in trust does not dispel the trustee's fiduciary responsibility to the tribe or group for money's paid while those funds were held in the government's care. *Blackfeather*, 155 U.S. at 193 (finding that United States' duty to pay interest on unpaid funds remained despite the dissolution and distribution of the funds); *Peoria Tribe*, 390 U.S at 471-72 (treaty based obligation to invest proceeds from land sale on behalf of ceding tribe applied even though proceeds were never received by the United States due to its violation of the treaty); *Mitchell II*, 463 U.S. at 227 (accord).

**B. Other Federally-Recognized Western Shoshone Tribes are not Indispensible Parties**

**1. Under 28 U.S.C. § 1505, tribal and individual plaintiffs can represent the Western Shoshone Identifiable Group without requiring the joinder of other parties.**

Claims brought by an identifiable group do not require notice and joinder as a condition precedent for benefiting from any award and thus notice and joinder requirements are not applicable to a proceeding by an identifiable group. *Chippewa Cree*, 69 Fed. Cl. at 674, citing *Wolfchild v. United States*, 62 Fed. Cl. 521, 554-55 (2004) (in the absence of class certification then notice must be provided to interested parties that

are not named as plaintiffs in compliance with RCFC 14(b) allowing permissive joinder). The defendant has not provided any authority to the contrary.

The Defendant agrees that the Yomba and Duckwater Shoshone Tribes are members of the Western Shoshone Identifiable Group. (MTD Memo at 2 n. 1). As enrolled members of the Yomba Shoshone (Maurice Frank-Churchill) and Duckwater Shoshone (Jerry Millett and Virginia Sanchez) Tribes, the individual plaintiffs are also members of the Western Shoshone Identifiable Group.[10]

As noted above, a claim brought by an identifiable group is not an aggregation of individual claims but a group claim on behalf of the identifiable group. *Fort Sill Apache Tribe v. United States*, 201 Ct. Cl. 630, 634-35, 477 F. 2d 1360, 1362 (1973), cert. denied, 416 U.S. 993 (1974); *Absentee Shawnee Tribe v. United States*, 165 Ct. Cl. 510, 514 (1964); *Cherokee Freedmen v. United States*, 161 Ct. Cl. 787, 788 (1963). The suing claimant represents that group interest. An Indian claim under the Act is unlike a class suit in that there is no necessity that the position of each individual member of the group be represented; it is only the group claim which need be put forward. *Western Shoshone Legal Defense & Education Assoc. v. United States*, 209 Ct. Cl. 43, 60 (1976).

The Temoak Bands of Western Shoshone Indians was deemed to adequately represent the Western Shoshone Identifiable Group in *Te-Moak Bands of Western Shoshone Indians v. United States*, 18 Cl. Ct. 82 (1989). The Identifiable Group there, as here, includes the Ely, Duckwater, Yomba and Timbisha Shoshone Tribes. Accordingly, the Yomba, Duckwater and Timbisha Shoshone Tribes can adequately represent the

[10] This case was filed by the Yomba Shoshone Tribe on December 26, 2006. The Timbisha Shoshone Tribe of Death Valley, California, and the Duckwater Shoshone Tribe of Nye County, Nevada, both federally-recognized Western Shoshone tribal governments, will file an appropriate motion for joinder contemporaneously herewith or shortly hereafter. *See* letters from respective Tribal Council Chairpersons attached as Exhibits C and D.

Western Shoshone Identifiable Group in this action. In fact, the Defendant concedes that members of the Western Shoshone Identifiable Group possess a common interest in the fund. (MTD Memo at 15).

Thus, RCFC 19 analysis is not applicable to a claim by members of the Western Shoshone Identifiable Group because those members represent the interests of all members of the Group. Here, the interests of the members of the Western Shoshone Identifiable Group are identical: to make the Western Shoshone Judgment Funds whole through payment of damages including interest into the funds.

The absent Western Shoshone Tribes are free to join or abstain from joining the lawsuit. However, as this court has recognized: "If the claims litigated belong to a group that is before the court, then the parties before the court are the same as the stakeholders. There are no 'absent parties' whose interests need to be protected." *Chippewa Cree II*, 73 Fed. Cl. at 171; *Upper Chahalis Tribe v. United States*, 140 Ct. Cl. 192, 155 F. Supp. 226, 230 (1957)(group was adequately represented by one of its members); *Nooksack Tribe of Indians v. United States*, 3 Ind. Cl. Comm'n 475, 481 (1955) (claims brought by individual member of the group was recognized).

**2. The Absent Western Shoshone Tribes are not Necessary or Indispensible to this Action because the Plaintiffs are only Seeking Money Damages.**

Although the analysis under RCFC 19 is inapplicable for the reasons stated above, the two part analysis under RCFC 19 does not provide that the absent Western Shoshone Tribes are necessary or indispensible parties. Under the two part analysis of RCFC 19, the threshold issue is whether a party is necessary to a suit, thereby making joinder of that party to the suit mandatory for the action's adjudication. A person is "necessary" under RCFC 19 if: (1) in the person's absence complete relief cannot be accorded among those

already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. *Davis*, 192 F.3d at 957-58 (applying the substantially identical Fed. R. Civ. P. 19).

The Defendant concedes that it bears the burden of proving that the Western Shoshone Tribes that have not joined in this action are necessary parties to the suit. Having done so, however, the Defendant fails to demonstrate that the presence of those Tribes is necessary to afford complete relief to the parties already present.[11] The only interest the Defendant has alleged on the part of the other Western Shoshone Tribes is a common interest in the Western Shoshone Judgment Funds. (MTD Memo at 15). Yet, in spite of this, the Defendant alleges that those interests are adverse[12] and in doing so relies exclusively upon *Wichita & Affiliated Tribes v. Hodel*, 788 F.2d 765, 774 (D.C. Cir. 1986). The court in that case found that the absent tribal parties were indispensible

---

[11] The Defendant alleges that it cannot represent the absent Western Shoshone Tribes pursuant to its trust responsibility because of the conflict with the other Group representatives. However, it is the Defendant's failure to protect the interests of the Western Shoshone Identifiable Group in the judgment funds in the first instance that is the subject matter of this suit. As set forth in this brief, the Plaintiffs can protect the interests of the absent Western Shoshone Tribes. In any event, the Defendant should not be able to raise its "trust responsibility" to individual group members as a shield the to prohibit the Identifiable Group from pursuing remedies for the Defendant's violation of specific trust duties established by statute resulting in millions of dollars in damages to those very same group members.

[12] The Defendant asserts that the Western Shoshone Tribes have longstanding conflicting views as to how the judgment funds should be distributed. (MTD Memo at 16). However, the distribution of the funds is not at issue in this case. The Plaintiffs are not seeking through this action to disrupt the distribution or change the distribution scheme. The Plaintiffs are seeking only to make the fund whole through a payment of damages and interest into the funds on behalf of the Western Shoshone Identifiable Group. On a highly analogous issue, the *Chippewa Cree II* court, in addressing whether to allow per capita beneficiaries of judgment funds to proceed in litigation against the United States for mismanagement of a common trust fund as an "identifiable group under Indian Tucker Act, 28 U.S.C. § 1505… found that there were no absent parties whose interests needed protection." Indeed, in that case the fact that one tribe requested return of unclaimed per capita payments under 25 U.S.C.§ 164 did not create adversity among the members of plaintiff group. *Chippewa Cree II*, 73 Fed. Cl. at 172.

because they had competing interests in the same parcel of trust land at issue in the case. Thus, the court opined that it was a text book example of prejudice to an absent party. *Id.* at 774.

However, unlike the conflicting claims to land between the tribes in *Wichita*, the Plaintiffs in this case and the absent Western Shoshone Tribes share a common interest in making the Western Shoshone Judgment Funds whole through payment of damages and interest into the funds on behalf of the Group. The damages will be paid to the fund and the fund will be distributed as required by law. *Snoqualmie Tribe*, 372 F.2d at 957 ("Awards are for all members of the group and not to be shared only by successful descendant-claimants."); *Peoria Tribe*, 169 Ct. Cl. at 1011-1012 ("How the award is to be paid and precisely who can participate … are questions for Congressional and administrative determination.")

The judgment funds in the present case have been held in common accounts on behalf of the Western Shoshone Identifiable Group since they were appropriated and deposited in the treasury beginning in 1979. As the *Chippewa Cree II* court recognized, "[a]ny breach by the government of its duties in regard to the management and investment of trust funds during that time *would be experienced as an injury in common to and indistinguishable in effect on all named tribal beneficiaries*…" 73 Fed. Cl. at 163 (emphasis in orginal). Accordingly, the Defendant's RCFC 19 defense must fail, as the government has failed to assert how the other Western Shoshone Tribes are necessary parties to this action.

## VI. CONCLUSION

The Federal Government should not be allowed to avoid answering for its misconduct by setting Tribe against Tribe, Tribal member against Tribe, and individual tribal members against each other. This case raises a simple challenge to the Government's mismanagement of a common fund. The Yomba Shoshone Tribe and other parties bringing this action are admittedly members of the Identifiable Group owning the trust fund at issue. The Yomba Shoshone Tribe adequately represents the interests of the Identifiable Group, and must be allowed to proceed with this action. The Defendant's motion to dismiss the Yomba Shoshone Tribe must be denied.

Dated: May 16, 2008

LUEBBEN JOHNSON & BARNHOUSE LLP

*/s/ Thomas E. Luebben*

Thomas E. Luebben
7424 4th Street NW
Los Ranchos de Albuquerque, NM 87107
(505) 842-6123
(505) 842-6124 fax

Attorney for plaintiffs, Yomba Shoshone Tribe, Maurice Frank-Churchill, Jerry Millet, and Virginia Sanchez, as representatives of the Western Shoshone Identifiable Group

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing RESPONSE IN OPPOSITION was served on May 16, 2008, by Electronic case filing on the following counsel:

Daniel G. Steele daniel.steele@usdoj.gov, Anthony .Hoang@usdoj.gov, efile_nrs.enrd@usdoj.gov, efile_nrs.tt.enrd@usdoj.gov

*/s/ Thomas E. Luebben*
Thomas E. Luebben