# In United States Court of Federal Claims

| | | |
|---|---|---|
| THE WESTERN SHOSHONE IDENTIFIABLE GROUP, represented by THE YOMBA SHOSHONE TRIBE, a federally recognized Indian Tribe; THE TIMBISHA SHOSHONE TRIBE, a federally-recognized Indian Tribe; and THE DUCKWATER SHOSHONE TRIBE, a federally-recognized Indian Tribe; and individual Western Shoshones MAURICE FRANK-CHURCHILL, JERRY MILLET, and VIRGINIA SANCHEZ, on their own behalf and on behalf of THE WESTERN SHOSHONE IDENTIFIABLE GROUP, | ) | |
| Plaintiffs, | ) | No. 1:06-cv-00896-EJD<br>Chief Judge Edward J. Damich |
| v. | ) | |
| THE UNITED STATES; DIRK KEMPTHORNE, Secretary of Interior, U.S. Department of the Interior; ROSS O. SWIMMER, Special Trustee, Office of Special Trustee for American Indians, U.S. Department of the Interior; HENRY M. PAULSON, JR., Secretary of the Treasury, U.S. Department of the Treasury, | ) | |
| Defendants. | ) | |

## SECOND AMENDED COMPLAINT

### A. INTRODUCTION

1. Plaintiffs, YOMBA SHOSHONE TRIBE, TIMBISHA SHOSHONE TRIBE, DUCKWATER SHOSHONE TRIBE and individual Western Shoshones MAURICE FRANK-CHURCHILL, JERRY MILLET, and VIRGINIA SANCHEZ, bring this action for damages not sounding in tort suffered by Plaintiffs, and all other Western Shoshone Tribes and individual Western Shoshone lineal descendants of at least one-quarter degree Western Shoshone blood,

who are citizens of the United States, and who were living on July 7, 2004, as a result of Defendants' mismanagement of the Plaintiffs' trust funds in Defendants' custody and control.

**B. PARTIES**

2. Plaintiff, Yomba Shoshone Tribe, is a federally recognized Indian Tribe listed in the federal register as published by the Assistant Secretary – Indian Affairs pursuant to the Federally Recognized Indian Tribe List Act of 1994, Pub. L. No. 103-454, 108 Stat. 4791 (Nov. 2, 1994), and is a member of the Western Shoshone Identifiable Group. Plaintiff's Reservation is situated in Nye County, Nevada.

3. Plaintiff, Timbisha Shoshone Tribe, is a federally recognized Indian Tribe listed in the federal register as published by the Assistant Secretary – Indian Affairs pursuant to the Federally Recognized Indian Tribe List Act of 1994, Pub. L. No. 103-454, 108 Stat. 4791 (Nov. 2, 1994), and is a member of the Western Shoshone Identifiable Group. Plaintiff's Reservation is situated in Death Valley, Inyo County, California.

4. Plaintiff, Duckwater Shoshone Tribe, is a federally recognized Indian Tribe listed in the federal register as published by the Assistant Secretary – Indian Affairs pursuant to the Federally Recognized Indian Tribe List Act of 1994, Pub. L. No. 103-454, 108 Stat. 4791 (Nov. 2, 1994) ), and is a member of the Western Shoshone Identifiable Group. Plaintiff's Reservation is situated in Nye County, Nevada.

5. Plaintiffs, Yomba Shoshone Tribe, Timbisha Shoshone Tribe and Duckwater Shoshone Tribe are three of nine Western Shoshone Tribes recognized by the Department of Interior as members of the Western Shoshone Identifiable Group and owners and beneficiaries of the funds appropriated in satisfaction of Indian Claims Commission judgment awards in Dockets Numbers 326-K, 326-A-1 and 326-A-3 (hereinafter "Dockets 326-K, 326-A-1 and 326-A-3").

6. Plaintiff, Maurice Frank-Churchill, is an enrolled member of the Yomba Shoshone Tribe; possesses at least one-half Western Shoshone blood; is a citizen of the United States; was alive on July 7, 2004; is eligible for inclusion on the Western Shoshone Judgment Roll to be established pursuant to the Western Shoshone Claims Distribution Act, 108 P.L. 270; 118 Stat. 805 (July 7, 2004); and has submitted an application to the Bureau of Indian Affairs to be included on the roll for the per capita distribution of the Western Shoshone Judgment Fund. Plaintiff Churchill is a member of the Western Shoshone Identifiable Group.

7. Plaintiff, Jerry Millet, is an enrolled member of the Duckwater Shoshone Tribe; possesses at lease one-quarter Western Shoshone blood; is a citizen of the United States; was alive on July 7, 2004; is eligible for inclusion on the Western Shoshone Judgment Roll to be established pursuant to the Western Shoshone Claims Distribution Act, 108 P.L. 270; 118 Stat. 805 (July 7, 2004); and has submitted an application to the Bureau of Indian Affairs to be included on the roll for the per capita distribution of the Western Shoshone Judgment Fund. Plaintiff Millet is a member of the Western Shoshone Identifiable Group.

8. Plaintiff, Virginia Sanchez, is an enrolled member of the Duckwater Shoshone Tribe; possesses at least one-quarter Western Shoshone blood, is a citizen of the United States; was alive on July 7, 2004; is eligible for inclusion on the Western Shoshone Judgment Roll to be established pursuant to the Western Shoshone Claims Distribution Act, 108 P.L. 270; 118 Stat. 805 (July 7, 2004); and has submitted an application to the Bureau of Indian Affairs to be included on the roll for the per capita distribution of the Western Shoshone Judgment Fund. Plaintiff Sanchez is a member of the Western Shoshone Identifiable Group.

9. Defendant United States of America ("United States") bears overall responsibility for the acts and omissions of all of the federal defendants, and is amenable to this suit under 28 U.S.C. §§ 1491 and 1505.

10. Defendant Dirk Kempthorne is the Secretary of Interior who is charged by law with carrying out the duties and responsibilities of the United States as trustee for the Plaintiff and Plaintiff’s trust assets.

11. Defendant Henry M. Paulson, Jr. is the Secretary of the Treasury who is the custodian of Plaintiff’s trust funds and trust assets, and who is responsible for the administration of those funds and assets and for the preparation and maintenance of records in connection therewith.

12. Defendant Ross O. Swimmer is the Special Trustee for American Indians, appointed by the President of the United States with the advice and consent of the Senate. Defendant Swimmer’s legal duties and responsibilities to the Plaintiff as special trustee are spelled out in part by the Act of October 25, 1994, Pub. L. No. 103-412, 108 Stat. 4239.

**C. JURISDICTION AND VENUE**

13. The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1491 and 1505 specifically authorizing civil suits by Indian tribes, and “other identifiable group[s] of American Indians,” against the United States for money damages in excess of $10,000. This case arises under the Constitution of the United States, including but not limited to the United States Const. Art. 6 (Supremacy Clause) and Amend. 5 (Due Process and Takings Clauses); and federal statutes and federal common law. As pled herein, it also arises under federal statutes, including but not limited to 25 U.S.C. §§ 161, 161a and 162a, and 31 U.S.C. § 1321, and federal common law governing the Plaintiffs’ legal relationship with the United States

and governing the administration and management of assets and funds held by the United States in trust for the Plaintiffs.

14. Venue is proper in this court pursuant to 28 U.S.C. §§ 1491 and 1505 because this is an action for damages not sounding in tort against the United States, and against executive branch bodies and officials of the United States acting in an official capacity.

**D. FACTUAL AVERMENTS**

15. Plaintiffs Yomba Shoshone Tribe, Timbisha Shoshone Tribe and Duckwater Shoshone Tribe are tribal beneficial owners of funds appropriated by the United States Congress (hereinafter "Congress") in satisfaction of the judgment awards for Dockets 326-K, 326-A-1, and 326-A-3 that are currently held in trust for the Western Shoshone Tribes by the United States as Indian trustee.

16. The Department of Interior recognized all 9 of the Western Shoshone Tribes as beneficial owners of the funds appropriated by Congress in satisfaction of the judgment awards for Dockets 326-K, 326-A-1, and 326-A-3, including: the Te-Moak Tribe of Western Shoshone Indians of Nevada, and its four constituent bands consisting of the Elko Band, Battle Mountain Band, South Fork Band, and Wells Band; the Duckwater Shoshone Tribe of the Duckwater Reservation, Nevada; the Yomba Shoshone Tribe of the Yomba Reservation, Nevada; the Ely Shoshone Tribe of Nevada; and the Timbisha Shoshone Tribe of California. Department of Interior Memoranda from Commissioner of Indian Affairs to Phoenix Area Director and Sacramento Area Director, Results of Research Report on Western Shoshone Award in Docket 326-K (March 11, 1980).

17. There are questions of law and fact common to all 9 of the Western Shoshone Tribes as beneficial owners of the funds appropriated by Congress in satisfaction of the judgment

awards for Dockets 326-K, 326-A-1, and 326-A-3. The claims of the Plaintiffs Yomba Shoshone Tribe, Timbisha Shoshone Tribe and Duckwater Shoshone Tribe are typical of the claims of all the Western Shoshone Tribes (hereinafter "the Tribal Beneficial Owners") comprising the Western Shoshone Identifiable Group and the representation will fairly and adequately protect the interests of the Western Shoshone Identifiable Group as beneficial owners of the funds.

18. The individual Western Shoshone Plaintiffs are members of the class of beneficiaries eligible for inclusion on the Western Shoshone Judgment Roll for the per capita distribution of the Western Shoshone Judgment Fund, comprised of funds appropriated in satisfaction of the judgment award in Docket 326-K, together with all dividends and interest earned (hereinafter "the Judgment Fund"), and the distribution of the Western Shoshone Joint Judgment Funds, comprised of funds appropriated in satisfaction of the judgment award in Dockets 326-A-1 and 326-A-3, together with all dividends and interest earned (hereinafter "the Joint Judgment Funds"), pursuant to the Western Shoshone Claims Distribution Act, 108 P.L. 270; 118 Stat. 805 (July 7, 2004).

19. The individual Western Shoshone Plaintiffs form an "identifiable group of American Indians" (hereinafter "the Beneficiary Group") that includes the class of persons eligible to receive a per capita distribution of the Judgment Fund, and a distribution of the Joint Judgment Funds.

20. There are questions of law and fact common to the Beneficiary Group as a class of persons eligible to receive a per capita distribution of the Judgment Fund and a distribution of the Joint Judgment Funds. The claims of the individual Western Shoshone Plaintiffs are typical of the claims of all the members of the Beneficiary Group and the representation will fairly and

adequately protect the interests of the entire Beneficiary Group and will avoid the risk of inconsistent or varying adjudications with respect to individual members of the group which would establish incompatible standards of conduct for the Defendants.

21. On information and belief there are approximately 10,000 to 12,000 individual Western Shoshone lineal descendants possessing at least one-quarter Western Shoshone blood, who are citizens of the United States; who were alive on July 7, 2004; who are not eligible to receive a per capita payment from any other judgment fund based on an aboriginal land claim awarded by the Indian Claims Commission, the United States Claims Court, or this Court, that was appropriated on or before July 7, 2004; and who are eligible to submit an application to the Bureau of Indian Affairs to be included on the roll for the per capita distribution of the Western Shoshone Judgment Fund.

22. On information and belief there are approximately 6,000 individual Western Shoshone lineal descendants possessing at least one-quarter Western Shoshone blood, who are citizens of the United States; who were alive on July 7, 2004; who are not eligible to receive a per capita payment from any other judgment fund based on an aboriginal land claim awarded by the Indian Claims Commission, the United States Claims Court, or this Court, that was appropriated on or before July 7, 2004; and who as of this date have submitted an application to the Bureau of Indian Affairs to be included on the roll for the per capita distribution of the Western Shoshone Judgment Fund.

23. Together the Tribal Beneficial Owners and the Beneficiary Group form a collective “identifiable group of American Indians” (hereinafter collectively referred to as “the Western Shoshone Identifiable Group” or as “the Plaintiffs”) that is entitled to bring a claim against the Defendants pursuant to 28 U.S.C. § 1505.

24. Questions of law and fact common to the Western Shoshone Identifiable Group include, but are not limited to, the legal standards governing the trust obligations of the United States with respect to the funds in the trust accounts; what accounting, recordkeeping, reporting, and other practices are and have been necessary to achieve compliance with such standards; the extent to which, if at all, the Defendants have complied with such standards and have implemented or failed to implement such practices; and the damages flowing from such breaches of trust that are necessary to make the trust accounts for the Judgment Fund and the Joint Judgment Funds whole on behalf of the Western Shoshone Identifiable Group.

25. The claims of the representative Plaintiffs and all other members of the Western Shoshone Identifiable Group arise from the same practices and course of conduct of the Defendants and are based on the same legal theory.

26. Congress appropriated funds in satisfaction of the judgment awards in Dockets 326-K, 326-A-1 and 326-A-3 pursuant to 31 U.S.C. § 724a (Supp. III 1979).

27. Congress deposited the funds referenced in paragraph 26 in the United States Treasury in accounts JA9334697 (Docket 326-K) and JA9087691 (Dockets 326-A-1 and 326-A-3).

28. The funds referenced in paragraphs 26 and 27 are held in trust by the United States on behalf of the Plaintiffs.

29. Upon deposit of the funds in the United States Treasury, the United States took possession of the funds as trust funds (hereinafter "Trust Funds").

30. The United States is the trustee for those Trust Funds.

31. The United States has specific statutory obligations as trustee.

32. The United States has specific common law obligations as trustee.

33. The United States, as trustee, has a fiduciary relationship with the Plaintiffs.

34. The United States, as trustee, has an obligation to administer the Trust Funds with the greatest skill and care possessed by the trustee.

35. The trust obligations of the United States include, but are not limited to, the following:

36. The duty to collect Trust Funds owed to the Plaintiffs.

37. The duty to create trust accounts to hold the Plaintiffs' Trust Funds.

38. The duty to ensure that the monies owed or paid for Plaintiffs' benefit pursuant to a settlement, judgment or other agreement are placed in those accounts in a timely manner.

39. The duty to maintain adequate records with respect to Plaintiffs' Trust Funds.

40. The duty to maintain adequate systems and controls to guard against errors and dishonesty.

41. The duty to provide regular and accurate accountings to the Plaintiffs as the trust beneficiaries.

42. The duty to refrain from self-dealing or benefiting from the management of the Trust Funds.

43. The duty to ensure the Federal Government's compliance with the protections afforded the Plaintiffs under the Constitution of the United States and other applicable laws.

44. The duty to consult with the Plaintiffs regarding the management of their Trust Funds.

45. The duty to ensure that Plaintiffs' Trust Funds are protected, preserved and managed so as to produce the highest rate of return to the beneficiaries.

46. The United States has obligated itself to invest the Trust Funds in any public obligations of the United States or in any bonds, notes, or other obligations which are unconditionally guaranteed as to both interest and principal by the United States.

47. The United States has an obligation to deposit Plaintiffs' Trust Funds in an approved bank, unless otherwise required by law to pay a higher interest rate than could be procured from the bank.

48. Congress has charged the Defendants with fulfilling the obligations of the United States as trustee.

49. Congress has charged the Defendants with the responsibility for the administration and management of Plaintiffs' Trust Funds in compliance with the Constitution of the United States and other federal law.

50. All the Defendants in this case and their predecessors assumed the responsibility for the administration, management and investment of the Trust Funds.

51. Upon information and belief, Defendants and their predecessors have deposited the Trust Funds in banks or invested them in obligations of the United States.

52. Upon information and belief, Defendant Secretary of the Interior and his predecessors have deposited the Trust Funds in banks or invested them in obligations of the United States.

53. Upon information and belief, Defendant Special Trustee and his predecessors have deposited the Trust Funds in banks or invested them in obligations of the United States.

54. Defendants have control over all of the records of accounts affecting the Plaintiffs' Trust Funds.

55. The Defendants have failed to meet their statutory obligations to the Plaintiffs.

56. The Defendants have failed to meet their legal obligations to the Plaintiffs.

57. Defendants have failed to provide the Plaintiffs with a clear statement of the interest and dividends being paid on the Trust Funds.

58. Defendants have failed to establish an effective system for regular or periodic accountings of the Plaintiffs' Trust Funds.

59. Defendants have never rendered a full audit or accounting to the Plaintiffs of their Trust Funds.

60. Defendants have never provided the Plaintiffs with a clear statement as to the use of all of the funds in each of their accounts.

61. Plaintiffs have never received an accurate accounting of how the Trust Funds were invested.

62. Plaintiffs have never received an accurate accounting of the rate of interest paid on the Trust Funds.

63. Plaintiffs have never received an accurate accounting of how the Trust Funds were expended.

64. Plaintiffs have never received an accurate accounting of what happened to the Trust Funds after they were accepted for management by the United States.

65. Defendants have kept the Plaintiffs uninformed as to the income that Plaintiffs' Trust Funds have produced.

66. Defendants continue to keep the Plaintiffs uninformed as to the income that Plaintiffs' Trust Funds have produced.

67. Defendants have kept the Plaintiffs uninformed as to what disposition, if any, has been made of the income referenced in paragraphs 65 and 66 and the Trust Funds.

68. Defendants continue to keep the Plaintiffs uninformed as to what disposition, if any, has been made of the income referenced in paragraphs 65 and 66 and the Trust Funds.

69. Upon information and belief, Defendants have invested the Trust Funds at rates lower than allowed by law.

70. Upon information and belief, the investment of Trust Funds at rates lower than allowed by law resulted in financial loss to the Plaintiffs in an amount to be proven at trial.

71. Upon information and belief, Defendants are unable to account accurately for the Trust Funds.

72. Upon information and belief, Defendants are unable to provide Plaintiffs with full and accurate statements of their Trust Fund balances.

73. The United States Inspector General for the Department of Interior, the United States General Accounting Office and the United States Congress have all found that massive and long-standing problems exist with Defendants' administration of Indian trust funds.

74. After a series of oversight hearings on the Department of the Interior's management of Indian trust funds, Congress issued a report wherein it condemned the Department of Interior's administration and management practices and characterized the administration of Indian Affairs as being "expensive, inefficient, and irresponsible." *See* H.R. Rep. No. 103-778, 103d Cong., 2d Sess. 10 (1994).

75. Congress issued a report noting numerous reports prepared by the Interior Department's Inspector General, the General Accounting Office and the Office of Management and Budget which documented significant and habitual problems with the management of tribal trust funds. *See Misplaced Trust, Bureau of Indian Affairs Mismanagement of the Indian Trust Fund,* H.R. Rep. No. 102-499, 102d Cong., 2-3 (1992).

76. Congress has concluded that the Bureau of Indian Affairs has failed and continues to fail in the management and investment of tribal trust funds in the manner required by law. *See Id*.

77. In the Act of December 22, 1987, Pub. L. No. 100-102, 101 Stat. 1329, Congress mandated that Defendants: (1) audit and reconcile tribal trust funds, and (2) provide the tribes with an accounting of such funds. Congress reaffirmed these mandates in subsequent legislation, including, but not limited to: Act of October 30, 1989, Pub. L. No. 101-121, 103 Stat. 701; Act of November 5, 1990, Pub. L. No. 101-512, 104 Stat. 1915; and Act of November 3, 1991, Pub. L. No. 102-154, 105 Stat. 990. By these Acts, Congress further required that the Defendants certify, through an independent party, the results of the reconciliation of tribal trust funds as the most complete reconciliation possible of such funds.

78. Congress has passed legislation providing that the statute of limitations shall not commence to run on any claim concerning losses to or mismanagement of trust funds until the affected tribe or individual Indian has been furnished with an accounting of such funds from which the beneficiary can determine whether it has suffered a loss.

79. In 1994 Congress enacted the Indian Trust Reform Act, P.L. 103-412, 108 Stat. 4239 (Oct. 25, 1994), codified at 25 U.S.C. §§ 4001 *et seq*.

80. The Indian Trust Reform Act was an attempt to cure the Department of the Interior's trust asset management problems.

81. In the Indian Trust Reform Act, Congress acknowledged the pre-existing trust duties of the United States, and charged the Defendants with additional trust duties to ensure the proper discharge of their individual trust responsibilities, as well as the trust responsibilities of the United States.

82. As evidenced by reports issued by the Interior Department's Inspector General, the General Accounting Office, and the Office of Management and Budget, among others, despite the numerous Acts of Congress, Defendants have continually failed to implement the reforms mandated by law and have hampered the Special Trustee for American Indians in his efforts to perform his legal duties and obligations. The Defendants' continued failure to implement the mandated reforms and to provide timely and meaningful accounting is now the subject of pending litigation in federal court. *See Cobell v. Norton*, No. 96-1285 (D.D.C.). The proceedings in that case, dealing with individual Indian money accounts, confirm the Government's breach of its fiduciary duty as trustee to carry out its obligations to individual Indians and tribes. *See Cobell v. Babbitt*, 91 F. Supp. 2d. 1 (D.D.C. 1999), *aff'd sub nom Cobell v. Norton*, 240 F.3d 1081 (D.C. Cir. 2001).

83. Upon information and belief, the mismanagement and lack of a basic ability to manage tribal trust funds has resulted in losses to the Plaintiffs, the extent of which is unknown to Plaintiffs at this time because Defendants have: (a) failed to provide Plaintiffs with a full and complete accounting of the amount contained in each of their Trust Fund accounts, and the few reports that Defendants have provided, like the report prepared by Arthur Anderson, are incomplete and inaccurate; (b) failed to provide Plaintiffs with a comprehensive statement of the use and investment of their Trust Funds and the interest rate earned on those funds; (c) failed to maintain an accurate accounting and records of the Plaintiff's accounts; (d) lost and destroyed relevant trust account records; (e) failed or refused to disclose known losses and unmade or incomplete payments to the Plaintiffs as trust beneficiaries; (f) failed or refused to disclose known delays in making deposits and investments of Plaintiffs' Trust Funds thereby not

maximizing the rate of return of those funds as prescribed by law; and (g) failed or refused to reimburse the Plaintiffs for losses to their Trust Funds.

**E. REQUEST FOR RELIEF**

Plaintiffs ask this Court to enter judgment in favor of Plaintiffs and against Defendants:

1. Awarding Plaintiffs monetary damages proven at trial, or upon motion to the Court, plus interest, credited to the Western Shoshone Judgment Fund and Joint Judgment Funds;

2. Ordering Defendants to correct all records pertaining to Plaintiffs' trust assets pursuant to 28 U.S.C. § 1491(a)(2);

3. Remanding appropriate matters to Defendants with such direction as the Court deems proper and just pursuant to 28 U.S.C. § 1491(a)(2); and

4. Awarding Plaintiffs all other relief that the Court deems proper and just.

Dated: June 25, 2008

LUEBBEN JOHNSON & BARNHOUSE LLP

*/s/ Thomas E. Luebben*

Thomas E. Luebben
7424 4th Street NW
Los Ranchos de Albuquerque, NM 87107
(505) 842-6123
(505) 842-6124 fax

Attorneys for plaintiff Western Shoshone Identifiable Group as represented by the Yomba Shoshone Tribe, the Timbisha Shoshone Tribe, the Duckwater Shoshone Tribe, Maurice Frank-Churchill, Jerry Millet, and Virginia Sanchez.

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing SECOND AMENDED COMPLAINT was served on June 25, 2008, by Electronic case filing on the following counsel:

Daniel G. Steele daniel.steele@usdoj.gov, Anthony .Hoang@usdoj.gov, efile_nrs.enrd@usdoj.gov, efile_nrs.tt.enrd@usdoj.gov

*/s/ Thomas E. Luebben*
Thomas E. Luebben