IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| YOMBA SHOSHONE TRIBE,<br>TIMBISHA SHOSHONE TRIBE,<br>DUCKWATER SHOSHONE TRIBE,<br>ET AL. | ) | |
| Plaintiffs, | ) | |
| v. | ) | Case No. 06-cv-00896L<br>Judge Edward J. Damich |
| THE UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS TRIBAL CLAIMS**

RONALD J. TENPAS
Assistant Attorney General

Daniel G. Steele
Attorney of Record for Defendant
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington D.C., 20044-0663
Tel: (202) 305-0484
Facsimile: (202) 305-0267

Of Counsel:
Michael Bianco, Esquire
United States Department of the Interior
Office of the Solicitor
1849 C Street
Washington, D.C. 20240

**TABLE OF CONTENTS**

Introduction . . . . . . . . . . 1

Argument . . . . . . . . . . 3

I. WITHOUT BEING BENEFICIARIES OF DISTRIBUTIONS FROM THE JUDGMENT FUNDS AND NOT HAVING VESTED RIGHTS, THE TRIBAL PLAINTIFFS CANNOT SEEK DAMAGES BASED ON MISMANAGEMENT OF THE FUNDS . . . . . . . . . . 3

A. Federal Circuit's Decision in *LeBeau v. United States* is Controlling and Relevant to the Facts in This Case . . . . . . . . . . 3

B. The Tribal Plaintiffs Cannot "Own" the Judgment Funds Without a Present and Vested Interest in Them . . . . . . . . . . 7

C. The Fact That the Vesting of Judgment Funds Had Occurred in *Chippewa Cree* Distinguishes It From the Pertinent Facts In This Case . . . . . . . . . . 9

II. THE TRIBAL PLAINTIFFS HAVE NOT MET THRESHOLD REPRESENTATION REQUIREMENTS . . . . . . . . . . 11

A. Rule 19 is Applicable to Protect the Interests of Absent Parties . . . . . . . 11

B. The Te-Moak Bands are the Appointed Representatives of the Western Shoshone Identifiable Group in The ICCA Proceedings, Not The Tribal Plaintiffs Here and Their Representation is Subject to the Court's Scrutiny . . . . . . . . . . 13

Conclusion . . . . . . . . . . 14

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Bell Atl. Corp. v. Twombly*,
127 S. Ct. 1955 (2007) . . . . . . . . . . 1

*Board of Regents of State Colleges v. Roth*,
408 U.S. 564 (1972) . . . . . . . . . . 8

*Chippewa Cree Tribe v. United States*,
69 Fed. Cl. 639 (2006) . . . . . . . . . . 13

*Chippewa Cree Tribe v. United States*,
73 Fed. Cl. 154 (2006) . . . . . . . . . . 9, 10, 11

*Citizen Potawatomi Nation v. Norton*,
248 F.3d 993 (10th Cir. 2001) . . . . . . . . . . 11

*Davis v. United States*,
192 F.3d 951 (10th Cir. 1999) . . . . . . . . . . 11

*Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*,
276 F.3d 1150 (9th Cir. 2002) . . . . . . . . . . 11

*Del. Tribal Bus. Comm. v. Weeks*,
430 U. S. 73 (1977) . . . . . . . . . . 3, 4, 9

*Greenlee v. Bd. of Med. of D.C.*,
813 F. Supp. 48 (D.D.C. 1993) . . . . . . . . . . 9

*Gritts v. Fisher*,
224 U.S. 640 (1912) . . . . . . . . . . 3, 4, 5

*Te-Moak Bands of W. Shoshone Indians v. United States*,
18 Cl. Ct. 82 (1989) . . . . . . . . . . 14

*Keweenew Bay Indian Cmty. v. Michigan*,
11 F.3d 1341 (6th Cir. 1993) . . . . . . . . . . 11

*Laker Airways v. British Airways*,
182 F.3d 843 (11th Cir. 1999) . . . . . . . . . . 11

*LeBeau v. United States*,
474 F.3d 1334 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

*Lyng v. Payne*,
476 U.S. 926 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Manybeads v. United States*,
209 F.3d 1164 (9th Cir. 2000), . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Morrison v. Work*,
266 U.S. 481 (1924) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*N. Cheyenne Tribe v. Hollowbreast*,
425 U.S. 649 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

*Provident Tradesmen Bank & Trust Co. v. Patterson*,
390 U.S. 102 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Red Bird v. United States*,
203 U.S. 76 (1906) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Shetter v. Amerada Hess Corp.*,
14 F.3d 934 (3d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Bowen*,
172 F.3d 682 (9th Cir 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Jim*,
409 U.S. 80 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

*Viacom Int'l Inc. v. Kearney*,
212 F.3d 721 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*W. Shoshone Legal Def. and Educ. Ass'n v. United States*,
531 F.2d 495 (Ct. Cl. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Wichita & Affiliated Tribes v. Hodel*,
788 F.2d 765 (D.C. Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**FEDERAL STATUTES**

60 Stat. 1049 (1946) . . . . . . . . . . 2
28 U.S.C. § 1491 . . . . . . . . . . 12

**PUBLIC LAWS**

Pub. L. No. 108-270, 118 Stat. 805 (2004) . . . . . . . . . . 2

**LEGISLATIVE MATERIALS**

S. Rep. No. 107-297 (2002) . . . . . . . . . . 12
S. Rep. No. 108-151 (2002) . . . . . . . . . . 12

**FEDERAL RULES**

RCFC 12(b)(6) . . . . . . . . . . 1, 14, 15
RCFC 12(b)(7) . . . . . . . . . . 3
RCFC 19 . . . . . . . . . . 12, 14

**OTHER AUTHORITIES**

Felix S. Cohen, *Handbook of Federal Indian Law* (1971 ed.) . . . . . . . . . . 4
Henry C. Black, *Black's Law Dictionary* (6th ed. 1990) . . . . . . . . . . 8

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| YOMBA SHOSHONE TRIBE,<br>TIMBISHA SHOSHONE TRIBE,<br>DUCKWATER SHOSHONE TRIBE,<br>ET AL.<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | ) | Case No. 06-cv-00896L<br>Judge Edward J. Damich |

**DEFENDANT'S REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS TRIBAL CLAIMS**

***Introduction***

Defendant's Memorandum in Support of Motion to Dismiss Tribal Claims presents two discrete legal issues: (1) whether or not the Yomba, Timbisha, and Duckwater Shoshone Tribes ("Tribal Plaintiffs")[1/] state claims under any "viable legal theory"[2/] upon which the Court can grant relief; and (2) whether or not the suit can go forward in the absence of the other Shoshone Tribes because the absent tribes are "necessary" and "indispensable" parties under Rule 19 of the Rules of the United States Court of Federal Claims ("RCFC"). A ruling in Defendant's favor on either or both grounds would warrant the dismissal of the Tribal claims pursuant to RCFC 12(b)(6) and (7).

---

1/ Defendant's Motion for Dismissal of the Yomba Shoshone Tribal claims followed Plaintiffs' filing of their First Amended Complaint, filed on March 12, 2008. On May 22, 2008, Plaintiffs filed a Motion for Leave to File Second Amended Complaint which, *inter alia*, sought to add the Timbisha, and Duckwater Shoshone Tribes as parties. On June 24, 2008, the Court granted Plaintiffs the requested relief, ordering that the Second Amended Complaint be filed on or before June 27, 2008, and made all three Tribal Plaintiffs subject to the Court's ultimate ruling pursuant to this pending motions practice.

2/ *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) addressing Rule 12(b)(6) standards.

The basis of the Shoshone Tribes' historical tribal claims under the Indian Claims Commission Act ("ICCA") (60 Stat. 1049 (1946) (codified as amended at 25 U.S.C. §§70, *et seq.*) (1976 ed.), or the Indian Claims Commission's ("ICC") jurisdiction only to hear and determine claims against the United States on behalf of an Indian tribe, band, or other identifiable group of American Indians (not individual Indians) (*Id.* §70a) fail to address or support, one way or the other, the foregoing questions of law. Also, the fact that the Western Shoshone judgment funds presently reside in trust accounts held by the United States, or that the funds have not yet been distributed pursuant to the Western Shoshone Claims Distribution Act ("Distribution Act"), Pub. L. No. 108-270, 118 Stat. 805 (2004) are operative facts, but are not dispositive as to any of the legal issues presented by Defendant's Motion to Dismiss the Tribal Claims. The Plaintiffs' discussion of these factors in their Response (pp. 1-2, 4-8, 11, 18, 21-22) to Defendant's Motion to Dismiss does not advance the legitimate consideration of the questions presented. Similarly, the underlying issue presented in the suit – whether or not the United States has breached fiduciary duties with regard to its management of the trust funds and whether alleged breaches constitute money mandating causes of action (Pls.' Resp. at 5, 8-11, 14, 18-20) are important issues, but are not relevant or dispositive to the questions of law presented by Defendant's Motion to Dismiss Tribal Claims.

Plaintiffs fail to adequately address the singular important pertinent fact in this case – namely that Congress has enacted a straight forward law providing for the *per capita*, not tribal, distribution of the Western Shoshone Judgment Funds. In view of that law, the legal question becomes what "viable legal theory", if any, would permit the Tribal Plaintiffs to legitimately assert claims for money damages premised on the alleged financial mismanagement of the funds

since issuance of the awards in 1979, 1992, and 1995. The legal issue is not one of first impression. Courts have decided this same legal issue in other contexts before, not the least of which is the Federal Circuit in 2007. RCFC 12(b)(7) is also a basis for dismissal because other Western Shoshone Tribes are indispensable parties to this suit.

***Argument***

## I. WITHOUT BEING BENEFICIARIES OF DISTRIBUTIONS FROM THE JUDGMENT FUNDS AND NOT HAVING VESTED RIGHTS, THE TRIBAL PLAINTIFFS CANNOT SEEK DAMAGES BASED ON MISMANAGEMENT OF THE FUNDS

### A. Federal Circuit's Decision in *LeBeau v. United States*[3/] is Controlling and Relevant to the Facts in This Case

Plaintiffs selectively refer to *LeBeau* in their Response citing only pages 1342-43 of the *LeBeau* opinion. *See* Pls.' Resp. at 13, 15, 16. Plaintiffs flawed interpretation of *LeBeau vis-a-vis Yomba* is, in their own words that " . . . distribution acts do not divest tribes or groups of their interest, and the funds remain tribal or group property until the distribution is complete and the funds are no longer held in a trust fund account. *See LeBeau v. United States*, 474 F.3d 1334, 1342-43 (2007)." Pls.' Resp. at 13. Plaintiffs insinuate here that *LeBeau* and the cases cited therein at 1342 (*Del. Tribal Bus. Comm. v. Weeks,* 430 U. S. 73 (1977), *N. Cheyenne Tribe v. Hollowbreast*, 425 U.S. 649 (1976), *United States v. Jim,* 409 U.S. 80 (1972), and *Gritts v. Fisher*, 224 U.S. 640 (1912)) stand for the proposition that, like allotment and royalty interests at issue in *N. Cheyenne Tribe*, *Jim,* and *Gritts*, the Shoshone judgment funds "remain tribal or group property until the distribution." That, however, was not the focus of Part C of the *LeBeau* Federal Circuit discussion, nor does it correctly represent the court holdings in the cited cases.

---

[3/] 474 F.3d 1334 (Fed. Cir. 2007).

The purpose of the Federal Circuit's Part C *LeBeau* discussion was to enumerate long standing Supreme Court authority for the proposition that Congress has broad power to prescribe, at any time, the distribution of property of Indian Tribes. By example, the *LeBeau* decision in Part C references various acts of Congress in its consideration of vesting issues: the Northern Cheyenne Allotment Act which was determined not to grant allottees *vested rights* in mineral deposits *(N. Cheyenne Tribe*, 425 U.S. at 653-56); a 1933 Congressional Act adding certain lands in Utah to the Navajo Reservation and providing for net royalty payments to the State by amendments in 1968 which was determined *not to violate* the Fifth Amendment "takings" clause (*Jim* 409 U.S. at 82-83); and amendments to a 1902 allotment plan to permit Cherokee children born through 1906 to participate in the plan was determined *not to violate* alleged vested rights. (*Gritts* 224 U.S. at 648). These cases all support the long-standing precept that Congress has "broad congressional power" to prescribe for the distribution of Indian property, in this case until actual distribution occurs. *Del. Tribal Bus. Comm.,* 430 U. S. at 90; *Morrison v. Work*, 266 U.S. 481, 485 (1924).[4/]

Until the time of distribution, *vesting* has not occurred, there is no constitutionally protected property interest (*Jim*, 409 U.S. at 81), and there is no basis for a party to sue the United States for money damages if Congress' distribution plan designates distribution to a party other than the party bringing the action. *See Gritts*, 224 U.S. at 648 (quoting *Red Bird v. U.S.*, 203 U.S. 76, 93 (1906)) (Appellants treat the 1902 Act "as a contract, when 'it is only an act of Congress, and can have no greater effect."'). Here, the beneficiaries of the Western Shoshone

[4/] "'Ordinarily a debt due to a nation, by treaty, ought to be paid to the constituted authorities of the nation; but where the treaty and the law appropriating the money both direct the payment to all the individuals of the nation *per capita*, the treaty and the statute must prevail.'" Felix S. Cohen, *Handbook of Federal Indian Law* (1971 ed.) (quoting 5 Op. A.G. 320 (1851)).

Distribution Act are all individuals, and no tribes are designated as beneficiaries. Thus, Plaintiffs' proposition that Shoshone judgment funds "remain tribal or group property until the distribution" cannot be sustained by a plausible reading of *LeBeau*, or by any reasonable interpretation of that decision or the cases discussed in *LeBeau*.

At bottom, Plaintiffs' interpretation of *LeBeau* defies the clear and plain holding of the decision in which the Federal Circuit stated as follows:

> In the circumstances of this case, where Congress did act to reallocate the lineal descendants' share of the Judgment Fund, the lineal descendants' recovery of damages for a breach-of-trust claim based on the Secretary's delayed distribution depends upon the lineal descendants having vested rights in the Judgment Fund. If the lineal descendants' rights in the Judgment Fund had vested (that is, the lineal descendants had already received their distribution), Congress could not have deprived them of their share of the Judgment Fund without damages consequences under either a breach-of-trust claim or a takings claim. . . . The lineal descendants' right to their *per capita* share of the Judgment Fund was always subject to modification by Congress until distribution of their share occurred, which would vest the lineal descendants' rights in the Judgment Fund. Since no action occurred that had the effect of vesting the lineal descendants' share of the Judgment Fund as set forth in the 1972 Distribution Act, the lineal descendants are not entitled to recover damages for a reduction in their share of the Judgment Fund.

*LeBeau*, 474 F.3d at 1342-43. Plaintiffs' assertions which contradict or seek to confuse the Court's straight forward *LeBeau* ruling are baseless and this Court should reject them outright.[5/]

Here, the Western Shoshone are two hurdles away from any claim of any property right in the

---

[5/] Plaintiffs' Response randomly makes the following statements concerning the Federal Circuit's *LeBeau* opinion: that "trust funds to be distributed to individual tribal members remain property until such time as they are distributed" (Pls.' Resp. at 4, n.1); that "[judgment] funds remain tribal or group property until the distribution is complete and the funds are no longer held in a trust account" (Pls.' Resp. at 13); that "the [Western Shoshone] group retains its interests in the funds until they are 100 percent distributed" (Pls.' Resp. at 15); and the most egregious of all of Plaintiffs' representations concerning the content and meaning of the *LeBeau* decision, that "the [*LeBeau*] court held that the fund was not 'individualized' during the period of 1972 through 1998 and that it remained tribal property." (Pls.' Resp. at 16 (citing *LeBeau*, 474 F.3d at 1343)). Indeed, a Westlaw search of the entire content of the *LeBeau* decision evidences that term the "individualized" appears nowhere in the decision.

funds: first, the tribes would have to secure an act of Congress to re-designate the tribes as beneficiaries of the money to be distributed; second, Congress would have to distribute the money to the tribes.

As important as the the *LeBeau* jurisprudence is to the instant case, the facts giving rise to the Federal Circuit decision also have an important relationship to the facts in the instant case. The Tribal Plaintiffs here stand in the shoes of the *LeBeau* individual plaintiffs. A synopsis of the facts giving rise to the Federal Circuit's *LeBeau* decision are the following: The district court, finding that the Interior Secretary breached trust duties, granted summary judgment to Barry LeBeau, *et al.*, for the United States' unreasonable (30-year) delay in distributing judgment funds. During the delay, Congress passed 1998 Amendments to the 1972 Distribution Act which reduced the share of the Fund originally allocated to individual lineal decedents in favor of a larger tribal share.[6] The *LeBeau* Plaintiffs sued on the basis the congressional 1998 amendment cannot cancel government liability for the delayed distribution of the individual shares determined by the 1972 Act. *LeBeau*, 474 F.3d at 1341. *I.e.*, had the funds been timely distributed, there would have been no way for Congress to reduce the individuals shares. *Id.*

In the instant case, as in *LeBeau*, the Plaintiffs do not assert that Congress does not have the authority to reallocate the Funds, only that (as the *LeBeau* Plaintiffs claimed) they are entitled to damages. *Id.* the *LeBeau* Plaintiffs sought damages resulting from delay and a resulting redistribution of the funds; The *Yomba* Tribal Plaintiffs seek money damages based on the alleged financial mismanagement that resulted in "foregone profits" once the funds were

[6] Unlike the instant case which provides for a 100 percent *per capita* distribution, the Mississippi Sioux Tribes Judgment Fund Distribution Act had both Tribal *and* individual distribution components. The *Chippewa Cree Tribe* case, which Plaintiffs extensively rely upon in their Response, also concerns a distribution act which contains both tribal and individual components. *See infra.*

deposited in accounts at the United States Treasury.[7] Pls.' Resp. at 17. The point is that the *Yomba* Tribal Plaintiffs are not entitled to mismanagement damages when they are not the beneficiaries of the statute that could, at best, only be fairly interpreted to grant the individual beneficiaries a damages remedy for alleged mismanagement of the money that Congress has directed to be paid to them. Indeed, the tribes cannot claim damages when they have no "vested" interest in the funds themselves after distribution, and the only interests are unvested interests in the individuals. *Id.* The *Yomba* Tribal Plaintiffs will not achieve a vested interest in the funds in light of the 2004 Distribution Act and Congress' decision to distribute the Judgment Funds 100 percent *per capita*. The Tribal Plaintiffs' claims should, therefore be dismissed.

### B. The Tribal Plaintiffs Cannot "Own" the Judgment Funds Without a Present and Vested Interest In Them

As discussed above, Congress' "broad power" to prescribe the distribution of Indian property and the binding authority of *LeBeau*, holding that a valid damages claim is dependent upon *distribution* of the funds *and* the judgment funds being presently *vested* in the claimants. It is undisputed that the Western Shoshone Judgment Funds have not yet been distributed and, following the *LeBeau* precedent, without distribution there is no presently vested interest in them. Notwithstanding *LeBeau*'s straight forward ruling, the Tribal Plaintiffs denominate themselves a dozen times in their Response as the "owners" of the Judgment Funds, or as having an "ownership" interest in the Funds while at the same time acknowledging, as they must, that

---

[7] Plaintiffs' fallback position that it is undisputed that the Tribal Plaintiffs are at least entitled to damages for the mismanagement of funds up until passage of the Western Shoshone Distribution Act in 2004 is unavailing. Pls.' Resp. at 17. Although in *LeBeau,* the Distribution Act at issue went back to 1972, the Federal Circuit's *LeBeau* ruling would apply whether Congress had passed the Act then or in 1998. Again, Plaintiffs here do not come to terms with the basis of the *LeBeau* decision – that rights do not vest until the funds are distributed (*LeBeau*, 474 F.3d at 1343) without regard to whether the beneficiaries are individuals or tribes.

the Judgment Funds have not been distributed and, following the *LeBeau* precedent, have not vested. *See* Pls.' Resp. at 9, 11, 12, 14, 16, 19, 20, and 25. A legal definition of an "owner" is "[t]he person in whom is vested the ownership, dominion, or title of property; proprietor." Henry C. Black, *Black's Law Dictionary* at 1105 (6th ed. 1990). It thus appears that "owner" and "vested" are words without a distinction.

Assuming a distinction of the verbiage – that The Tribal Plaintiffs' are "owners" of the Western Shoshone Judgment Funds, however, does not advance the Tribal Plaintiffs' case. The landmark Supreme Court decision on protected "property" interests, *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972), determined that property interests (*i.e.*, ownership), "are created and their dimensions are defined by existing rules or understandings that stem from an independent source . . . . Just as the welfare recipients' 'property' interest in welfare payments was created and defined by statutory terms, so the respondent's 'property' interest [in continued employment] was created and defined by the terms of his employment." *Id.* at 577-78. Here, Congress unmistakenly created and defined the property interest in the ICC awards to be individual, not tribal, when it enacted the Western Shoshone Distribution Act in 2004. Thus, the Tribal Plaintiffs cannot demonstrate any more of an interest in the Judgment Funds than an "abstract need or desire" or "unilateral expectation" and not a "legitimate claim of entitlement". *Id.* at 577. In line with the *LeBeau* precedent, the Tribal Plaintiffs also fail to demonstrate a present interest in the Judgments Funds, which, in any event, will only occur upon distribution to Western Shoshone individuals. *See Greenlee v. Bd. of Med. of D.C.*, 813 F. Supp. 48, 56 (D.D.C. 1993) ("[C]ourts generally have held that present enjoyment is integral to the existence of a property entitlement."); *Lyng v. Payne*, 476 U.S. 926, 942 (1986).

### C. The Fact That the Vesting of Judgment Funds Had Occurred in *Chippewa Cree* Distinguishes It From the Pertinent Facts In This Case

Notwithstanding the *LeBeau* precedent and Plaintiffs' limited response only addressing Part C (474 F.3d at 1342-43) of the *LeBeau* Federal Circuit decision (*see* Pls.' Resp. at 13, 15, and 16), Plaintiffs opt instead to rely on *Chippewa Cree Tribe v. United States (Chippewa Cree II)*, 73 Fed. Cl. 154 (2006) for the proposition that the Tribal Plaintiffs are the "conduit" for distribution of the Western Shoshone Judgment Funds. Pls.' Resp. at 13 and 20. Plainly, however, in *LeBeau* the Federal Circuit found that once the Distribution Act was passed, only the *individuals* held any arguable claims for breach of trust. *LeBeau*, 474 F.3d at 1341-42. Indeed, the Court held that it was a breach of trust, that the statutes, fairly interpreted, mandated a damage remedy to the individuals, not to a tribe. In *LeBeau*, had Congress not changed the statutory distribution scheme in the 1998 Amendments, it was the individuals to whom the government owed a money mandating duty.[8/] Here Congress has not revised the Distribution Act and has instead directed that all the money be distributed per capita to individuals. Any claims of mismanagement of the funds, therefore, can only be brought by the holders of the claim – the individuals, not the Tribe.

The *Chippewa Cree* court's opinion that the Tribe/groups retained the claim "where the tribe or group is the conduit through which benefits are distributed" (*Chippewa Cree II, 73 Fed. Cl. At 160)*, at least in part, was premised on that court's rejection of defendant's position that individual, vested property rights were created and granted to the recipients of the *per capita* distributions of the 1964 Award and the 1980 Award because "[d]efendant does not identify by

---

[8/] Congress has exercised its "broad authority" in defining the contours of the Government's trust responsibility in the Western Shoshone Distribution Act. *Del. Tribal Bus. Comm.*, 430 U. S. at 90.

what authority" defendant relies upon. *Id.* In view of the subsequent *LeBeau* precedent, however, the proposition that "statutes that direct the government in the manner tribal funds are to be distributed do not create individual rights" (id.) is now doubtful, at least with regard to the instant case.

The *LeBeau* Court at the outset states that it "agree[s] with *LeBeau* plaintiffs that the 1972 Distribution Act created a trust responsibility *between the United States and the lineal descendants* . . . ." *LeBeau*, 474 F.3d at 1341 (emphasis added). Moreover, *LeBeau* states the ultimate issue in this briefing to be, in the Court's words, "[c]ritical to our resolution of the this case is a determination of what rights the 1972 Distribution Act *created for the lineal descendants.*" *Id.* at 1342 (emphasis added). As discussed in detail above, the Federal Circuit answered its question in two parts: first, the Court states "the lineal descendants' recovery of damages for a breach-of-trust claim based on the Secretary's delayed distribution depends upon the lineal descendants having vested rights in the Judgment Fund," *id.*; second, until distribution (which had not occurred) "the lineal descendants are not entitled to recover damages for a reduction in their share of the Judgment Fund." *Id.* at 1343. Like the *LeBeau* individual plaintiffs, the Western Shoshone Judgment Funds had not vested in the Western Shoshone individuals who are to receive 100 percent of the proceeds. In *Chippewa Cree*, however, clearly the judgment funds were partially distributed in 1988 and fully distributed in 1994. *Chippewa Cree II*, 73 Fed. Cl. at 156-57. Thus, the instant case and the applicability of *LeBeau* can be distinguished from the *Chippewa Cree* ruling.[9] Plaintiffs' reliance on *Chippewa Cree*, therefore,

---

[9] A further distinction is the fact that *Chippewa Cree* had both tribal and individual distribution components: 80 percent of the judgment funds were to be distributed to indvidual descendants and 20 percent to the Tribe/bands. *Chippewa Cree II*, 73 Fed. Cl. at 156.

does not advance their case.

## II. THE TRIBAL PLAINTIFFS HAVE NOT MET THRESHOLD REPRESENTATION REQUIREMENTS

### A. Rule 19 is Applicable to Protect the Interests of Absent Parties

Should the Court determine here that joinder of the other Western Shoshone Tribes, in addition to the Yomba, Timbisha, and Duckwater Tribes is necessary, but not feasible, the Court must then determine whether the absent party is "indispensable" under Rule 19(b). *See*, *e.g.*, *United States v. Bowen*, 172 F.3d 682, 688 (9th Cir 1999); *Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*, 276 F.3d 1150, 1155 (9th Cir. 2002); *Citizen Potawatomi Nation v. Norton*, 248 F.3d 993, 997 (10th Cir. 2001); *Viacom Int'l Inc. v. Kearney*, 212 F.3d 721, 725 (2d Cir. 2000); *Laker Airways, Inc. v. British Airways*, 182 F.3d 843, 847 (11th Cir. 1999); *Shetter v. Amerada Hess Corp.*, 14 F.3d 934, 938 (3d Cir. 1994); *Keweenew Bay Indian Cmty. v. Michigan*, 11 F.3d 1341, 1345 (6th Cir. 1993). If the absent party is determined to be indispensable, and is not joined, the Court must dismiss the suit. See, *e.g.*, *Provident Tradesmen Bank & Trust Co. v. Patterson*, 390 U.S. 102, 118-19 (1968); *Kearney*, 212 F.3d at 725; *Davis v. United States*, 192 F.3d 951, 959 (10th Cir. 1999). Plaintiffs seek to shield themselves from the Rule 19 requirements by asserting that their suit is nothing more than a group claim not requiring the joinder of other Western Shoshone Tribes.

Plaintiffs' position, of course, is dependent on a favorable ruling relative to the meaning and intent of the Western Shoshone Distribution Act and whether or not *LeBeau* is determined to restrict an award for mismanagement of funds until such time that they are distributed and the individual Western Shoshone members become vested. Assuming that is the outcome, then it is the individuals themselves that can pursue claims under 28 U.S.C. § 1491 and the issue is moot.

If, on the other hand, the Court finds merit in the Plaintiffs' position that the tribes are the "conduit" for the individuals notwithstanding the clear intent of the Western Shoshone Distribution Act, the Rule 19 factors are applicable.

Defendant moves for dismissal under Rule 19 because, as discussed in Defendant's opening brief, the historical record indicates dissension among the views of the Western Shoshone Tribes and individuals. Congressional efforts to reach an accord on distribution of the Judgment funds was a time consuming effort as evidenced by the legislative history discussed at pages 4-5, 16, and footnote 9 of Defendant's opening Brief. Differing views on distribution of the Western Shoshone Awards continue to this day.[10/] In fact, Plaintiffs' counsel has only obtained representation of three out of eleven Western Shoshone groups in this lawsuit. Given this record of differing views among the Western Shoshone groups and individuals, Plaintiffs' position that RCFC 19 is not applicable because the Western Shoshone Identifiable Group "represents the interests of all members of the group" (Pls.' Resp. at 22) is not credible.

Another reason that Defendant moves under Rule 19 is that Defendant's trust relationship with all the Shoshone Tribes and with the individuals comprising the Western Shoshone Identifiable Group would cause the government to "stand on both sides of the question." *Manybeads v. United States*, 209 F.3d 1164, 1166 (9th Cir. 2000), *cert. denied*, 532 U.S. 966 (2001). Plaintiffs tersely respond to this concern, asserting Defendant's "failure to protect the interests of the Western Shoshone Identifiable Group in the judgment funds in the first instance"

---

[10/] Nowhere does Plaintiffs' Response come to grips with the differing reviews of the Western Shoshone people and tribes/bands which Congress was confronted with in passing the Distribution Act concerning whether the distributions should be *per capita* or tribal disbursements. *See* S. REP. NO. 108-151; S. REP. NO. 107-297 (2002). At the time of the enactment of the Distribution Act in 2004, the Yomba Tribal Council even opposed distribution, continuing to believe that acceptance would preclude its efforts to have the lands returned. *Id.*

should not permit the government to raise its trust responsibility as a shield in this suit. Pls.' Resp. at 23, n.11. Defendant reminds the Plaintiffs that their allegations here are just that and are yet to be proven. In any event, Defendant undeniably has responsibilities here to assure the suit can proceed "in equity and good conscience" without all the stakeholders being represented. *Wichita & Affiliated Tribes v. Hodel*, 788 F.2d 765, 774 (D.C. Cir. 1986) (finding that court could not avoid prejudice to absent parties, when it was impossible to afford one Tribe relief without affecting the rights of two other Tribes). Failure to assure the absent stakeholders of their rights of any distribution would result in manifest injustice. The contrary approach suggested by the *Chippewa Cree* court which Plaintiffs discuss (Pls.' Resp. at 20) does little to alleviate these legitimate concerns. *See Chippewa Cree Tribe v. United States*, 69 Fed. Cl. 639, 673 (2006) (*Chippewa Cree I*).

### B. The Te-Moak Bands are the Appointed Representatives of the Western Shoshone Identifiable Group in The ICCA Proceedings, Not The Tribal Plaintiffs Here and Their Representation is Subject to the Court's Scrutiny

The Te-Moak Bands were appointed to represent the Western Shoshone before the ICC. *Te-Moak Bands of W. Shoshone Indians v. United States*, 18 Cl. Ct. 82, 83 (1989); *see also W. Shoshone Legal Def. and Educ. Ass'n v. United States*, 531 F.2d 495, 499 (Ct. Cl. 1976) (explaining that the ICCA "gives the exclusive privilege of pursuing the claim to a recognized tribal organization unless fraud, collusion, or laches on the part of such organization be shown to the satisfaction of the [ICC].") (internal quotation marks omitted).

Once before, in 1987, these same Tribal Plaintiffs – the Timbisha Shoshone Tribe, the Duckwater Shoshone, and the Yomba Shoshone moved to intervene in the *Te-Moak Bands* litigation; the attempted intervention was rejected. *Te-Moak Bands*, 18 Cl. Ct. at 83. "The

proposed intervenors . . . asserted that their due process rights [would] be violated if their motion for intervention [was] denied." *Id*. at 88. The court determined that the Te-Moak Bands provided adequate representation for the proposed intervenors, "accordingly, the requirements of the due process clause of the Fifth Amendment have been met." *Id*. The court further held: "[i]n Indian tribal cases, exclusive representation is not necessary nor is its denial a violation of constitutional rights. All that is required is for the group claim to be put forward by one member of the group. . . . This already has been achieved by the Te-Moak Bands." *Id*. (citing *W. Shoshone Legal Def. and Educ. Ass'n*, 531 F.2d at 503-04).

There are nine Western Shoshone Tribes or Bands of Indians that are federally recognized and two others (the Duck Valley Reservation and Fallon Band) that are not federally recognized. Pls.' Resp. at 6. Since the ability to bring suit under the ICCA did not depend on federal acknowledgment, it would be expected that the members of all these groups would receive *per capita* distributions from the Judgment Fund. Should the Court decline to dismiss the Tribal Plaintiffs under RCFC 12(b)(6) for failure to state a claim and the Court declines to apply the RCFC 19 criteria, as Defendant urges, the Tribal Plaintiffs must, at a minimum, satisfy the Court that they adequately represent all the Western Shoshone entities, especially in view of the fact that the traditional group and duly appointed representatives, the Te-Moak Bands, who represented the group many times before, are absent.

## ***Conclusion***

For the foregoing reasons, the Timbisha Shoshone, Duckwater Shoshone, and the Yomba Shoshone Tribal claims should be dismissed with prejudice pursuant to RCFC 12(b)(6) and 12(b)(7).

Dated this 12th day of July 2008.

Respectfully submitted,

RONALD J. TENPAS
Assistant Attorney General

*/s/Daniel G. Steele*

Daniel G. Steele
U.S. Department of Justice
Environment and Natural Resources
Division
General Litigation Section
P.O. Box 663
Washington, D.C. 20044-0482
Daniel.steele@usdoj.gov
Tel: (202) 305-0484
Fax: (202) 305-0506
Attorney of Record for Defendant

Of Counsel:
Michael Bianco
United States Department of the Interior
Office of the Solicitor
Washington, D.C. 20240

**CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of the foregoing Defendant's Reply to Plaintiffs' Opposition to Motion to Dismiss Tribal Claims was served on July 12, 2008, by Electronic Case Filing on the following counsel:

THOMAS E. LUEBBEN
SAMMUEL HOUGH
Luebben, Johnson & Barnhouse, LLP
7424 4TH Street, N.W.
Los Ranchos de Albuquerque, NM 87107

*/s/Daniel G. Steele*
Daniel G. Steele