# In the United States Court of Federal Claims

No. 06-896 L

(Filed: October 31, 2008)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| **THE WESTERN SHOSHONE IDENTIFIABLE GROUP, represented by the YOMBA SHOSHONE TRIBE, a federally recognized Indian Tribe, et. al.** | \*<br>\*<br>\*<br>\*<br>\* |
| Plaintiff, | \*<br>\* |
| v. | \*<br>\* |
| **THE UNITED STATES,** | \*<br>\* |
| Defendant. | \*<br>\* |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## OPINION

This is an action seeking damages for mismanagement of tribal trust funds awarded by the Indian Claims Commission and its successors, the United States Claims Court and the United States Court of Federal Claims in *Western Shoshone Identifiable Group v. United States*, Nos. 326-K, 326-A-1 and 326-A-3. This action was originally filed by the Yomba Shoshone Tribe ("Yomba"), a federally-recognized tribe. Yomba asserts that it represents the interests of the Western Shoshone Identifiable Group ("Western Shoshone"). Subsequently, Yomba amended its original complaint to include three individual plaintiffs who assert claims on their own behalf and the interests of the Western Shoshone and two additional tribes asserting that they, too, represent the interests of the Western Shoshone. Defendant filed a motion to dismiss Yomba's claims, pursuant to Rule 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC").[1] Defendant argues that the tribal trust funds of the Western Shoshone will be distributed on a pro rata basis in accordance with the Western Shoshone Claims Distribution Act, Pub. L. No. 108-270, 118 Stat. 805 ("Distribution Act"). According to the Defendant, because of the pro rata distribution mechanism, Yomba and the other Tribes cannot state a claim for relief that would entitle them to money damages for inadequate

---

[1] The two additional tribes added as Plaintiffs, the Timbisha Shoshone Tribe ("Timbisha") and the Duckwater Shoshone Tribe ("Duckwater"), are subject to the Court's ruling on this motion to dismiss.

interest earnings to the tribes, as such. In the alternative, Defendant argues that all of the other Western Shoshone tribes are indispensable parties under RCFC 19(a), requiring dismissal, pursuant to RCFC 12(b)(7), for failure to join all of the other Western Shoshone tribes as necessary parties. The motion does not ostensibly apply to the individual Plaintiffs.

The Court finds that all three Tribal Plaintiffs – Yomba, Timbisha, and Duckwater (collectively "the Tribes") – are federally-recognized tribes with interests in the tribal trust funds of the Western Shoshone Identifiable Group to which the Tribal Plaintiffs belong. As owners of tribal trust funds, the Tribes have the right to pursue their breach of trust claims against the Government for mismanagement of the tribal trust funds. The pro rata distribution mechanism in the Distribution Act is irrelevant because the Distribution Act does not divest the Tribes of any ownership interest in the trust funds and because the Tribes are not, in this case, challenging the distribution mechanism set forth in the Distribution Act.

Finally, Defendant has failed to show that the other Western Shoshone tribes are necessary parties because, under 28 U.S.C. § 1505, any tribe may represent the Western Shoshone without joinder. Further, Defendant has failed to show that either complete relief could not be granted to the Western Shoshone in the absence of all the Western Shoshone tribes or that any of the parties to the litigation are subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the Tribes' interest.

Accordingly, the Court DENIES Defendant's motion to dismiss.

I.   **History of *Western Shoshone Identifiable Group v. United States* and the Resulting Trust Funds**

   A.   **Indian Claims Commission Litigation**

On August 10, 1951, several Shoshone Indian tribes on behalf of the Shoshone Nation, filed a joint petition with the Indian Claims Commission ("Commission") for compensation for ancestral lands that were taken by the United States. These claims were given Commission docket number 326. One claim in the joint petition was brought by the Te-Moak Bands of Western Shoshone Indians ("Te-Moak") on behalf of the Western Shoshones, for compensation for lost California and Nevada lands that were allegedly taken by the United States. The joint petition also included a general accounting claim alleging misuse of funds held by the United States on behalf of the Shoshones. *See Te-Moak Bands of Western Shoshone Indians of Nev. v. United States*, 18 Cl. Ct. 82, 83 (1989). All of these Shoshone claims proceeded under docket number 326 until 1957. On July 5, 1957, the Commission severed the Western Shoshone accounting claims from docket number 326 and docketed them as docket number 326-A. *Te-Moak Bands of Western Shoshone Indians of Nev. v. United States*, 23 Ind. Cl. Comm'n. 70 (1970). The Te-Moak then filed an amended petition with respect to the accounting cases on May 18, 1967.

The takings claim continued in docket number 326 until October 16, 1962, when the Commission issued an opinion which determined that the Shoshone lands, including that of the Western Shoshone, had been effectively taken by the United States as a result of encroachment upon the aboriginal lands by settlers. *Shoshone Tribe of Indians of the Wind River Reservation, Wyo. v. United States*, 11 Ind. Cl. Comm'n. 387, 445 (1962). The Commission also concluded that "the Western Shoshone identifiable group were land-using entities which respectively held Indian title to the lands . . . ." *Id.* (detailed description of lands omitted). Attached to the Commission's opinion, was an interlocutory order in which the Commission determined that the "respective [Shoshone] petitioners, [had] the right to maintain this action for and on behalf of the members and descendants of members of the aboriginal tribes and identifiable groups found herein to have been land-using entities, that is . . . (d) petitioner, the Temoak Bands of Wester Shoshone Indians, Nevada, for the aboriginal Western Shoshone identifiable group." 11 Ind. Cl. Comm'n 387 (1962) (Interlocutory Order (Oct. 16, 1962)). As the Western Shoshone was considered a separate identifiable group from the other Shoshones, the Commission directed, on August 16, 1967, that the Te-Moak file an amended takings petition on behalf of the Western Shoshones that was subsequently docketed under docket number 326-K. *Te-Moak*, 18 Cl. Ct. at 84; *Western Shoshone Identifiable Group v. United States*, 29 Ind. Cl. Comm'n 5, 6 n.1 (1972).

On August 15, 1977, the Commission awarded $26,145,189.89 to the Western Shoshone under docket number 326-K for a taking of Western Shoshone Indian title lands. *Western Shoshone Identifiable Group v. United States*, 40 Ind. Cl. Comm'n 318, 387 (1977). The Commission entered an order on September 29, 1978, transferring the case to the Court of Claims for final disposition, in accordance with Pub. L. 94-465, 90 Stat. 1990, which provided for the transfer of cases from the Commission to the Court of Claims and provided for the termination of the Commission as of September 30, 1978. On November 7, 1978, the Court of Claims issued an order stating that at the appropriate time, the Clerk of the Court of Claims was authorized to certify for payment awards by the Commission that remained outstanding at the time of transfer. *See* Letter from Clerk, United States Court of Claims to Claims Division, General Accounting Office (Dec. 6, 1979) ("Clerk's Letter").[2]

The Commission's final award was subsequently affirmed by the Court of Claims. *Temoak Bank of Western Shoshone Indians, Nev. v. United States*, 219 Ct. Cl. 346 (1979), cert. denied, 444 U.S. 973 (1979). On December 6, 1979, the Clerk of the Court of Claims sent a letter to the General Accounting Office with a certified copy of pages 318-387 of the Indian Claims Commission reporter, which constituted "the final award in favor of the Western Shoshone Identifiable Group Represented by the Temoak Bands of Western Indians, Nevada, in

---

[2] The Court takes judicial notice of this letter from Frank Peartree, the Clerk of the United States Court of Claims to the General Accounting Office, to facilitate consideration of the pending motion. Fed. R. Evid. 201. *See also Willcox v. United States,* 3 Cl.Ct. 83, 87 n. 16 (1983), *aff'd*, 769 F.2d 743 (Fed. Cir. 1985) ("Judicial notice of the court's own files and records in closely related litigation is entirely appropriate.")

the sum of $26,145,189.89." Clerk's Letter at 1. The letter further indicated that funds to pay this award were authorized to be appropriated by Section 22 of the Indian Claims Commission Act, 25 U.S.C. § 70u (1976) (omitted after the dissolution of the ICC)[3] and were included in funds appropriated under section 1302 of the Supplemental Appropriations Act, 1957, 31 U.S.C. § 724a, as amended by Pub L. No. 05-26, 91 Stat. 96 and Pub. L. No. 95-240, 92 Stat. 116.[4] *Id.* It appears that the Commission's award was certified by the Comptroller General on December 19, 1979. On that same date, the award was deposited into the global tribal trust fund account in the United States Treasury. Defendant asserts in its motion that the Office of Historical Trust Accounting, United States Department of Interior ("Interior"), has determined that Interior holds in trust the $23,145,189.89 award granted under docket number 326-K on December 19, 1979 under Account "JA9334697 Western Shoshone Judgment Funds." Def.'s Mot. at 1. The money sourced to docket number 326-K is now valued, according to Defendant, in excess of $142,472,644. *Id.*

In 1982, the Court of Claims expired and Congress transferred jurisdiction of the remaining Indian Claims cases to the United States Claims Court. On December 20, 1990, the Claims Court issued an order severing the accounting claims into three portions. The accounting claim became docket number 326-A-1, a water claim was placed under docket number 326-A-2, and an interest claim was placed under docket number 326-A-3. *Te-Moak Bands of Western Shoshone Indians of Nev. v. United States*, 23 Cl. Ct. 435, 436 (1991). The water claim under docket number 326-A-2 was subsequently dismissed on February 11, 1991. *Id.* at 436 n.1. The United States Claims Court awarded the Western Shoshone $823,752.64 on March 23, 1992, for docket number 326-A-1 (initial accounting award), and the Court of Federal Claims awarded the Western Shoshone $29,396.60 on Sept. 15, 1995, for docket number 326-A-3 (interest on accounting award). Pl.'s Opp'n at 4. Defendant asserts that these monies were deposited into trust accounts under Account "JA9087691 Western Shoshone Joint Judgment Funds" which are now valued in excess of $1,386,718. Def.'s Mot. at 1-2.

B.   **Distribution Act**

Although monies compensating the Western Shoshone were deposited in the Government's tribal trust fund account, distribution of the monies has been delayed, apparently in part because of disputes between the various Western Shoshone tribes, including Yomba, that,

---

[3] "[t]he payment of any claim, after its determination in accordance with this Act, shall be a full discharge of the United States of all claims and demands touching any of the matters involved in the controversy." 25 U.S.C. § 70u(a).

[4] 31 U.S.C. § 724a (1976 & Supp. III) provided for a permanent appropriation for awards rendered by the Indian Claims Commission as certified by the Comptroller General.

for the purpose of resolving this motion, need not be recounted here.[5]  However, on July 7, 2004, Congress passed the Distribution Act which included a distribution mechanism for the Western Shoshone trust funds.  Section 3 of the Distribution Act authorizes the Secretary of the Interior ("Secretary") to make a per capita distribution of 100 percent of the Western Shoshone Judgment Fund, defined as the funds awarded in docket number 326-K including interest, in equal shares to each person listed on the judgment roll.  The judgment roll is a list of persons to be drafted by the Secretary that includes all individuals who (a) have at least a quarter degree of Western Shoshone blood, (b) are citizens of the United States, and (c) were living on the date of the enactment of the Distribution Act.  Excluded from the judgment roll will be any individuals who participated in any other Commission land claim award.

Section 4 of the Act requires the Secretary to establish the Western Shoshone Educational Trust Fund for the benefit of Western Shoshone members.  The fund is made up of Western Shoshone Joint Judgment Funds which are the funds awarded from docket numbers 326-A-1 and 326-A-3 plus interest.  The funds from Western Shoshone Joint Judgment Funds will be distributed to qualified individual Western Shoshone members, for education purposes, by the Western Shoshone Educational Committee, made up of a representative of each of the seven Western Shoshone tribes and a member of the general public appointed by the Secretary.

Apparently, the Secretary has not yet implemented a distribution mechanism for distribution of any of the Western Shoshone tribal trust funds.

## II.     Procedural History

On December 12, 2006, Yomba filed its first complaint against the Government for mismanagement of trust funds of which it claimed to be the beneficial owner.  On February 22, 2007, the Court imposed a stay in this case because of ongoing settlement discussions.  On March 12, 2008, Yomba filed its first amended complaint.  In its first amended complaint, in addition to Yomba, three individuals were named as Plaintiffs who allege that they are representing their own interest as well as the interest of the Western Shoshone.  Specifically, Yomba alleges that it is a beneficial tribal owner of trust funds appropriated by Congress in satisfaction of the awards for docket numbers 326-K, 326-A-1, and 326 A-3 that are held in trust for the Western Shoshone by the United States as Indian trustee.  1st Am. Compl. ¶ 13.  Yomba alleges that its claims are typical of the claims of all Western Shoshone tribes, and that its representation "will fairly and adequately protect the interests of . . . all the Western Shoshone

---

[5]  Interior is required to consult with interested parties to reach a consensus in crafting a plan for distribution of tribal trust funds.  If there is no consensus, then Interior must submit recommendations to Congress, as occurred here.  *See* 25 U.S.C. §§ 1401-08.  *See also* S. Rep. No. 108-151; S. Rep. No. 107-297.  The saga of the disputes among the Western Shoshone tribes is partially recounted in *Dann v. United States*, 470 U.S. 39, 41-43 (1985).  Allegedly, at the time of the enactment of the Distribution Act, only the Yomba Tribal Council opposed the distribution plan.  S. Rep. No. 108-151, at 6.

Tribes as beneficial owners of the funds." *Id.* ¶ 15. The first amended complaint further alleges that the individual Plaintiffs are members of the class eligible for inclusion in the Western Shoshone judgment roll for per capita distribution of the Western Shoshone Judgment Funds of docket number 326-K and the distribution of funds for the Western Shoshone Joint Judgment Funds of docket numbers 326-A-1 and 326-A-3. *Id.* ¶ 16. The first amended complaint also states that the individual Plaintiffs form an "identifiable group of American Indians" that includes the class of persons eligible for distributions from the trust funds pursuant to docket numbers 326-K, 326-A-1, and 326-A-3. *Id.* ¶ 17. Similarly, the individual Plaintiffs allege that their claims are typical of the claims of all other Western Shoshone individual beneficiaries and that their representation "will fairly and adequately protect the interests" of the entire class of individual beneficiaries. *Id.* ¶ 18. The first amended complaint further alleges, among other things, that the United States failed its statutory and legal obligations as trustee of all the Western Shoshone trust funds described above. *Id.* ¶¶ 53, 54. Plaintiffs seek money damages plus interest credited to the Western Shoshone Judgment Fund and the Western Shoshone Joint Judgment Fund, correction of tribal trust fund records, and costs and attorneys fees. *Id.* at E ¶¶ 1, 3-4.

The stay in this case was lifted on March 14, 2008. Defendant filed the instant motion to dismiss on March 18, 2008. On May 16, 2008, Plaintiffs filed their response to Defendant's motion. Upon the Court's granting of a motion for leave, on June 25, 2008, Plaintiffs filed their second amended complaint. The second amended complaint differed from the first amended complaint insofar as the complaint joined Timbisha and Duckwater as Tribal Plaintiffs with Yomba and further clarified that all three tribes, along with the individual Plaintiffs, represented the interests of the Western Shoshone. The caption was also changed to reflect the Western Shoshone as the main Plaintiff, represented by the three tribal Plaintiffs and the three individual Plaintiffs. On July 11, 2008, Defendant filed its reply.

**III.   Standard of Review**

RCFC 12(b)(6) "authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Neitzke v. Williams*, 490 U.S. 319, 326 (1989). Specifically, a claim shall be dismissed under Rule 12(b)(6) standards if the complaint does not contain "'either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory.'" *Bell Atlantic v. Twombly*, 127 S. Ct. 1955, 1969 (2007) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984) (citations omitted)). In resolving a motion to dismiss under RCFC 12(b)(6), a court must take the well-pled allegations of the complaint as true and draw all reasonable inferences in the plaintiff's favor. *United Pac. Ins. Co. v. United States*, 464 F.3d 1325, 1327-28 (Fed. Cir. 2006).

IV.     Analysis

    A.     **May the Tribal Plaintiffs Maintain this Action on Behalf of the Western Shoshone?**

In its motion, Defendant argues that the Tribes cannot state a claim for relief for mismanagement of the monies in the tribal trust fund accounts pertaining to the Western Shoshone because the Tribes do not have any right to any portion of the distribution itself, or interest on the distribution.  The Tribes do not have this right, so Defendant argues, because Congress decided to distribute proceeds from all of the Western Shoshone trust fund accounts on an individualized basis – both the Western Shoshone Judgment funds and the Western Shoshone Joint Judgment Funds.[6]  The Court is obliged to respect Congress's broad authority to apportion the proceeds of the Commission.  To revise its allocations prior to the distribution of funds runs afoul of Congressional intent that the Western Shoshone trust funds be distributed on an individualized basis.  More specifically, Defendant argues that the Tribes have no vested right to any part of the distribution or interest earned at the time the funds are invested before they are distributed.

The Tribes, however, allege that they are beneficial owners of the judgment funds held by the United States as trustees.  It alleges that they are beneficial owners of the judgment funds because these claims were awarded by the Commission which had jurisdiction over only Indian tribal bands or identifiable group claims.  *Delaware Tribal Bus. Comm'n v. Weeks*, 430 U.S. 73, 85 (1977); *Fields v. United States*, 191 Ct. Cl. 191 (1970) (holding that subject matter jurisdiction and wavier of sovereign immunity in 28 U.S.C. § 1505 does not apply to individuals).  The Tribes allege that they are federally-recognized tribes that are recognized by Defendant as owners of these trust funds.  The Tribes pled jurisdiction based upon 28 U.S.C. § 1491(a) and 28 U.S.C. § 1505(a), and a right to recovery based on various provisions of federal law, including, for the purpose of resolving this motion, statutory and common law trust duties owed by the Defendant to the Western Shoshone.  The judgment funds awarded by the Commission (or this Court and its predecessor, the Claims Court) that were deposited in the tribal trust fund accounts of the Treasury are trust funds.  *Chippewa Cree Tribe v. United States*, 69 Fed. Cl. 639, 646-47, 652-53 (2006).  Once a trust is established, private trust law applies and money damages are recoverable.  *United States v. Mitchell*, 463 U.S. 206, 226-27 (1983).  Moreover, Plaintiffs further argue that the Distribution Act does not divest the Western Shoshone, including the Tribal Plaintiffs, of their ownership interest in the judgment funds.

---

[6] Section 4 of the Distribution Act, which concerns distributions of the monies from the Western Shoshone Joint Judgment Fund for educational purposes, specifies that distributions from this fund "shall not be distributed under this paragraph on a per capita basis." § 4(b)(2)(B)(ii), 118 Stat. 805.  The statute does specify, however, that monies paid from this fund are to be paid to "Western Shoshone" members.  § 4(b)(2)(B)(i)(I).  This nuance, however, is irrelevant to the thrust of Defendant's argument which is that the distributions for all funds will occur on an individualized basis, and not on a tribal basis.

Finally, they argue that the Distribution Act did not deprive the Tribal Plaintiffs of the right to represent the Western Shoshone in a suit for mismanagement of the tribal trust funds because all the Distribution Act does is provide a distribution mechanism for distributing the proceeds. The Distribution Act, therefore, has no effect upon the Government's ongoing fiduciary duty to the Tribal Plaintiffs for unpaid monies or losses sustained while the Western Shoshone's funds were in the Government's care as trustee.

Defendant, in response, does not challenge the argument of the Tribes that this Court has jurisdiction to hear their breach of trust claims. Instead, Defendant argues that the Federal Circuit's decision in *LeBeau v. United States*, 474 F.3d 1334 (Fed. Cir. 2007) holds that only those with a vested interest in the distribution may state a claim for mismanagement of the trust fund proceeds. *LeBeau* involved individual plaintiffs representing a class of Sisseton-Wahpeton Sioux Tribe lineal descendants who were entitled to a distribution from the Mississippi Sioux Tribes Judgment Fund. They brought a Little Tucker Act claim against the Government in U.S. District Court seeking an award of damages for breach of trust for a 30-year delay in the distribution of monies from the Mississippi Sioux Tribes Judgment Fund. As a result of the delay, Congress changed the distribution scheme which diluted the individual plaintiffs' original statutory share of the tribal trust fund in favor of tribes. The District Court granted summary judgment in favor of the individual plaintiffs, but the Federal Circuit reversed. Although the Federal Circuit agreed that the Distribution Act created a trust responsibility between the plaintiffs and the Government and that the Government breached its trust obligations by unreasonably delaying the distribution, it held that the individual plaintiffs were not entitled to recovery because Congress acted within its authority to reallocate the distribution of tribal trust to the lineal descendants. The Federal Circuit explained:

> In the circumstances of this case, where Congress did act to reallocate the lineal descendants' share of the Judgment Fund, the lineal descendants' recovery of damages for a breach-of-trust claim based on the Secretary's delayed distribution depends upon the lineal descendants having vested rights in the Judgment Fund. If the lineal descendants' rights in the Judgment Fund had vested (that is, the lineal descendants had already received their distribution), Congress could not have deprived them of their share of the Judgment Fund without damages consequences under either a breach-of-trust claim or a takings claim. See *Gritts,* 224 U.S. at 647-48, 32 S. Ct. 580 (approving a Congressional enlargement of the pool of beneficiaries who were to benefit from a distribution of tribal property despite an earlier statute that had established a more limited pool); *id.* at 648, 32 S. Ct. 580 ("But that [allotment and distribution act] did not confer upon [the beneficiaries] any vested right such as would disable Congress from thereafter making provision for admitting newly-born members of the tribe to the allotment and distribution."). In this case, although each lineal

> descendant did have a right to a timely distribution of his or her per capita share of the Judgment Fund, the lineal descendants did not have vested rights in the Judgment Fund. *See United States v. Rowell,* 243 U.S. 464, 468-71, 37 S. Ct. 425, 61 L .Ed. 848 (1917) ("[S]tatutes of this type are not to be regarded as proposals by the government to enter into executory contracts, but as laws which are amendable and repealable at the will of Congress, save that rights created by carrying them into effect cannot be devested or impaired."); *Gritts,* 224 U.S. at 648, 32 S. Ct. 580. The lineal descendants' right to their per capita share of the Judgment Fund was always subject to modification by Congress until distribution of their share occurred, which would vest the lineal descendants' rights in the Judgment Fund. Since no action occurred that had the effect of vesting the lineal descendants' share of the Judgment Fund as set forth in the 1972 Distribution Act, the lineal descendants are not entitled to recover damages for a reduction in their share of the Judgment Fund.

*LeBeau,* 474 F.3d at 1342-43.

The Court, however, is not convinced by Defendant's argument. *LeBeau* can be readily distinguished from the case at bar because the gravamen of the *Lebeau* plaintiffs' breach of trust action was the mismanagement of the distribution process, whereas here, the Tribal Plaintiffs are not challenging the distribution mechanism set forth in the Distribution Act. At least according to Plaintiffs' second amended complaint, the distribution mechanism in the Distribution Act is accepted as a given, whether the Tribal Plaintiffs in fact support it or oppose it. The individual *LeBeau* plaintiffs, however, were seeking damages for a "reduction in their share of the Judgment Fund" by means of Congressional reallocation of the distribution. In this case, however, the Tribal Plaintiffs are seeking damages for mismanagement of the Western Shoshone trust funds as a whole during the time period from 1979 onwards while those funds were in the Government's care. In colloquial terms, the *LeBeau* plaintiffs were seeking to divvy up the kitty the way it was divvied up before Congress re-divvied it. Here, the Tribal Plaintiffs are seeking to increase the amount of money that they say the Government was supposed to have placed in the kitty in the first place. Thus*, LeBeau* and the present case represent two different breach of trust theories and thus are seeking different types of recovery.

Nor is it true, as Defendant suggests, that *LeBeau* requires the Tribal Plaintiffs to have a vested interest in the proceeds. As *LeBeau* itself recognized:

> We recognize that requiring the LeBeau plaintiffs to have vested rights in the Judgment Fund in order to recover damages for a breach-of-trust claim could be viewed as contradictory to the common law of trusts. According to Bogert's *The Law of Trust &*

> *Trustees* § 871 (rev. 2d ed. 2005), "[a]ny beneficiary who can prove that the threatened or actual wrongdoing may or has affected him adversely financially may bring an action for relief. It is not necessary that his interest be vested." Although the common law of trusts does not require a beneficiary to have a vested interest in order to bring a breach-of-trust claim, in the special circumstances of the present case, the LeBeau plaintiffs must have had vested rights in the Judgment Fund in order to recover damages given that Congress acted to reallocate their share.

*LeBeau*, 474 F.3d at 1343 n.6.  The phrase "special circumstances of this case" indicates that the Federal Circuit was not intending to set forth a new rule that required only vested beneficiaries to bring a breach of trust claim against the Government, but rather, in the specific case at bar, that because Congress had the authority to reallocate the plaintiffs' shares, the normal rule that permitted non-vested beneficiaries of a trust to bring a breach of trust action would not apply. For the purpose of the present motion, Defendant does not dispute that the Tribal Plaintiffs are beneficiaries of the Western Shoshone tribal trust funds.  The Distribution Act does not in any way change the Tribal Plaintiffs' ownership interest in those funds, nor would a future amendment to the Distribution Act or a change in the distribution scheme by Congress have any effect on the Tribe's ownership interest either.

Accordingly, Defendant has failed to show that the Tribal Plaintiffs' second amended complaint does not contain "some viable legal theory" upon which recovery could be granted. Thus, the Court denies Defendant's motion to dismiss under RCFC 12(b)(6).

**B.     Are the other Western Shoshone Tribes Necessary Parties Under RCFC 19?**

In the alternative, Defendant has moved to dismiss the Tribal Plaintiffs under RCFC 12(b)(7) for failure to join the other Western Shoshone tribes.  "In determining whether to dismiss a lawsuit for failure to join a necessary party, this court analyzes the factors enunciated in RCFC 19."  *Iris Corp. Berhad v. United States*; 82 Fed. Cl. 488, 498-99 (2008) (citing *J.G.B. Enters. Inc. v. United States*, 57 Fed. Cl. 415, 416 (2003)).  First, the Court analyzes whether the absent parties are "necessary" under RCFC 19(a).  *Id.*  Second, if the absent parties are necessary, then the Court determines whether the case should be dismissed under RCFC 19(b).  *Id.*  Rule 19(a) provides in pertinent part:

> **Joinder of Persons Needed for Just Adjudication**
>
> (**a) Persons to be Joined if Feasible**. A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief

10

>      cannot be accorded among those already parties, or (2) the person
>      claims an interest relating to the subject of the action and is so
>      situated that the disposition of the action in the person's absence
>      may (i) as a practical matter impair or impede the person's ability
>      to protect that interest or (ii) leave any of the persons already
>      parties subject to a substantial risk of incurring double, multiple, or
>      otherwise inconsistent obligations by reason of the claimed
>      interest.

RCFC 19(a).

Defendant alleges that the other Western Shoshone Tribes not presently joined in the complaint are necessary parties because complete relief cannot be accorded to the present parties in the absence of other tribes, and proceedings in their absence would impair or impede their ability to protect this interest. The basis for this allegation is that "the historical record indicates dissension among the views ot the Western Shoshone Tribes and individuals . . . . Differing views on distribution of the Western Shoshone Awards continue to this day." Def.'s Reply at 12. However, whatever differences may exist between the Western Shoshone Tribes regarding the distribution of the trust fund proceeds, as explained above, this action involves an allegation of mismanagement by the government of the trust funds themselves, and not an action challenging, or seeking compensation for, the distribution scheme as it now stands. The relief Tribal Plaintiffs seek is an increase in the Western Shoshone Trust funds on behalf of the entire Western Shoshone. Should they prevail in this litigation, all of the Western Shoshone members will receive an increased share of the proceeds, to the benefit of all Western Shoshone Tribes. Thus, it is not necessary for the other Western Shoshone tribes, such as the (now absent) Te-Moak Bands, who represented the Western Shoshone in the underlying Commission litigation, to be joined in this proceeding. Defendant has not otherwise shown that the Tribal Plaintiffs are not capable of pursuing and protecting the interest of the Western Shoshone as a whole.

Defendant also alleges that its trust relationship with all the Shoshone tribes and with the individuals comprising the Western Shoshone would cause the Government to stand on both sides of the question. It quotes *Witchita & Affiliated Tribes of Okla. v. Hodel*, 788 F.2d 765, 774 (D.C. Cir. 1986), which states that "[c]onflicting claims by beneficiaries to a common trust present a textbook example of a case where one party may be severely prejudiced by a decision in his absence." Exactly what "question" the Government finds itself on "both sides" of is not explained by Defendant. While the Western Shoshone Tribes may very well be in conflict over the distribution mechanism, that is not at issue here. In this case, the interests of all the Western Shoshone tribes are clearly aligned on one side of the "v" and the Government's interests are on the other side of the "v." Indeed, how could it be any other way since the Government's alleged mismanagement of the Western Shoshone trust funds as a whole is at issue? Thus, the Court does not see how the Government's trust obligations to all the Western Shoshone are in any way compromised if the litigation proceeds without the participation of the absent Western Shoshone Tribes. Accordingly, the Court finds that Defendant has failed to show that the other Western

Shoshone tribes must be joined under RCFC 19(a).[7]

**V.     Conclusion**

      Accordingly, the Court DENIES Defendant's motion to dismiss the Tribal Plaintiffs' claims.  The parties are ORDERED to file, no later than November 14, 2008, a joint status report indicating their views on the status of the case, including (a) whether the Defendant should file an answer to Plaintiffs' complaint and/or (b) whether the parties wish to continue settlement discussions and, if so, what that would entail.  The joint status report should also include three mutually agreeable times for a telephonic status conference to discuss these issues further.

                                              s/ Edward J. Damich
                                              EDWARD J. DAMICH
                                              Chief Judge

---

[7] In its motion papers, Defendant spent a great deal of effort explaining why joining the other Western Shoshone tribes is not "feasible" and then moving on to an analysis of whether the case should be dismissed under RCFC 19(b) based on the factors enunciated therein.  Defendant, however, gave very short shrift to whether the absent tribes ought to be joined under the factors enunciated in RCFC 19(a)(1)-(2), thus, so to speak, placing the cart before the horse.  There very well may be circumstances that would require the joinder of the other Western Shoshone tribes as the litigation proceeds, but, based upon the arguments marshalled in the motion papers, that is not at all apparent.  Nevertheless, the Court appreciates the preview of the complexities and difficulties involved in joining the other tribes to the litigation, should that issue arise again in the future.