# In the United States Court of Federal Claims

No. 06-896 L

(Filed: November 24, 2009)

*****************************************
THE WESTERN SHOSHONE IDENTIFIABLE *
GROUP, represented by the YOMBA *
SHOSHONE TRIBE, a federally *
recognized Indian Tribe, et. al. *
                                        *
                        Plaintiff, *
                                        *
        v.                              *
                                        *
THE UNITED STATES, *
                                        *
                        Defendant. *
                                        *
*****************************************

## OPINION

This is an action under the Indian Tucker Act, 28 U.S.C. § 1505[1], brought on behalf of the Western Shoshone Identifiable Group ("Western Shoshone") seeking damages for mismanagement of tribal trust funds by the United States Department of the Interior. These trust

---

[1]

The United States Court of Federal Claims shall have jurisdiction of any claim against the United States accruing after August 13, 1946, in favor of any tribe, band, or other identifiable group of American Indians residing within the territorial limits of the United States or Alaska whenever such claim is one arising under the Constitution, laws or treaties of the United States, or Executive orders of the President, or is one which otherwise would be cognizable in the Court of Federal Claims if the claimant were not an Indian tribe, band or group.

28 U.S.C. § 1505.

funds were awarded to the Western Shoshone Identifiable Group by the Indian Claims Commission ("ICC") and its successors, the United States Claims Court and the United States Court of Federal Claims in *Western Shoshone Identifiable Group v. United States*, Nos. 326-K, 326-A-1, and 326-A-3.  Three federally-recognized Indian tribes, the Yomba Shoshone Tribe ("Yomba"), the Timbisha Shoshone Tribe ("Timbisha") and the Duckwater Shoshone Tribe ("Duckwater") (collectively "the Tribes" or "Tribal Plaintiffs") assert that they represent the interests of the Western Shoshone Identifiable Group.  In addition, there are three individual plaintiffs who assert that they, too, represent the interests of the Western Shoshone Identifiable Group and are also presenting claims on their own behalf.

Presently before the Court is Defendant's motion for reconsideration of this Court's October 31, 2008 Opinion which denied Defendant's motion to dismiss the Tribal Plaintiffs from the proceeding under Rule 12(b)(6), for failure to state a claim, and Rule 12(b)(7), for failure to join a party,[2] of the Rules of the United States Court of Federal Claims ("RCFC").  On June 18, 2009, the Court issued an order granting Defendant leave to file its motion for reconsideration and directing Plaintiffs to file a response, and the Court has received and reviewed the parties' papers.

## I.      Background

### A.      Defendant's Motion to Dismiss

In its October 31, 2008 Opinion, the Court set forth a summary of the litigation before this Court, its predecessors, and the Indian Claims Commission giving rise to this proceeding. The October 31, 2008 Opinion also explained how the monies awarded to the Western Shoshone Identifiable Group were deposited in Government trust fund accounts for the benefit of the Western Shoshone.  See October 31, 2008 Op. at 2-6.  Familiarity with that decision is presumed.

Defendant based its argument that Plaintiffs' complaint did not contain "allegations respecting all the material elements necessary to sustain recovery under some viable legal theory" on the enactment by Congress in 2004 of the Western Shoshone Claims Distribution Act, Pub. L. No. 108-270, 118 Stat. 805 ("2004 Distribution Act"), which provided for a plan of distribution of the Western Shoshone judgment funds[3] on a *per capita* basis and not to the Western Shoshone

---

[2]  Defendant's motion for reconsideration pertains only to the Court's denial of its motion to dismiss under RCFC 12(b)(6) and does not pertain to the Court's denial of its motion to dismiss under RCFC 12(b)(7).

[3]  The Western Shoshone judgment funds are defined as "(A) the funds appropriated in satisfaction of the judgment award granted to the Western Shoshone Indians in Docket Number 326-K before the Indian Claims Commission; and (B) all interest earned on those funds."  2004 Distribution Act § 2(3)(A) & (B).

Identifiable Group nor the tribes as such.[4]  In addition, Defendant noted that "until the distribution is effected, Congress has the authority to alter distributions." *Id.* at 10 (citing, *inter alia*, *Lebeau v. United States*, 474 F.3d 1334, 1342 (Fed. Cir. 2007)).  Thus, Defendant concluded that "[b]y extension, it follows that the Plaintiff Tribe has no vested right to any part of the distribution or interest earned during the time the funds are invested before they are distributed."  *Id.*

On May 16, 2008, Plaintiffs filed their response, asserting that they were beneficial owners of the judgment funds held by the United States as trustee, and further argued that the 2004 Distribution Act did not deprive them of these ownership rights.

Defendant filed a reply on July 11, 2008.  In its reply, Defendant stated:  "Without being the beneficiaries of distributions from the judgments and not having vested rights, the tribal plaintiffs cannot seek damages based on mismanagement of the funds."  Def.'s Reply at 3 (caption) (punctuation altered).  The Defendant further argued that the "Federal Circuit's decision in *LeBeau v. United States* is controlling and relevant to the facts in this case."  *Id.* at 3 (caption) (punctuation altered).  The Defendant elaborated further.  "Until the time of distribution, vesting has not occurred, there is no constitutionally protected property interest, and there is no basis for a party to sue the United States if Congress' distribution plan designates distribution to a party other than the party bringing the action."  *Id.* at 4 (citations omitted).  The Court, therefore, concluded that the Defendant's argument that the Tribal Plaintiffs where not beneficial owners of the trust was focused on the issue of vesting.

**B.    The Court's October 31, 2008 Opinion**

In its October 31, 2008 Opinion, the Court responded to these arguments in the following manner: First, the Court framed the issue posed by Defendant's motion as "May the Tribal Plaintiffs Maintain this Action on Behalf of the Western Shoshone?"  October 31, 2008 Op. at 7 (caption).  The Court then characterized Defendant's argument in the following manner: "Defendant. . .does not challenge the argument of the Tribes that this Court has jurisdiction to hear their breach of trust claims.  Instead, Defendant argues that the Federal Circuit's decision in *LeBeau* holds that only those with a vested interest in the distribution may state a claim for mismanagement of the trust fund proceeds."  *Id.* at 8 (citation omitted).  In distinguishing the holding in *LeBeau* from this case, the Court stated: "For the purpose of the present motion, Defendant does not dispute that the Tribal Plaintiffs are beneficiaries of the Western Shoshone tribal trust funds." October 31, 2008 Op. at 10.  Quoting *LeBeau*, the Court explained why its holding did not, in this case, require the Tribal Plaintiffs to have vested interests in the proceeds of the distribution of the Western Shoshone tribal trust funds.

---

    [4]  The 2004 Distribution Act provides, in relevant part, that "[o]n establishment of the judgment roll, the Secretary shall make a per capita distribution of 100 percent of the Western Shoshone judgment funds, in shares as equal as practicable, to each person listed on the judgment roll."  *Id.* § 3(c)(1).

3

However, a review of Defendant's briefing papers indicates that the sentence in the Court's Opinion quoted immediately above was somewhat misleading.  Although Defendant, in its reply brief, appeared to frame its argument narrowly in terms of Tribal Plaintiffs' vested rights in the proceeds of the Western Shoshone trust funds, upon reconsideration it appears that Defendant's argument was in fact a broader attack on the Tribal Plaintiffs' status as beneficial owners of the Western Shoshone trust funds as a consequence of the enactment of the 2004 Distribution Act.  For instance, in its reply brief, Defendant argued that "[h]ere the beneficiaries of the Western Shoshone Distribution Act are all the individuals, and no tribes are designated as beneficiaries."  Def.'s Reply at 4-5.  And again, Defendant argued that "[t]he point is that the *Yomba* Tribal Plaintiffs are not entitled to mismanagement damages when they are not beneficiaries of the statute that could, at best, only be fairly interpreted to grant the individual beneficiaries a damages remedy for alleged mismanagement of the money that Congress has directed to be paid to them."  *Id.* at 7.  It is clear, then, that the thrust of Defendant's argument was that, at least after the enactment of the 2004 Distribution Act, the Tribal Plaintiffs could not be characterized as beneficial owners of the Western Shoshone judgment funds generally and that the issue of vesting was an element of this broader argument.  That said, the Court did in fact hold that the 2004 Distribution Act had no effect on the Tribal Plaintiffs' status as owners of tribal trust funds, thereby registering its disagreement with Defendant's argument that the 2004 Distribution Act in some way negated the Tribal Plaintiffs' status as beneficial owners of the Western Shoshone trust funds.[5]

The Court concluded its analysis by stating: "Accordingly, Defendant has failed to show that the Tribal Plaintiffs' second amended complaint does not contain 'some viable legal theory' upon which recovery could be granted.  Thus, the Court denies Defendant's motion to dismiss under RCFC 12(b)(6)."  October 31, 2008 Op. at 9-10.

## C.   Defendant's Motion for Reconsideration

### 1.   Defendant's Arguments

In its motion for reconsideration, Defendant presents several arguments in favor of its contention that the Tribal Plaintiffs are not beneficial owners of the Western Shoshone judgment funds.  First, Defendant argues that the Tribal Plaintiffs cannot show that the Government is under any money-mandating duty towards the Tribes, as Tribes, with respect to the Western Shoshone judgment funds.  This is because any such money-mandating duty is governed by the 2004 Distribution Act, which directs how the judgment funds are to be distributed.  Defendant states that a Tribal Plaintiff which cannot allege a money-mandating duty against the

---

[5] "The Distribution Act does not in any way change the Tribal Plaintiffs' ownership interest in those funds, nor would a future amendment to the Distribution Act or a change in the distribution scheme by Congress have any effect on the Tribe's ownership interest either." October 31, 2008 Op. at 10.

4

Government with respect to the trust funds has no cognizable breach of trust claim in this Court.[6]
For this principle, Defendant quotes *United States v. Navajo Nation*, 129 S.Ct. 1547 (2009)
("*Navajo II*") as follows:

> The text of the Indian Tucker Act makes clear that only claims
> arising under "the Constitution, laws or treaties of the United
> States, or Executive orders of the President" are cognizable (unless
> the claim could be brought by a non-Indian plaintiff under the
> ordinary Tucker Act). 28 U.S.C. § 1505. In *Navajo I* we reiterated
> that the analysis must begin with "specific rights-creating or duty-
> imposing statutory or regulatory prescriptions." [*United States v.
> Navajo Nation*,] 537 U.S. 488[,] 506, 123 S.Ct. 1079, 155 L.Ed.2d
> 60 (2003) ("*Navajo I*"). *If* a plaintiff identifies such as
> prescription, and *if* that prescription bears the hallmarks of a
> "conventional fiduciary relationship," *[United States v.] White
> Mountain,* 537 U.S. 465, 473, 123 S.Ct. 1126, 155 L.Ed.2d 40
> (2003), then trust principles (including any such principles
> premised on "control") could play a role in "inferring that the trust
> obligations [is] enforceable by damages," *id.*, at 477, 123 S.Ct.
> 1126, 155 L.Ed.2d 40. But that must be the second step of the
> analysis, not (as the Federal Circuit made it) the starting point.

Def.'s Mot. to Recons. a t7 (quoting *Navajo II*, 129 S.Ct. at 1558) (citations altered).[7] Defendant
argues that because the 2004 Distribution Act specified the beneficiary to whom judgment funds
are to be distributed, Congress had effectively taken an action that is contrary to a fair mandate of
money damages if the Tribes were indeed beneficiaries prior to the date of enactment of the
Distribution Act. This conclusion, so Defendant argues, is demanded by the Federal Circuit's
decision in *Lebeau*. Specifically, Defendant argues that:

> when Congress specifies a beneficiary of a trust fund, the party
> who is not the beneficiary no longer has a trust *res* for which he

---

[6] Defendant captions this argument as "The Tribal Plaintiffs Lack Any Money-
Mandating Basis for Jurisdiction." Def.'s Mot. for Recons. at 7. Likewise, Plaintiffs in their
opposition contends that Defendant's argument is akin to claiming that the Tribal Plaintiffs lack
standing. Pls.' Opp'n at 9-10 n.4. Defendant did not frame its motion to dismiss in terms of
jurisdiction or standing, though it seems that the question of the standing of the Tribal Plaintiffs
to bring this action was always lurking just outside the four corners of Defendant's motion to
dismiss.

[7] To provide additional context, the sentence in *Navajo II* prior to the passage quoted by
Defendant is "The Federal Government's liability cannot be premised on control alone." *Navajo
II*, 129 S.Ct. at 1558.

has a beneficial interest, and the trustee's obligations no longer
flow to him.  And where as here Congress species [sic] that all
trust *res* is to be distributed to individuals, Congress' action
negates a fair inference of a money damage remedy premised on a
prior unvested beneficial interest.

Def.'s Mot. To Recons. at 8-9.  Because the 2004 Distribution Act "negates a fair inference of a
money damages remedy," to the Tribes, so Defendant argues, the tribes lack any money-
mandating basis for jurisdiction under *Navajo II*, 129 S.Ct. at 1558.

### 2.    Plaintiffs' Arguments

Plaintiffs, however, argue that Defendant has not met its burden of persuasion under the
legal standard for granting reconsideration of an interlocutory opinion under RCFC 59(a) and
54(b).  While reconsideration of a prior order is in the sound discretion of the trial court,
reconsideration requires the exercise of "extreme care."  *Yuba Natural Res. v. United States*, 904
F.2d 1577, 1583 (Fed. Cir. 1990); *A.A.B. Joint Venture v. United States*, 77 Fed. Cl. 702, 704
(2007).  To satisfy its burden of persuasion, Plaintiffs argue, the movant must show that an
intervening change in controlling law occurred, previously unavailable evidence is now available,
or reconsideration is necessary to prevent manifest injustice.  *A.A.B. Joint Venture*, 77 Fed. Cl. at
705.  However, to prevail on a motion for reconsideration, the movant cannot "merely reassert[]
arguments which were previously made and were carefully considered by the court."  *Id*. at 704.

Plaintiffs contend that in its motion, Defendant merely reasserts its previous argument
that the Tribal Plaintiffs are not beneficiaries of the Western Shoshone judgment funds because
the 2004 Distribution Act mandates per capita payment of the proceeds.  Plaintiffs argue that the
express text of the 2004 Distribution Act does not indicate that only individuals, not tribes, are
beneficial owners of the tribal trust funds.  They argue that the 2004 Distribution Act does not
"support the conclusion that the Western Shoshone Judgment Funds are anything other than
tribal trust funds that remain in trust for the benefit of the Western Shoshone Identifiable Group
until distributed."  Pls.' Opp'n at 7.  Instead, they argue that "the Western Shoshone Identifiable
Group is the conduit through which the funds will pass to the individual and the Tribal Plaintiffs
retain their beneficial ownership of the funds."  *Id.* at 6.

Plaintiffs further argue that Defendant's position is indistinguishable from the argument
which it advanced in *Chippewa Cree Tribe of the Rocky Boy's Reservation v. United States*, 73
Fed. Cl. 154, 172 (2006) ("*Chippewa Cree II*"), where, to avoid a claim by an "identifiable group
of American Indians" for mismanagement liability of tribal trust funds, Defendant argued that the
distribution act in that case "individualized" the funds.  In that case, Judge (now Chief Judge)
Hewitt rejected Defendant's argument, holding that "Defendant's theory of the creation of
individual. . . rights is based neither on specific treaty provisions nor on the language of the
relevant. . . statutes . . . .  Defendant's theory of spontaneous creation of individual rights is
without legal foundation."  *Id.* at 162.

6

In addition, Plaintiffs maintain that, rather than advancing Defendant's position, *Lebeau* actually is consistent with their own position that Indian tribes are beneficiaries of tribal trust funds and can recover damages for mismanagement for the period the funds were held in trust by the Government. *Lebeau* according to Plaintiffs, holds that funds remain tribal trust funds until such time as the funds are actually distributed. *Lebeau*, 474 F.3d at 1342-43. Other cases, so Plaintiffs argue, hold that distribution acts do not divest tribes or groups of beneficial ownership, and the funds remain tribal or group property until the funds are distributed. *Sac and Fox Indians v. Sac and Fox Indians*, 220 U.S. 481, 486 (1911); *Chippewa Cree II*, 73 Fed. Cl. 160-61 ("statutes that direct the government in the manner tribal funds are to be distributed do not create individual rights; where the tribe or group is the conduit through which benefits are distributed, 'the primary recipient [is] still the tribe or band,'" (quoting *Hebah v. United States*, 428 F.2d 1334, 1337-39 (1970))).

Plaintiffs further argue that, at the very least, it is not disputed by the parties that the Western Shoshone Identifiable Group and the Tribal Plaintiffs were the beneficial owners of the trust funds at issue here at least up until the enactment of the Distribution Act. Plaintiffs' point to Defendant's answer which admits that the Tribal Plaintiffs are "part of the 'Western Shoshone Identifiable Group' only as that term is used and understood within the meaning and context of Indian Claims Commission proceedings in Docket Nos. 326-K, 326-A-1, and 326-A-3." Answer, ¶¶ 2, 3, 4. Likewise, Defendant admits that Congress appropriated certain funds in satisfaction of the judgment awards in accounts held in trust by the United States.[8] *Id.* ¶¶ 26, 27. 28. If the tribes are not the beneficial owners, then, so Plaintiffs argue, the Government would be effectively discharged from liability for breach of trust prior to the transfer of tribal trust funds to the individual Western Shoshones. *Chippewa Cree II*, 73 Fed. Cl. at 165 ("Although the trustee has transferred the entire trust property to the beneficiary, he is not thereby discharged from liability for breaches of trust committed by him prior to the transfer.") (internal citation omitted); *United States v. Mitchell*, 463 U.S. 206, 227 (1983) ("Absent a retrospective damages remedy, there would be little to deter federal officials from violating their trust duties. . . .").

Moreover, Plaintiffs maintain that the only possible intervening change in law proffered by Defendants is *Navajo II*, which Plaintiffs contend did not, in fact, change the legal analysis applicable to a tribal breach of trust damages claim. Instead, the Court applied the same analytical framework to determine whether a claimant may bring a breach of fiduciary duty action under the Indian Tucker Act as it did in its prior decision in *Navajo I*, 537 U.S. at 506. The criteria by which a court determines whether a claim for breach of fiduciary duties lies under the Indian Tucker Act are, according to Plaintiffs:

> (1) determine whether there are specific rights-creating or duty-
> imposing statutory or regulatory prescriptions; (2) determine
> whether the prescriptions bear the hallmarks of a conventional

[8] However, in its Answer, Defendant denies that the Tribal Plaintiffs possess any interest in the trust funds. *Id.* ¶ 28.

fiduciary relationship; (3) determine whether the relevant source(s)
of substantive law can be fairly interpreted as mandating
compensation, and (4) determine whether trust principles are
relevant to infer that Congress intended damages to remedy the
breach.

Pls.' Opp'n at 11 (citing *Navajo II*, 129 S.Ct. at 1558).

Plaintiffs contend that the Tribal Plaintiffs satisfy these four criteria. First, Plaintiffs
argue that the rights-creating and duty-imposing prescriptions governing the tribal trust funds
held by the United States on behalf of the Tribal Plaintiffs are contained in the trust fund
investment statutes, including 25 U.S.C. §§ 161a and 162a. Pls.' Opp'n at 12 (citing *Osage
Tribe v. United States*, 72 Fed. Cl. 629, 668 (2006); *Manchester Band of Pomo Indians v. United
States*, 363 F. Supp. 1238, 1242 (N.D. Ca. 1973). Second, Plaintiffs maintain that 25 U.S.C. §§
161a and 162a bear the hallmarks of a conventional fiduciary relationship insofar as the conduct
of the government as a trustee under those statutes are measured by the common law standards
applicable to private trustees. Pls.' Opp'n at 12 (citing *Cheyenne-Arapaho Tribes v. United
States*, 206 Ct. Cl. 340, 345 (1975) ("It is clear from past opinions of this court and of the
Supreme Court, and from the actions of both Congress and the Executive Branch, that funds
appropriated to Indians to satisfy judgments of the Indian Claims Commission or of this court, as
well as funds produced by tribal activities, are, when kept in the Treasury, held in trust for the
Indians"); *Manchester Pomo*, 363 F. Supp. at 1245; *Osage Tribe*, 72 Fed. Cl. at 667). Moreover,
Plaintiffs' argue, Defendant's concede that "a fiduciary relationship is created when all the
elements of a common law trust are present: a trustee, a beneficiary, and a trust corpus." Def.'s
Mot to Recons. at 13 (citing *Mitchell*, 463 U.S. at 225) and that the Western Shoshone trust funds
are held in trust with the United States as trustee and that the Tribal Plaintiffs are part of the
Western Shoshone Identifiable Group. See Answer ¶¶ 2, 3, 4, 5, 26, 27, 28, 30. Third, Plaintiffs
argue that when the Government has failed to manage and invest tribal trust funds, such as the
Western Shoshone judgment funds, "damages for that failure and an award of interest on the
amount mismanaged" will result. *Shoshone Indian Tribe v. United States*, 364 F.3d 1339, 1353-
54 (Fed. Cir. 2004). Fourth, Plaintiffs argue that case law shows that general trust law principles
provide for damages to beneficiaries for improper management and investment of tribal trust
fund assets by the Government. *Confederated Tribes v. United States*, 248 F.3d 1365, 1371
(Fed. Cir. 2001). *See also Mitchell*, 463 U.S. at 227. Plaintiffs also note that Defendant
concedes that, generally, the Indian Tucker Act constitutes a waiver of sovereign immunity for an
award of damages when the Government has control or supervision over tribal monies and all the
elements of common-law trust are present. Def.'s Mot. to Recons. at 6 (citing *Mitchell*, 463 U.S.
at 225).

## III.    Standard for Decision

This Court set forth the standard for a decision in a motion to reconsider in *A.A.B. Joint
Venture*:

Reconsideration of a prior decision by the court is grounded in Rule 59(a)(1) of the Rules of the U.S. Court of Federal Claims ("RCFC"). The decision whether or not to grant a motion for reconsideration is in the sound discretion of the trial court. *Yuba Natural Res.,* 904 F.2d at 1583; *Chippewa Cree v. United States,* 73 Fed. Cl. at 157; *Henderson County Drainage District No. 3 v. United States,* 55 Fed. Cl. 334, 337 (2003); *Franconia Assocs. v. United States,* 44 Fed. Cl. 315, 316 (1999); *Fru-Con Constr. Co. v. United States,* 44 Fed. Cl. 298, 301 (1999); *Seldovia Native Assoc. Inc. v. United States,* 36 Fed. Cl. 593, 594 (1996). The court must exercise extreme care in deciding such a motion. *Carter v. United States,* 207 Ct. Cl. 316, 518 F.2d 1199, 1199 (1975); *Chippewa Cree II,* 73 Fed. Cl. at 157; *Henderson County Drainage,* 55 Fed.Cl. at 337; *Fru-Con Constr.,* 44 Fed. Cl. at 301; *Seldovia Native Assoc.,* 36 Fed. Cl. at 594. The purpose served is not to afford a party dissatisfied with the result an opportunity to reargue its case. *Roche v. District of Columbia*, 18 Ct. Cl. 289, 290, 1800 WL 1263 (1883); *Chippewa Cree Tribe,* 73 Fed. Cl. at 157; *Henderson County Drainage,* 55 Fed. Cl. at 337; *Fru-Con Constr.,* 44 Fed.Cl. at 301; *Seldovia Native Assoc.,* 36 Fed. Cl. at 594; *Principal Mutual Life Ins. Co. v. United States,* 29 Fed. Cl. 157, 164 (1993); *Bishop v. United States,* 26 Cl. Ct. 281, 286 (1992). A motion for reconsideration "is not intended to give an unhappy litigant an additional chance to sway the court." *Circle K Corp. v. United States,* 23 Cl. Ct. 659, 664-65 (1991); *see also Chippewa Cree II,* 73 Fed. Cl. at 157; *Henderson County Drainage,* 55 Fed. Cl. at 337; *Fru-Con Constr.,* 44 Fed.Cl. at 301; *Bishop,* 26 Cl.Ct. at 286.

The moving party must support its motion for reconsideration by a showing of exceptional circumstances justifying relief, based on a manifest error of law or mistake in fact. *Henderson County Drainage,* 55 Fed. Cl. at 337; *Fru-Con Constr.,* 44 Fed. Cl. at 300; *Chippewa Cree II,* 73 Fed. Cl. at 157; *Franconia Assocs.,* 44 Fed. Cl. at 316; *Seldovia Native Assoc.,* 36 Fed. Cl. at 594; *Principal Mutual Life,* 29 Fed. Cl. at 164; *Bishop,* 26 Cl. Ct. at 286. The motion must have one of the following bases: (1) an intervening change in controlling law has occurred; (2) previously unavailable evidence is now available; or (3) reconsideration is necessary to prevent manifest injustice. *Chippewa Cree Tribe,* 73 Fed. Cl. at 157; *Henderson County Drainage,* 55 Fed. Cl. at 337; *Fru-Con Constr.,* 44 Fed. Cl. at 301; *Bishop,* 26 Cl.Ct. at 286.

*A.A.B. Joint Venture*, 77 Fed. Cl. at 704-05 (footnote omitted and citation form altered).

## IV.   Analysis

As explained above, in its October 31, 2008 Opinion, the Court inaccurately characterized Defendant as not disputing that Plaintiffs were beneficial owners of the Western Shoshone judgment funds.  However, after noting this supposed concession, the Court then ruled that "[t]he [2004] Distribution Act does not in any way change the Tribal Plaintiffs' ownership interest in these funds, nor would a future amendment to the Distribution Act or a change in the distribution scheme by Congress have any effect on the Tribe's ownership interest either."  October 31, 2008 Op. at 10.  This statement shows that the Court found that 2004 Distribution Act had no effect on the Tribes' status as beneficial owners.  That finding alone supports the holding of the Court that Defendant failed to show that the Tribal Plaintiffs' complaint did not contain "some viable legal theory" upon which recovery could be granted.  October 31, 2008 Op. at 10.  Accordingly, while there was a mistake in fact contained in the opinion, this mistake in fact is not ultimately relevant to the Court's holding.

Moreover, as Plaintiff correctly points out in its opposition to the motion for reconsideration, it has been consistently held by the U.S. Supreme Court and this Court that distribution acts in general do not, in themselves, divest Indian tribes of any ownership interest that they may have in the tribal trust funds.  *See, e.g. Sac and Fox Indians v. Sac and Fox Indians*, 200 U.S. 481, 483-84, 486, 489-90 (1911) (holding that distribution acts which purported to distribute monies to tribal members pursuant to treaties, the identities of whom were to be determined by the Secretary of the Interior, did not change preexisting rights or confer individual rights); *see also Gritts v. Fisher*, 224 U.S. 640, 648 (1912).

Judge Hewitt's decision in *Chippewa Cree II* is particularly instructive.  In *Chippewa Cree II*, the trial court denied the Government's motion for reconsideration of its ruling (similar to, but arising in a different manner from, the Court's holding in the case *sub judice*) that a tribe/group retained its breach of fiduciary duty claim under the Indian Tucker Act "where the tribe or group is the conduit through which benefits are distributed," *Chippewa Cree II*, 73 Fed. Cl. at 160, and that acts of Congress which enact plans of distribution of tribal or identifiable group trust funds to individuals do not defeat claims of mismanagement of tribal trust funds brought by the tribe or identifiable group under the Indian Tucker Act.  A detailed discussion of the decision follows, which highlights the similarities between the effect of Congressionally-enacted plans of distribution upon claims for mismanagement under the Indian Tucker Act brought by (or on behalf of) "identifiable groups"as  in *Chippewa Cree* and the case *sub judice*.

In 1964, the ICC awarded compensation to the descendants of the Pembina Chippewa for land ceded to the United States under two treaties, one in 1863 and another in 1864, for which the United States had paid eight cents an acre, the payment of which the ICC found to be unconscionable.  *Red Lake, Pembina and White Earth Bands*, 164 Ct. Cl. 389, 394 (1964).

Congress appropriated funds to satisfy the ICC award by the Deficiency Appropriations Act of 1964, Pub. L. No. 88-317, 78 Stat. 204 (1964).  In 1971, Congress enacted a law which set forth the plan of distribution of the 1964 ICC award.  Pub. L. No. 92-59, 85 Stat. 158 (1971) ("1971 Distribution Act").  The 1971 Distribution Act included the following language:

> Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That the funds appropriated by the Act of June 9, 1964 (78 Stat. 204, 213), to pay a judgment to the Pembina Band of Chippewa Indians in Indian Claims Commission dockets numbered 18-A, 113, and 191, together with the interest thereon . . . shall be distributed as provided herein.

> The Secretary of the Interior shall prepare a roll of all persons born on or prior to and living on the date of this Act who are lineal descendants of members of the Pembina Band as it was constituted in 1863 . . . .

> Section 4.  In developing the roll of Pembina descendants, the Secretary of the Interior shall determine which enrollees are members of the Minnesota Chippewa Tribe, the Turtle Mountain Band of Chippewas of North Dakota or the Chippewa-Cree Tribe of Montana, and subsequent to the establishment of the descendancy roll shall apportion funds to the three cited tribes on the basis of the numbers of descendants having membership with these tribes. Funds not apportioned in this manner shall be distributed in equal shares to those enrolled descendants who are not members of the three cited tribes.

*Chippewa Cree II*, 73 Fed. Cl. at 162 (quoting 1971 Distribution Act, 85 Stat. 158 (codified at 25 U.S.C. §§ 1241, 1242, 1244)).

The descendants of the Pembina Chippewa also participated with other bands of Indian tribes in a second suit before the ICC seeking just compensation for the loss of 10 million acres of land that was not ceded by treaty, but from which many moved so as not to lose annuities negotiated under the 1863 treaty.  The ICC awarded the descendants of the Pembina Chippewa and the other tribes additional compensation for the loss of aboriginal lands, and the U.S. Court of Claims, affirming the awards, entered two judgments in favor of the bands.  *Turtle Mountain Band of Chippewa Indians v. United States*, 229 Ct. Cl. 872 (1980); *United States v. Turtle Mountain Band of Chippewa Indians,* 222 Ct. Cl. 1 (1979).  These two judgments were denoted as the "1980 Award" by the trial court.  Congress made two separate appropriations in March 1980 and December 1981 to satisfy these judgments.  *Chippewa Cree II*, 73 Fed. Cl. at 156. Congress then enacted a plan of distribution for the 1980-81 judgments in December 1982.  Pub.

L. No. 97-403, 96 Stat. 2022 (1982) ("1982 Distribution Act").  The 1982 Distribution Act provided, in relevant part:

> All of the funds appropriated with respect to the judgment awarded the Pembina Chippewa Indians in dockets 113, 191, 221, and 246 . . . shall be divided by the Secretary of the Interior . . . among the Turtle Mountain Band of Chippewa Indians, the Chippewa Cree Tribe of Rocky Boy's Reservation, the Minnesota Chippewa Tribe, the Little Shell Band of the Chippewa Indians of Montana, and the nonmember Pembina descendants (as a group) so that each is allocated an amount which bears the same relationship to such funds as the number of members of such band, tribe, or group . . . bears to the sum of [enrolled descendants].

*Chippewa Cree II*, 73 Fed. Cl. at 162 n.3 (quoting 1982 Distribution Act, § 2, 96 Stat. 2022). The Pembina judgment funds were partially distributed in 1988 and fully distributed by 1994. *Chippewa Cree II*, 73 Fed. Cl. at 156-57.

In 1992, the original complaint in *Chippewa Cree* "was brought by three tribal plaintiffs on behalf of the tribes as entities, on behalf of the members of each plaintiff tribe, and 'on behalf of all of the beneficiaries of the Pembina Judgment Fund'" under the Indian Tucker Act for mismanagement of the Pembina judgment funds.  *Chippewa Cree Tribe of the Rocky Boy's Reservation*, 69 Fed. Cl. 639, 670 (2006) ("*Chippwa Cree I*").  These tribal plaintiffs also characterized their suit as a class action, asserting that the tribal plaintiffs "'br[ought] this action on their own behalf and as a class action on behalf of others similarly situated'  and advanced 'class action allegations' for the class of Pembina Award beneficiaries." *Id.* at 665-66 (internal citations omitted).  To that end, Plaintiffs brought a motion for class certification under RCFC 23.[9]

However, the trial court rejected the motion for class certification on the grounds that a class action was not, as required by RCFC 23(b)(2) "superior to other available methods for the fair and efficient adjudication of the controversy."  Instead, it found that the Court had jurisdiction under the Indian Tucker Act, to hear "beneficiaries of the Pembina Judgment Fund" as an "identifiable group of American Indians."  Judge Hewitt noted that the ICC recognized the Pembina descendants as an "organized group of Indians" and were entitled to assert claims under the Indian Claims Commission Act insofar as the Pembina Band of Indians ceased to exist as an organized entity in 1891.  *Chippewa Cree I*, 69 Fed. Cl. at 672-73.  *See McGhee v. Creek Nation*, 122 Ct. Cl. 380, 393-94 (1952) (quoting *Red Lake, Pembina and White Earth Bands,* Ind. Cl. Comm'n Docket No. 18-A (Sept. 17, 1951).  She also noted that the Court of Claims likewise affirmed the finding of the Pembina Band as an "identifiable group" and the ICC award.

---

[9]  In *Chippewa Cree*, the tribal plaintiffs are sub-groups of the individual Indians who were beneficiaries of the 1964 and 1980 awards.  *Chippewa Cree I*, 69 Fed. Cl. at 669.

*Chippewa Cree I*, 69 Fed. Cl. at 673 (citing *Red Lake and Pembina Bands v. Turtle Mountain Band of Chippewa Indians*, 173 Ct. Cl. 928 (1965). The recognition of the Pembina beneficiaries as an "identifiable group" would allow them to litigate their claims without waiting for notification for all class members or other parties subject to joinder, and the damages award would be shared by all group members rather than just the members of the class. *Id.*

The Government then filed a motion to reconsider the trial court's ruling that the Court of Federal Claims had jurisdiction to hear the group claims of the Pembina Band beneficiaries. In its motion to reconsider, the Government argued that distribution acts enacted in 1971 and 1982, pertaining to judgment funds awarded to the descendants of the Pembina Band of Chippewa Indians, individualized the beneficial ownership of the tribal trust funds awarded by the ICC in 1964 and in the two judgments of the Court of Claims in 1980 and 1981. This precluded, so the Government argues, the descendants of the Pembina Band from pursuing claims against the Government as an "identifiable group" under the Indian Tucker Act with respect to those judgment funds. In response to the Government's argument on reconsideration, Judge Hewitt held that "Defendant's theory of the creation of individual, vested rights is based neither on specific treaty provisions nor on the language of the relevant. . . statutes. It appears to be based on the suggestion that somehow the process of distribution creates individual rights . . . . Defendant's theory of spontaneous creation of individual rights is without legal foundation." *Chippewa Cree II*, 73 Fed. Cl. at 162. "The 1964 Award and the 1980 Award to the Pembina Band were held in undivided trust fund accounts up to the time of distribution, either to individual Pembina descendant or to the recognized tribes." *Id.* "Plaintiffs' claims involve allegations of mismanagement during the time the 1964 Award and the 1980 Award were held in trust by the government. Plaintiffs are not seeking to recover for mismanagement of funds after they were deposited into a given recipient's Individual Indian Money (IIM) account." *Id.* Accordingly, she denied Defendant's motion for reconsideration, and the identifiable group claim was permitted to proceed.

With respect to the effect of plans of distribution upon breach of fiduciary duty claims advanced by identifiable groups of American Indians, the similarities between the identifiable group claim advanced by the Tribal Plaintiffs in the instant case and the identifiable group claim in *Chippewa Cree* are apparent. If anything, the instant case is a more straightforward one. Like the Pembina beneficiaries, the Western Shoshone Identifiable Group is an "identifiable group" of American Indians which may bring claims in this Court under the Indian Tucker Act. The Tribal Plaintiffs which assert that they are representing the interests of the Western Shoshone Identifiable Group are in fact members of the Western Shoshone Identifiable Group, just as the tribal plaintiffs which brought the initial complaint in *Chippewa Cree* were subgroups of the "identifiable group" in that case.[10] The pertinent language of the distribution acts in both cases

---

[10] Further, in the instant case, the Supreme Court, in *United States v. Dann*, 470 U.S. 39, 49-50 (1985), has already held that the final award of the ICC for the Western Shoshone Identifiable Group placed the Government in the role of both judgment debtor to the Western Shoshone Tribes and also trustee for the Western Shoshone Tribes, as beneficiaries, to manage

13

indicate that the identifiable group have an interest in the tribal trust funds.  In both cases, the distribution acts identify the judgment funds owed to the identifiable group, namely "a judgment to the Pembina Band of Chippewa Indians in Indian Claims Commission dockets numbered 18-A, 113, and 191, together with the interest thereon " and "the funds appropriated in satisfaction of the judgment award granted to the Western Shoshone Indians in Docket Number 326-K before the Indian Claims Commission; and . . . all interest earned on those funds."  The distribution acts in both cases direct the manner in which the funds are to be distributed.  The 2004 Distribution Act, like the distribution acts in *Chippewa Cree*, does not indicate any intent by Congress to divest the identifiable groups of American Indians of any ownership interest in the judgment funds being distributed.  The inevitable conclusion one draws from the comparison is that the 2004 Distribution Act has no effect whatsoever on the beneficial interests of the Tribal Plaintiffs in the Western Shoshone tribal trust funds held by the Government.

Nevertheless, Defendant argues that *Lebeau*, which was decided after *Chippewa Cree II*, stands for the proposition that Congressional acts distributing the proceeds of ICC awards have the effect of specifying the beneficiaries.  As explained above, Defendant argues that:

> when Congress specifies a beneficiary of a trust fund, the party who is not the beneficiary no longer has a trust *res* for which he has a beneficial interest, and the trustee's obligations no longer flow to him.  And where as here Congress species [sic] that all trust *res* is to be distributed to individuals, Congress' action negates a fair inference of a money damage remedy premised on a prior unvested beneficial interest.

Def.'s Mot. To Recons. at 9.  Because the Distribution Act "negates a fair inference of a money damages remedy," to the Tribes, so Defendant argues, the tribes lack any money-mandating basis for jurisdiction under *Navajo II*, 129 S.Ct. at 1558.

Defendant did not bring its motion to dismiss the Tribal Plaintiffs under RCFC 12(b)(1) for a lack of subject matter jurisdiction.  Accordingly, the Court did not make any ruling on whether the Court had jurisdiction over the Tribal Plaintiffs' claims.  Because Defendant now argues in its motion for reconsideration that *Lebeau* defeats any claim brought by Tribal Plaintiffs on the ground that the Government has no money-mandating duty of trust to the Tribes over which this Court would have jurisdiction, the Court will take a second look at *Lebeau* in that light.

*Lebeau* is discussed extensively and distinguished from the present case in this Court's October 31, 2008 Opinion.  Once again, the Court finds that *Lebeau* is inapposite to the instant case.  Unlike in *Lebeau*, where the *Lebeau* plaintiffs argued, and the Government conceded, that

---

the ICC award.

a distribution act in that case created a trust relationship between a class of individual lineal descendants of the Sisseton-Wahpeton Sioux Tribe and the United States, with the Government as trustee, *Lebeau*, 474 F.3d at 1341-1342, the trust relationship in the instant case between the Western Shoshone Identifiable Group and the United States was not created by any distribution act, but instead by the deposit of the Western Shoshone judgment funds into trust accounts of the United States for the benefit of the Western Shoshone tribes. *Dann*, 470 U.S. at 49-50. Moreover, in the instant case, the Tribal Plaintiffs, asserting that they are representatives of the Western Shoshone Identifiable Group, are advancing claims against the Government of a breach of fiduciary duty towards an "identifiable group of American Indians" under the Indian Tucker Act. However, unlike the instant case, the *Lebeau* plaintiffs were not advancing breach of fiduciary duty claims as, or on behalf of, an "identifiable group" under the Indian Tucker Act. Rather, they were advancing breach of fiduciary duty claims as a class of individuals under the Little Tucker Act, 28 U.S.C. § 1346(a)(2). The Little Tucker Act does not grant jurisdiction for this Court to hear claims of "identifiable groups" as such.

Accordingly, insofar as the Tribal Plaintiffs are members of, and assert that they are representatives of, the Western Shoshone Identifiable Group and are advancing its claims under the Indian Tucker Act, the Court finds that *Lebeau* provides no basis for Defendant's argument that the Tribal Plaintiffs do not have a money-mandating basis for jurisdiction in this Court or otherwise lack standing to bring this action on behalf of the Western Shoshone Identifiable Group.

## V.    Conclusion

Defendant's motion for reconsideration is hereby DENIED.

s/ Edward J. Damich
EDWARD J. DAMICH
Chief Judge